**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**SHERMAN DIVISION**

| | | |
|---|---|---|
| AMERICAN ASSOCIATION OF ANCILLARY BENEFITS, A FLORIDA NOT-FOR-PROFIT CORPORATION, | § § § § | Case No. |
| *Plaintiff,* | § § § | |
| v. | § § | |
| XAVIER BECERRA, in his official capacity, as SECRETARY OF THE UNITED STATES DEPARTMENT OF HEALTH AND HUMAN SERVICES, JULIE A. SU, in her official capacity, as acting UNITED STATES SECRETARY OF LABOR, and JANET YELLEN, in her official capacity, as SECRETARY OF THE UNITED STATES DEPARTMENT OF THE TREASURY, | § § § § § § § § § § § | |
| *Defendants.* | § | |

**COMPLAINT AT LAW AND FOR INJUNCTIVE RELIEF**

Plaintiff, AMERICAN ASSOCIATION OF ANCILLARY BENEFITS, a Florida not-for-profit corporation ("AAAB" or "Plaintiff"), by and through its attorneys, Gonzales Taplin, P.A. and Peterson, Johnson and Murray LLC, alleges the following against XAVIER BECERRA, in his official capacity, as SECRETARY OF THE UNITED STATES DEPARTMENT OF HEALTH AND HUMAN SERVICES; JULIE A. SU, in her official capacity, as acting UNITED STATES SECRETARY OF LABOR; and JANET YELLEN, in her official capacity, as SECRETARY OF THE UNITED STATES DEPARTMENT OF THE TREASURY (individually referred to respectively as "CMS", "DOL" or "TREASURY" and collectively referred to as "Defendants"), and alleges as follows:

**INTRODUCTION:**

1.      This matter stems from Defendants improper use of and failure to adhere to the prescribed administrative rule making process for a final rule, CMS-9904-F (the "New Rule"), which is going to purportedly go into effect on September 1, 2024, specifically as it relates to short-term, limited duration insurance ("STLDI") plans.

2.      The public record elucidates the true intent of Defendants behind the New Rule, which is to eliminate health insurance options for Americans in order to defray premiums for costs associated with the Patient Protection and Affordable Care Act  (Pub. L. 111-148, March 23, 2010) (as amended by the Health Care and Education Reconciliation Act of 2010 (Pub. L. 111– 152, March 30, 2010) ("ACA")), all under the guise of consumer protection. However, in doing so, Defendants have: (i) exceeded the bounds of their rule making authority, (ii) overrode long standing statutes and clear legislative intent, (iii) ignored the rule making process requirements, (iv) failed to establish a sufficient record to substantiate the rules they promulgated, and (v) invaded the province of state regulatory authority pursuant to the McCarran-Ferguson Act, 15 U.S.C. §§ 1011-1015.

3.      Defendants were aware of these transgressions and promulgated rules that directly impact a 2018 rule[1] that allowed STLDI plans, which are less than twelve months in duration, to be renewed for up to thirty-six months. *See* 83 Fed. Reg. 38212 at 38215 (Aug. 3, 2018) (attached hereto as Ex. 1).

4.      The New Rule, discussed in earnest herein, renders STLDI plans a Hobson's choice because the arbitrarily short duration of STLDI's under the new rule would expose the consumer

---

[1] This New Rule was the subject of litigation and the validity of the Rule was upheld by the United States Court of Appeals for the District of Columbia. *See Ass'n for Cmty. Affiliated Plans v. United States Dep't of the Treasury*, 966 F.3d 782, 448 U.S. App. D.C. 281 (July 17, 2020)

to lapses in coverage. By rendering STLDI's useless, Defendants are ostensibly eliminating the public's personal choices for various types of insurance products because Defendants believe they know what is best.

5.      Unfortunately for Defendants, Congress enacted certain statutory safeguards to protect industry and the members of the public from overreaching in the promulgation of administrative rules vis-à-vis the Administrative Procedure Act (5 U.S.C. §§ 551–559 and 705–706), with additional protections under the Regulatory Flexibility Act.

6.      Defendants largely ignored the procedural and substantive requirements for the administrative rule making process set forth in the Administrative Procedure Act in order to get to their desired result – namely, the elimination of STLDI plans as a meaningful option and choice for coverage of certain medical expenses. From 2019 to 2021, Congress unsuccessfully attempted to overturn a similar rule promulgated in 2018 regarding STLDI, Short-Term, Limited-Duration Insurance, (Ex. 1, 83 Fed. Reg. 38212 (Aug. 3, 2018)), via legislation on multiple occasions to no avail, which is only further evidence that the 2024 New Rule for STLDI attempts to do an end-around what could not be done through the legislative process, as legally required.

**Commented [BC1]:** Removed per phone call between BJC and Dominick Lanzito on 8/26/24.

## **PARTIES:**

7.      AAAB is a not-for-profit trade association that services the ancillary benefits industry. AAAB advocates for the ancillary benefits industry on behalf of carriers, vendors, third parties, and distributors, as well as to advocate for specialty carriers, prepaid legal services, and other niche products in the insurance business segment. AAAB members include industry leaders providing  STLDI plans. AAAB members are located throughout the country, including in the State of Texas. AAAB routinely conducts business in Texas, including hosting educational and regulatory seminars for its members.

8.      Defendant, Julie A. Su, is sued in her official capacity as the acting United States Secretary of Labor United States Department of Labor, which has its main office at the location of: 200 Constitution Ave., NW, Washington, DC 20210.

9.      Defendant, Xavier Becerra, is sued in his official capacity as the acting Secretary of the United States Department of Health and Human Services ("HHS"), which has its main office at the location of: 200 Independent Ave., SW, Washington, DC.  As the Secretary of HHS,  Becerra is responsible for, in part, the Centers for Medicare & Medicaid Services ("CMS"), the Medicare program, and the implementation of the ACA.

10.     Defendant, Janet Yellen, is sued in her official capacity as the acting Secretary of the United States Department of the Treasury, which has its main office at the location of: 1500 Pennsylvania Ave., NW Washington, DC 20220.

## JURISDICTION AND VENUE:

11.     This action arises under the Administrative Procedure Act, 5 U.S.C. § 500 *et seq.*, and the Declaratory Judgment Act, 28 U.S.C. §§ 2201, 2202. Therefore, this Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331.

12.     AAAB has standing to challenge Defendants' 2024 New Rule at issue here because the Proposed Rule prevents its association members from marketing and selling STLDI plans to members in the public who seek alternative and/or supplemental coverage to satisfy their medical coverage needs in the future. By unwinding the 2018 Rule, which survived judicial scrutiny, the New Rule removes alternatives to the ACA for consumers who do not wish to or cannot afford to purchase an ACA plan. Moreover, removal of STLDI Plans from the marketplace—by essentially rendering the plans functionally useless—will cause serious and irreparable injuries to the AAAB, its members, and their respective insureds.

13.     Venue is proper pursuant to 28 U.S.C. § 1391(e)(1) because this action seeks relief against federal agencies of the United States and officials acting in their official capacities. Additionally, AAAB regularly conducts business in this judicial district and has a significant membership base in this jurisdiction.

## FACTUAL ALLEGATIONS

## I.     <u>SHORT-TERM, LIMITED DURATION INSURANCE ("STLDI") PLANS</u>

14.     Congress has recognized STLDI Plans for decades.  Pursuant to the Public Health Service Act (the "PHS Act"), "[t]he term 'individual health insurance coverage' means health insurance coverage offered to individuals in the individual market, ***but does not include short-term, limited-duration insurance***." *See* 42 U.S.C. § 300gg-91(b)(5) (emphasis added).

15.     Further, the passage of the Health Insurance Portability and Accountability Act of 1996 (the "HIPAA Act"), which excepted STLDI from certain individual market regulations. *See* Pub. L. No. 104-191, 110 Stat. 1936 (1996).

16.     STLDI Plans have been defined elsewhere in federal statutes as:

*Short-term, limited-duration insurance* means health insurance coverage provided pursuant to a policy, certificate, or contract of insurance with an issuer that meets the conditions of paragraph (1) of this definition.

(1) *Short-term, limited-duration insurance* means health insurance coverage provided pursuant to a policy, certificate, or contract of insurance with an issuer that:

(i) Has an expiration date specified in the policy, certificate, or contract of insurance that is no more than 3 months after the original effective date of the policy, certificate, or contract of insurance, and taking into account any renewals or extensions, has a duration no longer than 4 months in total. For purposes of this paragraph (1)(i), a renewal or extension includes the term of a new short-term, limited-duration insurance policy, certificate, or contract of insurance issued by the same issuer, or if the issuer is a member of a controlled group, any other issuer that is a member of such controlled group, to the same policyholder within the 12-month

period beginning on the original effective date of the initial policy, certificate, or contract of insurance; and

**(ii)** Displays prominently on the first page (in either paper or electronic form, including on a website) of the policy, certificate, or contract of insurance, and in any marketing, application, and enrollment materials (including reenrollment materials) provided to individuals at or before the time an individual has the opportunity to enroll (or reenroll) in the coverage, in at least 14-point font, the language in the following notice:

*See* 45 CFR § 144.103.

> **Commented [BC2]:** I believe this is the PHS Act. Should make that clear if so.

17.    Contrary to the New Rule, the PHS Act and similar statutory authority do not apply a time for the term or duration of STLDI plans; however, under the 2018 Rule, short-term, limited-duration insurance means "health insurance coverage provided pursuant to a contract with an issuer that has an expiration date specified in the contract (taking into account any extensions that may be elected by the policyholder without the issuer's consent) that is less than 12 months after the original effective date of the contract."

18.    STLDI plans serve an important role in that they provide a vehicle/product for consumers to obtain health coverage for periods when they would otherwise have a gap in coverage, such as leaving one place of employment for another.

19.    STLDI plans also allow the consumers with a less expensive option to ACA plans and to select a plan that may suit their personal and financial needs.

20.    Plaintiff here does not argue that STLDI plans provide the same coverage as a traditional ACA Plan; however, STLDI plans do afford consumers with options that are tailored to their needs.

21.    STLDI plans do not have any enrollment periods, so a consumer is able to obtain these plans regardless of the time of the year.

22.     The benefits of STLDI for the consumer was judicially recognized in the case of *Association for Community Affiliated Plans v. U. S. Dept. of Treasury*. In that case, the United States District Court for the District of Columbia recognized that the presence of STLDI in the marketplace would promote competition with ACA marketplaces and could ultimately reduce premiums to compete with other products. *Ass'n for Cmty. Affiliated Plans v. United States Dep't of Treasury,* 3d 22 (D.D.C. 2019), *aff'd sub nom. Ass'n for Cmty. Affiliated Plans v. United States Dep't of the Treasury*, 966 F.3d 782 (D.C. Cir. 2020).

23.     One of the intended consequences of the New Rule is that plans that compete with ACA plans would be functionally eliminated as a real option for consumers to consider.

24.     By limiting the number of months that a STLDI plan can be procured for to a period of four months (including renewals), consumers would be faced with no opportunity to have a real option for health coverage and would have to either forego coverage or perhaps sign-up for an ACA plan, for which they may not be able to afford the premium or the deductible.

25.     The lack of competition and a viable alternative will hurt the consumer, which was recognized by the New Rule. (Ex. 2, 89 Fed. Reg. 23338 at 23394, Table 1: Accounting Table, Non-Quantified (April 3, 2024)) - Table 1, Unquantified Costs).

  a.  **<u>2018 RULE RELATED TO STLDI</u>**

26.     Defendants are making the rule making process a political football that will change anytime that there is a change in administration.

27.     On August 3, 2018, these Defendants, under a prior administration promulgated a rule (the "2018 Rule") related to the duration and number of renewals that could be obtained by a consumer for STLDI Plans.  *See* 83 Fed. Reg. 38212/CMS-9924-F. The 2018 Rule became effective on October 2, 2018 and has withstood judicial scrutiny.

28.     The 2018 Rule defined STLDI as:

> health insurance coverage provided pursuant to a contract with an issuer that has an
> expiration date specified in the contract that is less than 12 months after the original
> effective date of the contract and, taking into account renewals or extensions, has a
> duration of no longer  than 36 months in total.

*See* 83 Fed. Reg. at 38212, 38214 - 38215.

29.     The 2018 Rule extended the STLDI initial term to less than 12 months, which

ultimately:

> (1) helped individuals more easily maintain an uninterrupted period of prior
> 'creditable coverage' to become eligible for the law's protections (and avoid the
> 'significant break in coverage' that could negate eligibility), and
> (2) in some cases, reduced the period during which a new issuer could refuse
> benefits to a participant relating to preexisting conditions.

*Ass'n for Cmty. Affiliated Plans v. United States Dep't of Treasury,* 392 F. Supp. 3d 22, 44
(D.D.C. 2019), *aff'd sub nom. Ass'n for Cmty. Affiliated Plans v. United States Dep't of the
Treasury*, 966 F.3d 782 (D.C. Cir. 2020).

30.     As stated, the 2018 Rule has been in place for nearly six years, without issue.

Defendants did not cite to any specific direct evidence, rampant fraud, or to any inability of the

States to regulate STLDI plans, prior to embarking on the promulgation of the New Rule.

**b.  <u>LEGISLATIVE HISTORY</u>**

31.     It was clear that the New Rule only came to light following multiple failed attempts

by Congress to enact legislation to override or invalidate the 2018 Rule or the Appellate Court

ruling validating the 2018 Rule in *Ass'n for Cmty. Affiliated Plans v. United States Dep't of

Treasury*, 392 F. Supp. 3d 22 (D.D.C. 2019), *aff'd sub nom. Ass'n for Cmty. Affiliated Plans v.

United States Dep't of the Treasury*, 966 F.3d 782 (D.C. Cir. 2020).

32.     Largely along party lines, there were six separate proposed bills between the U.S.

House of Representatives and Senate containing modifications to STLDI or to invalidate the 2018

Rule, which ultimately failed between 2019 and 2021. *See*, *e.g.*, H.R. 987, 116th Congress (2019); S. 1556, 116th Congress (2019), H.R. 1010, 116th Congress (2019), H.R. 1425, 116th Congress (2019); S. 352, 116th Congress (2021); S. 942, 116th Congress (2021). In addition, one bill designed to eliminate STLDI altogether failed in the 2021-2022 session. *See* H.R. 1875, 117th Congress (2021). (Grp. Ex. 3 – Proposed Legislation).

33.    The multiple failed attempts to modify/eliminate STLDI plans and override the 2018 Rule demonstrates that it would take an "Act" of Congress, via passed legislation, to significantly modify the 2018 Rule or eliminate STLDI from the marketplace.

### c.   2024 NEW RULE

34.    After multiple failed attempts to legislate changes to the STLDI plans, Defendants published the 2024 Rule on July 12, 2023.  (*See* Ex. 2, 89 Fed. Reg. 23338 (April 3, 2024)).

35.    According to the text of the New Rule, "[t]he provisions finalized in these final rules will help ensure that consumers can better understand and properly distinguish STLDI and fixed indemnity excepted benefits coverage from comprehensive coverage, and access resources to learn more about their health coverage options." (*See* Ex. 2, 89 Fed. Reg. 23338 at 23393 (April 3, 2024)).

36.    The New Rule further maintains that one of the "benefits" includes that they are "expected to reduce the harm caused to consumers who are misled into enrolling in STLDI or fixed indemnity excepted benefits coverage as an alternative to or replacement for comprehensive coverage." (Ex. 2, 89 Fed. Reg. 23338 at 23394 (April 3, 2024)).

37.    However, the New Rule does not require additional disclosures, rather, the New Rule eliminates a consumer choice, by impermissibly rendering STLDI Plans functionally useless.

38.     The true intent of the Proposed Rule is clear.  The very next sentence states, "[**these final rules will encourage enrollment in comprehensive coverage** and lower the risk that STLDI and fixed indemnity excepted benefits coverage are viewed or marketed as a substitute for comprehensive coverage." *See* 89 Fed. Reg. 23338 at 23394 (April 3, 2024) (emphasis added).

        d.  **RULE MAKING PROCESS**

39.     Defendants acknowledged that they received public comments; however, there was never a meaningful, substantive response to any of the public comments from industry representatives or state regulators. (Ex. 2, 89 Fed. Reg. 23338 at 23394 (April 3, 2024)) (acknowledging receipt of public comments); (Grp. Ex. 4, A – G – Public Comment).

40.     Without explanation, the New Rule indicates that Defendants had considered those public comments, but yet there was no indication that they responded to the public comments[2] or how their actions (i) satisfied the legal concerns raised in the public comments; or (ii) how the New Rule was modified to address industry or customer concerns.

**II.     DEFICIENICIES IN RULE AND RULE MAKING PROCESS**

41.     At all times relevant hereto, the Regulatory Flexibility Act ("RFA") was in full force and effect.  *See* 5 U.S. § 601, *et. seq.*

42.     The RFA requires, in part, that Defendants conduct a regulatory flexibility analysis. 5, U.S.C. § 603. Part of the analysis requires "a description of and, where feasible, an estimate of the number of small entities to which the proposed rule will apply (§ 603(b)(3)) and "any significant alternatives to the proposed rule which accomplish the stated objectives of applicable statutes and which minimize any increase in the cost of credit for small entities" (§ 603d)(1)(b)).

---

[2] On page 137 of 237 of the New Rule, it sets forth one instance of a modification related to the word "Warning", which was removed after consumer testing.

43.     The New Rule feigns compliance with the RFA, by including superficial data. The New Rule is also replete with admissions that the regulatory flexibility analysis was not done.

44.     In an attempt to satisfy the requirements of the RFA, the New Rule states, in a section entitled "Costs to agents and Brokers" the New Rule notes that "[t]he Departments sought information on the number of agents and brokers who sell STLDI, fixed indemnity excepted benefits coverage, and individual health insurance coverage, respectively, and how their compensation might be affected by the provisions proposed in the 2023 proposed rules [the proposed rule leading to the New Rule]."  (*See* Ex. 2, 89 Fed. Reg. 23338 at 23301 (April 3, 2024)).

45.     By way of example and not an exhaustive itemization of each tacit admission of insufficiency of their analysis in the New Rule, here are examples of references to the lack of data or half-hearted attempts to perform an analysis:

a.    "However, the Departments lack data about the number of agents and brokers that currently enroll individuals in STLDI or fixed indemnity excepted benefits coverage and did not receive any additional data from commenters." (*See* Ex. 2, 89 Fed. Reg. 23338 at 23398 - 23399 (April 3, 2024)).

b.    "However, due to a lack of data, the Departments were unable to precisely estimate how many agents and brokers might be affected by the 2023 proposed rules and the magnitudes of the potential changes in compensation.350 The Departments solicited comments on the number of agents and brokers who sell STLDI, fixed indemnity excepted benefits coverage, and individual health insurance coverage, respectively, and how their compensation might be affected by the 2023 proposed rules." (*See* Ex. 2, 89 Fed. Reg. 23338 at 23407 (April 3, 2024)) (footnote omitted).

Page **11** of **23**

     c.   The New Rule ultimately concluded that "due to a lack of data and information, there are several areas of uncertainty regarding the potential market impacts of these final rules. As a result, there is also some uncertainty about the potential impact on the compensation of agents and brokers." (*See* Ex. 2, 89 Fed. Reg. 23338 at 23408 (April 3, 2024)).

46.    The New Rule, on its face, establishes that the analysis is incomplete and flawed. One need not look past Table 1, entitled "Accounting Table" to the New Rule that unequivocally establishes that the New Rule cannot quantify the following "Costs":

- Potential increase in premium costs for individuals who switch from STLDI or fixed indemnity excepted benefit coverage (when used as a substitute for comprehensive coverage) to comprehensive coverage and who are not eligible for the PTC.

- Potential increase in the number of uninsured individuals or the number of individuals experiencing a coverage gap, if some individuals with STLDI coverage purchased after the applicability date are no longer able to renew or extend their current policy, choose not to purchase a new policy from another issuer of STLDI, and can only obtain comprehensive coverage during open enrollment, or choose not to purchase comprehensive coverage.

- Potential decrease in compensation for agents and brokers if there is a reduction in sales of STLDI and fixed indemnity excepted benefits coverage.

- Potential increase in health care spending, if individuals switch from STLDI or fixed indemnity excepted benefits coverage (when used as a substitute for comprehensive coverage) to comprehensive coverage and increase their use of health care as a result.

- Potential costs to States, if States enact or implement new legislation in response to these final rules.

- Potential costs to State departments of insurance associated with reviewing amended marketing materials and plan documents filed by issuers of STLDI and fixed indemnity excepted benefits coverage in response to these final rules.

*(See* Ex. 2*,* 89 Fed. Reg. 23338 at 23394, Table 1: Accounting Table, Non-Quantified (April 3, 2024)).

47.     The New Rule does not and cannot provide objective analysis of the numbers of members of the public who may lose coverage, experience a gap in coverage, have an increase in premiums, what the cost to agents and brokers will be or even what the costs will be to the States who have the legislative authority to regulate the business of insurance.

48.     Next, the New Rule does not satisfy the Significant Alternative requirements of the RFA because if the intent of the New Rule is to distinguish STLDI plans from comprehensive health insurance and "increase consumer awareness of coverage options" (Ex. 2, 89 Fed. Reg. 23338 at 23346 (April 3, 2024)). There was a slew of Significant Alternatives provided to Defendants as part of the comments submitted. In response the Departments, simply noted, "[t]he Departments appreciate these comments and suggestions and will take them into consideration in any future regulations or guidance defining STLDI." (*See* Ex. 2, 89 Fed. Reg. 23338 at 23367 (April 3, 2024)).

49.     Given the unknown potential impact, the Regulatory Flexibility Act ("RFA") requires Defendants to look at Significant Alternatives. *See* 5 U.S.C. § 603(c). Initial regulatory flexibility analysis, Regulatory Flexibility Act of 1980, as amended, is taken from Title 5 of the United States Code, sections 601–612.

50.     The New Rule only provides a conclusory, passing statement regarding the Significant Alternatives requirement. The New Rule states, in pertinent part,

> The regulatory alternatives considered in developing these rules are discussed in section V.C of this preamble. The Departments are of the view that none of these alternatives would both achieve the policy objectives and goals of these final rules as previously stated and be less burdensome to small entities." (*See* Ex. 2, 89 Fed. Reg. 23338 at 23408 (April 3, 2024)).

51.     The Preamble does not set forth any Significant Alternatives to satisfy the requirements of the RFA or is there any substantive analysis as to how there is not another acceptable alternative to fulfill the purpose behind the New Rule. (*See* Ex. 2, 89 Fed. Reg. 23338 at 23338 - 23352 (April 3, 2024)).

52.     The New Rule also does not satisfy § 608 of the RFA, in that there is no emergency warranting a waiver of the requirements of the RFA. Indeed, the current rule has been in place in 2018 and there is no evidence of a dire or emergency situation, thereby alleviating Defendants from their obligations to promulgate administrative rules in accordance with the law, including the RFA. (*See generally* Ex. 2*,* 89 Fed. Reg. 23338 (April 3, 2024)).

53.     Ultimately, the New Rule equates duration and renewals with a consumer awareness, but there is no support in the New Rule how limiting duration of STLDI plans fosters "consumer awareness of coverage options." Thus, the New Rule is a *de facto* prohibition of these plans and the process to create and the substance of the New Rule are violative of the RFA. *See generally* 89 Fed. Reg. 23338 (April 3, 2024).

**III.     <u>LIMITATION ON THE RULE MAKING AUTHORITY OF DEFENDANTS</u>**

54.     The New Rule seeks to re-write legislation so that Defendants can implement their 4-Month STLDI definition within a given coverage year contemplated under section 2791(b)(5) of the PHS Act. Public Health Service Act, § 2791(b)(5), 42 U.S.C. § 300gg-91(b)(5).

55.     The PHS Act does not vest Defendants to legislate vis-à-vis the rule making process.

56.     This statutory provision provides "[t]he term 'individual health insurance coverage' means health insurance coverage offered to individuals in the individual market, but does not include short-term, limited-duration insurance." *See* 42 U.S.C. § 300gg-91(b)(5). The meaning of

this express statutory definition—which Congress directed decades prior—is clear: "Short-term, limited-duration insurance" is not individual health insurance coverage. Where the text is as clear as it is here, "that is the end of the matter."

57.    The New Rule is attempting to creating two legislative definitions for one term. The New Rule takes the term "short-term, limited-duration insurance," and subdivides the term in order to create more restrictive definitions. (*See generally* Ex. 2, 89 Fed. Reg. 23338 (April 3, 2024)).

58.    There is no authority supporting Defendants' interpretation of the limited term duration. The New Rule takes umbrage with "stacking" the STLDI plans. The limitation on stacking is nowhere in the PHS Act, nor prohibited in any other legislation. (*See generally* Ex. 2, 89 Fed. Reg. 23338 (April 3, 2024)).

59.    The New Rule seeks to limit the duration and number of renewals for STLDI plans, which is a legislative act that is unauthorized. This attempt to create a limitation where none exists in the statute is unlawful, beyond Defendants' rule making authority and is arbitrary and capricious. (*See generally* Ex. 2, 89 Fed. Reg. 23338 (April 3, 2024)).

**IV.    STATE REGULATORY RIGHTS- MCCARRAN FERGUSON ACT**

60. The regulation of the business of insurance has been vested with the States, not the federal government for decades and was formalized in the McCarran Ferguson Act.

61. The Act was entitled "An Act to express the intent of Congress with reference to the regulation of the business of insurance". *See* 15 U.S.C. 1011, *et seq.*

62. The McCarran-Ferguson Act, goes on to explicitly state that "[n]o Act of Congress shall be construed to invalidate, impair, or supersede any law enacted by any State for the purpose

of regulating the business of insurance, or which imposes a fee or tax upon such business, unless such Act specifically relates to the business of insurance." *See* 15 U.S. Code § 1012.[3]

63.   For the purposes of McCarran Ferguson Act, Defendants are not one of the entities defined as "States". *See* 15 U.S. Code § 6717. Thus, the Federal government did not retain any authority for the regulation of the business of insurance with its administrative agencies.

64.   The New Rule was not authorized by an Act of Congress.

65.   The New Rule encroaches on the rights of the States to regulate the business of insurance as set forth in the McCarren Ferguson Act.

66.   If the New Rule stands, Plaintiff, its members and their customers will suffer irreparable harm, lose coverage for medical benefits and lose personal choice to procure medical coverage benefits with a plan that meets their personal and financial needs.

### COUNT ONE - ADMINISTRATIVE PROCEDURE ACT, 5 U.S.C. § 706 (NONDELEGATION DOCTRINE)

67.   AAAB incorporates the allegations set forth in Paragraphs 1 through 66 by reference as if set forth fully herein.

68.   Congress did grant Defendants the authority to promulgate the New Rule regarding STLDI plans, that grant is an unconstitutional delegation of legislative power in violation of Article I of the Constitution.

69.   Only Congress has the power to enact legislation. *See* U.S. Const. art. I, § 1; *See also A.L.A. Schechter Poultry Corp. v. United States*, 295 U.S. 495, 529 (1935) (Congress "is not permitted to abdicate or to transfer to others the essential legislative functions with which it is thus vested.").

---

[3] Notably, only an "Act", as opposed to a rule, can abridge the authority of the States to regulate the business of insurance.

70.  The New Rule is a legal fiction in that the New Rule pretends to create legislative via the rule making process without the authority to do so.

71.  Congress, on multiple occasions between 2019 and 2021, attempted to invalidate the 2018 Rule related to STLDI plans, which did not receive enough votes to become law.

72. The New Rule violates the APA and is thus the product of an unconstitutional exercise of power by Defendants.

73.  As a result of the foregoing, the New Rule is invalid and unenforceable.

74.  Plaintiff, its association members and the public will suffer immediate and irreparable harm if the New Rule is allowed to become effective.

### COUNT TWO ADMINISTRATIVE PROCEDURE ACT, 5 U.S.C. § 706 (NO STATUTORY AUTHORITY)

75. AAAB incorporates the allegations set forth in Paragraphs 1- 66 by reference as if set forth fully herein.

76.  Defendants' lack of statutory authority to promulgate the New Rule is confirmed by McCarran-Ferguson Act and Congress' decision to grant the States to regulate the business of insurance, and the specific exceptions in the federal code related to STLDI.

77.  The unilateral imposition of new time frames for the effective dates and number of renewals of a STLDI Plan is contrary to statutory law and exceeds the authority for administrative rulemaking as required by the Administrative Procedure Act for rules pertaining to STLDI plans. There is no statutory authority which demonstrates that Congress gave Defendants final rulemaking authority to promulgate the New Rule. *See,* 15 U.S.C. § 57a(b)–(d).

78.  The New Rule indicates that its intent is as follows: "[t]he provisions finalized in these final rules will help ensure that consumers can better understand and properly distinguish STLDI and fixed indemnity excepted benefits coverage from comprehensive coverage, and access

resources to learn more about their health coverage options." (*See* Ex. 2, 89 Fed. Reg. 23338 at 23393 (April 3, 2024)).

79.  The New Rule, and regulatory amendments contained therein, do not accomplish this goal and rather, exceeds the purpose of this goal by legislating the duration of  STLDI plans.

80.  It is evident that the purpose behind the New Rule was nothing more than a Trojan Horse to enact legislation masquerading as rules, in order to eliminate competition in the insurance benefits marketplace.

81. The New Rule violates the APA and is thus the product of an unconstitutional exercise of power by Defendants.

82.  As a result of the foregoing, the New Rule is invalid and unenforceable.

83.  Plaintiff, its association members, and the public will suffer immediate and irreparable harm if the New Rule is allowed to become effective.

**COUNT THREE ADMINISTRATIVE PROCEDURE ACT, 5 U.S.C. § 706(2)(E)
(UNSUPPORTED BY SUBSTANTIAL EVIDENCE)**

84.  AAAB incorporates the allegations set forth in Paragraphs 1- 66 by reference as if set forth fully herein.

85.  The New Rule fails to provide any substantial evidence justifying the need for the New Rule.

86.  At all times relevant hereto, the New Rule would impact consumers and small businesses.

87.  Pursuant to the RFA, Defendants were to conduct a regulatory flexibility analysis.

88.  The New Rule is devoid of any substantive regulatory flexibility analysis.

89.  The New Rule does not contain costs to the public or to agents and brokers related to:

- Potential increase in premium costs for individuals who switch from STLDI or fixed indemnity excepted benefit coverage (when used as a substitute for comprehensive coverage) to comprehensive coverage and who are not eligible for the PTC.

- Potential increase in the number of uninsured individuals or the number of individuals experiencing a coverage gap, if some individuals with STLDI coverage purchased after the applicability date are no longer able to renew or extend their current policy, choose not to purchase a new policy from another issuer of STLDI, and can only obtain comprehensive coverage during open enrollment, or choose not to purchase comprehensive coverage.

- Potential decrease in compensation for agents and brokers if there is a reduction in sales of STLDI and fixed indemnity excepted benefits coverage.

- Potential increase in health care spending, if individuals switch from STLDI or fixed indemnity excepted benefits coverage (when used as a substitute for comprehensive coverage) to comprehensive coverage and increase their use of health care as a result.

- Potential costs to States, if States enact or implement new legislation in response to these final rules.

- Potential costs to State departments of insurance associated with reviewing amended marketing materials and plan documents filed by issuers of STLDI and fixed indemnity excepted benefits coverage in response to these final rules.

(*See* Ex. 2, 89 Fed. Reg. 23338 at 23394, Table 1: Accounting Table, Non-Quantified (April 3, 2024)).

90.  The New Rule is devoid of any substantive evidence that the proposed changes to STLDI plans "will help ensure that consumers can better understand and properly distinguish STLDI. . . coverage from comprehensive coverage, and access resources to learn more about their health coverage options." (*See generally* Ex. 2, 89 Fed. Reg. 23338 (April 3, 2024)); (*See also* Ex. 2, 89 Fed. Reg. 23338 at 23393 (April 3, 2024)).

91.  As a result of the foregoing, the New Rule is deficient, lacks evidence to support the changes therein, violates the APA and RFA, and is otherwise invalid and unenforceable.

92. Plaintiff, its association members, and the public will suffer immediate and irreparable harm if the New Rule is allowed to become effective.

**COUNT FOUR ADMINISTRATIVE PROCEDURE ACT, 5 U.S.C. § 706(2)(A)**
**(ARBITRARY AND CAPRICIOUS)**

93. AAAB incorporates the allegations set forth in Paragraphs 1- 66 by reference as if set forth fully herein.

94. The proffered reasons for promulgating the New Rule, functionally prohibiting STLDI plans are arbitrary and capricious because the New Rule does not "examine the relevant data and articulate a satisfactory explanation for its action including a rational connection between the facts found and the choice made." *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983) (quotation marks omitted).

95. The New Rule is devoid of any substantive evidence that the proposed changes to STLDI Plans "will help ensure that consumers can better understand and properly distinguish STLDI. . . coverage from comprehensive coverage, and access resources to learn more about their health coverage options." (*See generally* Ex. 2, 89 Fed. Reg. 23338 (April 3, 2024)); (*See also* Ex. 2*,* 89 Fed. Reg. 23338 at 23393 (April 3, 2024)).

96. There is no logical connection or nexus between the New Rule and the effort "help ensure that consumers can better understand and properly distinguish STLDI and fixed indemnity excepted benefits coverage from comprehensive coverage, and access resources to learn more about their health coverage options."

97. For example, and without limitation, Defendants justify the New Rule based upon claims that:

    a.    Consumer confusion can be exacerbated when the products are designed in ways that resemble comprehensive coverage.

b.    the low value that STLDI and fixed indemnity excepted benefits coverage provide to some consumers when used as a substitute for comprehensive coverage,

c.    to amend the existing Federal regulations governing both types of coverage to more clearly distinguish them from comprehensive coverage and increase consumer awareness of coverage options that include the full range of Federal consumer protections and requirements.

*(See generally* Ex. 2, 89 Fed. Reg. 23338 at 23346 (April 3, 2024)).

98. Given the purported connection between the New Rule and the impetus for the New Rule, it is clear that the new regulations are arbitrary and capricious because there no "rational connection between the facts found and the choice made." *Motor Vehicle Mfrs. Ass'n,* 463 U.S. at 43.

99.  Defendants did not heed to recommendations of less intrusive means to achieve their goals, nor did they have adequate, quantifiable costs to the public, the industry, or the State regulators.

100.  If Defendants had listened to reason from industry experts, they would understand that their New Rule had not rational relationship to the goal of the proposed regulatory amendment and was not well-grounded in law or fact.

101.  As a result of the foregoing, the New Rule is arbitrary and capricious because it is not supported by the law or evidence, violates the APA and RFA, and is otherwise invalid and unenforceable.

102.  Plaintiff, its association members and the public will suffer immediate and irreparable harm if the New Rule is allowed to become effective.

WHEREFORE Plaintiff, AMERICAN ASSOCIATION OF ANCILLARY BENEFITS prays that this Court enter judgment against Defendants XAVIER BECERRA, in his official capacity, as SECRETARY OF THE UNITED STATES DEPARTMENT OF HEALTH AND

HUMAN SERVICES; JULIE A. SU, in her official capacity, as acting UNITED STATES SECRETARY OF LABOR; and JANET YELLEN, in her official capacity, as SECRETARY OF THE UNITED STATES DEPARTMENT OF THE TREASURY; and in favor of Plaintiff and enter an order contained the following relief:

1. Vacate and set aside the 2024 Proposed Rule;

2. Enter a preliminary and permanent injunction against Defendants prohibiting them from enforcing the 2024 Proposed Rule pursuant to 28 U.S.C. §§ 2201 and 2202;

3. Declare that Defendants did not have the authority to issue rules related to Short-Term Limited Duration or Fixed Indemnity Plans;

4. Declare that Defendants did not follow the correct procedures to issue new rules related to Short-Term Limited Duration or Fixed Indemnity Plans;

5. Declare that the Proposed Rule for Short-Term Limited Duration or Fixed Indemnity Plans is Arbitrary and Capricious;

6. Declare that the Proposed Rule for Short-Term Limited Duration or Fixed Indemnity Plans violates the McCarran-Ferguson Act and the States' right to regulate the insurance business;

7. Find that the 2024 Proposed Rule is illegal, unauthorized and null and void as a matter of law;

8. Award Plaintiff its reasonable costs, including attorneys' fees, incurred in bringing this action under 28 U.S.C. § 2412 or other applicable law; and

9. For any other relief that this Court deems necessary and just.

Respectfully submitted,

Lead Counsel for Plaintiff
Lead Counsel for Plaintiff

Gonzales Taplin PA
s/Dominick L. Lanzito
Alex Gonzales
Texas State Bar No. 08118563
Dominick L. Lanzito
Illinois State Bar No. 6277856
Attorneys for the AMERICAN ASSOCIATION OF ANCILLARY BENEFITS,
Gonzales Taplin PA
P.O. Box 171267
Austin, Texas 78717
Tele:   (512) 492-5251 (for A. Gonzales)
Tele:   (312)724-8035 (for D. Lanzito)
agonzales@gonzalestaplin.com
dlanzito@pjmlaw.com


Local Counsel for Plaintiff

THE FOWLER LAW FIRM, P.C.
/s/ Michael J. Smith
Michael J. Smith
Texas State Bar No.24037517
3301 Northland Drive, Suite 101
Austin, Texas 78731
Telephone: 512.441.1411
Facsimile: 512.469.2975
Email: msmith@thefowlerlawfirm.com