**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**SHERMAN DIVISION**

|  |  |
|---|---|
| AMERICAN ASSOCIATION OF ANCILLARY BENEFITS, <br><br> *Plaintiff*, <br><br> v. <br><br> XAVIER BECERRA, in his official capacity as Secretary of the United States Department of Health and Human Services, *et al.*, <br><br> *Defendants*. | Case No. 4:24-cv-00783-SDJ |

**DEFENDANTS' RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION**
**FOR PRELIMINARY INJUNCTION**

## TABLE OF CONTENTS

INTRODUCTION ................................................................................................. 1

BACKGROUND ................................................................................................. 3

    I.     Statutory Background ............................................................... 3

    II.    Regulatory Background ........................................................... 5

        A.    Pre-2024 STLDI Rules .................................................. 5

        B.    The 2024 STLDI Rule .................................................. 7

    III.   Procedural Background ........................................................... 9

LEGAL STANDARDS ....................................................................................... 10

ARGUMENT ..................................................................................................... 10

    I.     Venue is Improper in This District. ...................................... 10

    II.    Plaintiff Fails to Make the Required Clear Showing That It Has Standing. ......... 12

    III.   Plaintiff Does Not Satisfy Any of the Preliminary Injunction Factors. ............... 14

        A.    Plaintiff fails to show likelihood of irreparable harm. ............................. 14

        B.    Plaintiff has not demonstrated a likelihood of success on the merits of its claims. ........ 17

            1.    The 2024 Rule is well within the Departments' rulemaking authority. ........ 18

            2.    The 2024 Rule is well-reasoned. .................................. 27

        C.    The balance of equities and the public interest disfavor a preliminary injunction. ........ 32

    IV.   Any injunctive relief should be appropriately limited. ......................... 34

CONCLUSION ................................................................................................... 35

# TABLE OF AUTHORITIES

## CASES

*Alenco Commc'ns, Inc. v. FCC*,
   201 F.3d 608 (5th Cir. 2000) ........................................................................ 30, 31

*Allstates Refractory Contractors, LLC v. Su*,
   79 F.4th 755 (6th Cir. 2023), *cert. denied,* 144 S. Ct. 2490 (2024).......................... 25

*Am. Power & Light Co. v SEC*,
   329 U.S. 90 (1946) ................................................................................................ 24

*Am. Trucking Ass'n v. United States*,
   344 U.S. 298 (1953) ........................................................................................ 25, 26

*Arizona v. Biden*,
   40 F.4th 375 (6th Cir. 2022) .............................................................................. 34

*Ass'n for Cmty. Affiliated Plans v. U.S. Dep't of the Treasury*,
   966 F.3d 782 (D.C. Cir. 2020)...................................................................... *passim*

*Ass'n for Cmty. Affiliated Plans v. U.S. Dep't of Treasury*,
   392 F. Supp. 3d 22 (D.D.C. 2019)....................................................................... 21

*Assoc. Gen. Contractors of Am., Inc. v. Fed. Acquisition Regul. Council*,
   2024 WL 1078260 (W.D. La. Mar. 12, 2024) .................................................... 11

*AT&T Corp. v. Iowa Utils. Bd.*,
   525 U.S. 366 (1999) .............................................................................................. 19

*Ayotte v. Planned Parenthood of N. New England*,
   546 U.S. 320 (2006) .............................................................................................. 35

*Barber v. Bryant*,
   860 F.3d 345 (5th Cir. 2017) .......................................................................... 13, 14

*Big Time Vapes, Inc. v. FDA*,
   963 F.3d 436 (5th Cir. 2020) .......................................................................... 24, 25

*Brackeen v. Haaland*,
   994 F.3d 249 (5th Cir. 2021), *aff'd in part*, 599 U.S. 255 (2023) ........................... 19

*Byrum v. Landreth*,
   566 F.3d 442 (5th Cir. 2009) .............................................................................. 32

iii

*Crane v. Johnson*,
  783 F.3d 244 (5th Cir. 2015) ................................................................... 14

*Ctr. for Biological Diversity v. Regan*,
  597 F. Supp. 3d 173 (D.D.C. 2022) .......................................................... 35

*Dep't of Homeland Sec. v. New York*,
  140 S. Ct. 599 (2020) ............................................................................... 34

*Diefenthal v. C. A. B.*,
  681 F.2d 1039 (5th Cir. 1982) ........................................................... 19, 25

*El Paso Cnty. v. Trump*,
  982 F.3d 332 (5th Cir. 2020) .................................................................... 13

*Elite Med. Lab'y Sols., LLC v. Becerra*,
  2022 WL 2704041 (N.D. Tex. July 11, 2022) .................................... 10, 14

*Experian Info. Sols., Inc. v. FTC*,
  2001 WL 257834 (N.D. Tex. Mar. 8, 2001) ....................................... 11, 12

*Exxon Corp. v. Dep't of Energy*,
  1979 WL 1001 (N.D. Tex. June 1, 1979) .................................................. 12

*FCC v. Fox Television Stations, Inc.*,
  556 U.S. 502 (2009) ........................................................................... 27, 32

*FCC v. Prometheus Radio Project*,
  592 U.S. 414 (2021) ................................................................................. 27

*Galderma Labs., L.P. v. Teva Pharm. USA, Inc.*,
  290 F. Supp. 3d 599 (N.D. Tex. 2017) ...................................................... 11

*Gill v. Whitford*,
  585 U.S. 48 (2018) ................................................................................... 34

*Gray Cas. & Sur. Co. v. 3i Contracting, LLC*,
  2024 WL 1121800 (N.D. Tex. Mar. 13, 2024) .......................................... 15

*Grocery Servs., Inc. v. USDA Food & Nutrition Serv.*,
  2007 WL 2872876 (S.D. Tex. Sept. 27, 2007) ......................................... 30

*Haaland v. Brackeen*,
  599 U.S. 255 (2023) ................................................................................. 19

*Havens Realty Corp. v. Coleman*,
  455 U.S. 363 (1982) ............................................................................ 14

*Hendricks v. Bank of Am., N.A.*,
  408 F.3d 1127 (9th Cir. 2005) .......................................................... 10

*Hertz Corp. v. Friend*,
  559 U.S. 77 (2010) ............................................................................. 12

*Holly Sugar Corp. v. Goshen Cnty. Co-op. Beet Growers Ass'n*,
  725 F.2d 564 (10th Cir. 1984) .......................................................... 17

*Igene v. Sessions*,
  2018 WL 1582239 (S.D. Tex. Mar. 29, 2018) ...................................11

*Jordan v. Fisher*,
  823 F.3d 805 (5th Cir. 2016) ............................................................ 10

*Justin Indus., Inc. v. Choctaw Secs., L.P.*,
  920 F.2d 262 (5th Cir. 1990) ............................................................ 15

*Leaf Trading Cards, LLC v. Upper Deck Co.*,
  2019 WL 7882552 (N.D. Tex. Sept. 18, 2019) ................................. 15

*League of United Latin Am. Citizens v. Abbott*,
  604 F. Supp. 3d 463 (W.D. Tex. 2022) ....................................... 13, 14

*Lichter v. United States*,
  334 U.S. 742 (1948) ........................................................................... 24

*Little Sisters of the Poor Saint Peter & Paul Home v. Pennsylvania*,
  591 U.S. 657 (2020) ........................................................................... 27

*Loper Bright Enters. v. Raimondo*,
  144 S. Ct. 2244 (2024) ....................................................................... 20

*Louisiana v. Becerra*,
  20 F.4th 260 (5th Cir. 2021) ............................................................. 34

*Lujan v. Defs. of Wildlife*,
  504 U.S. 555 (1992) ........................................................................... 12

*Madsen v. Women's Health Ctr., Inc.*,
  512 U.S. 753 (1994) ........................................................................... 34

*Maybelline Co. v. Noxell Corp.*,
    813 F.2d 901 (8th Cir. 1987) ........................................................................11

*Mayo Found. for Med. Educ. & Rsch. v. BP Am. Prod. Co.*,
    447 F. Supp. 3d 522 (N.D. Tex. 2020) ...................................................... 32

*Misretta v. United States*,
    488 U.S. 361 (1989) ............................................................................. 24, 25

*Mitchell v. Sizemore*,
    2010 WL 457145 (E.D. Tex. Feb. 5, 2010) .............................................. 17

*Mourning v. Fam. Publ'n Serv., Inc.*,
    411 U.S. 356 (1973) ............................................................................. 19, 20

*Munaf v. Geren*,
    553 U.S. 674 (2008) ................................................................................. 10

*NAACP v. City of Kyle*,
    626 F.3d 233 (5th Cir. 2010) ............................................................. 13, 14

*NTCH, Inc. v. FCC*,
    950 F.3d 871 (D.C. Cir. 2020) ................................................................ 29

*Opulent Life Church v. City of Holly Springs*,
    697 F.3d 279 (5th Cir. 2012) ................................................................... 15

*Parks v. Dunlop*,
    517 F.2d 785 (5th Cir. 1975) ................................................................... 15

*Pension Ben. Guar. Corp. v. LTV Corp.*,
    496 U.S. 633 (1990) ................................................................................. 26

*Reading Health Sys. v. Bear Stearns & Co.*,
    900 F.3d 87 (3d Cir. 2018) .................................................................10, 11

*Rest. Law Ctr. v. U.S. Dep't of Labor*,
    66 F.4th 593 (5th Cir. 2023) ................................................................... 16

*Second Amend. Found. v. Bureau of Alcohol Tobacco, Firearms, & Explosives*,
    2023 WL 4304760 (N.D. Tex. June 30, 2023) ........................................ 34

*Sherley v. Sebelius*,
    689 F.3d 776 (D.C. Cir. 2012) ................................................................ 29

*Southdown, Inc. v. Moore McCormack Res., Inc.*,
    686 F. Supp. 595 (S.D. Tex. 1988) ........................................................ 33

*Spokeo, Inc. v. Robins*,
    578 U.S. 330 (2016) ............................................................................ 13

*Star Satellite, Inc. v. City of Biloxi*,
    779 F.2d 1074 (5th Cir. 1986) .............................................................. 33

*Stilwell v. Off. of Thrift Supervision*,
    569 F.3d 514 (D.C. Cir. 2009) .............................................................. 28

*Texas All. for Retired Ams. v. Hughs*,
    976 F.3d 564 (5th Cir. 2020) ................................................................ 13

*Trump v. Hawaii*,
    138 S. Ct. 2392 (2018) ......................................................................... 34

*Valley Forge Christian Coll. v. Ams. United for Separation of Church & State, Inc.*,
    454 U.S. 464 (1982) ............................................................................ 12

*VanDerStok v. Garland*,
    633 F. Supp. 3d 847 (N.D. Tex. 2022) .................................................. 35

*Wages & White Lion Invs., L.L.C. v. FDA*,
    16 F.4th 1130 (5th Cir. 2021) ............................................................... 29

*Warth v. Seldin*,
    422 U.S. 490 (1975) ............................................................................ 17

*West Virginia v. EPA*,
    142 S. Ct. 2587 (2022) ................................................................... 23, 24

*Whitman v. Am. Trucking Ass'ns*,
    531 U.S. 457 (2001) ............................................................................ 25

*Winter v. Nat. Res. Def. Council, Inc.*,
    555 U.S. 7 (2008) ........................................................................... 10, 13

*Wireless Agents, LLC. v. T-Mobile USA, Inc.*,
    2006 WL 1540587 (N.D. Tex. June 6, 2006) ........................................ 15

*Yakus v. United States*,
    321 U.S. 414 (1944) ............................................................................ 25

## CONSTITUTIONS

U.S. Const. art. III ........................................................................................... 12

## STATUTES

5 U.S.C. § 553 ................................................................................................ 30

5 U.S.C. § 601 ................................................................................................ 30

5 U.S.C. § 604 ................................................................................................ 30

5 U.S.C. § 705 ............................................................................................ 3, 35

5 U.S.C. § 706 ................................................................................................ 30

26 U.S.C. § 9833 ............................................................................................ 18

28 U.S.C. § 1391 ........................................................................................11, 12

29 U.S.C. § 1191c ........................................................................................... 18

42 U.S.C. § 300gg-2 ....................................................................................... 21

42 U.S.C. § 300gg-3 ................................................................................... 4, 21

42 U.S.C. § 300gg-6 ......................................................................................... 4

42 U.S.C. § 300gg-7 ....................................................................................... 21

42 U.S.C. § 300gg-11 ....................................................................................... 4

42 U.S.C. § 300gg-12 ....................................................................................... 4

42 U.S.C. § 300gg-41 ....................................................................................... 4

42 U.S.C. § 300gg-42 ....................................................................................... 4

42 U.S.C. § 300gg-91 ............................................................................ 5, 18, 20

42 U.S.C. § 300gg-92 ............................................................................ 5, 18, 20

42 U.S.C. § 7412 ............................................................................................. 20

Pub. L. No. 104-191, 110 Stat. 1936 (1996) ............................................... 3, 22

Pub. L. No. 111-148, 124 Stat. 119 (2010) ................................................................. 4

Pub. L. No. 116-260, 134 Stat. 1182 (2020) ............................................................... 4

**LEGISLATIVE MATERIALS**

S. 352, 117th Cong. § 104 (2021) .............................................................................. 26

**REGULATIONS**

45 C.F.R. § 144.103 ......................................................................................... 7, 21, 35

45 C.F.R. § 146.125 ..................................................................................................... 9

45 C.F.R. § 148.102 ..................................................................................................... 9

45 C.F.R. § 155.410 ................................................................................................... 33

62 Fed. Reg. 16,894 (Apr. 8, 1997) ........................................................................ 5, 6

69 Fed. Reg. 78,720 (Dec. 30, 2004) ....................................................................... 5, 6

79 Fed. Reg. 30,240 (May 27, 2014) .......................................................................... 4

81 Fed. Reg. 75,316 (Oct. 31, 2016)................................................................... 1, 6, 26

83 Fed. Reg. 38,212 (Aug. 3, 2018).................................................................... *passim*

85 Fed. Reg. 72,158 (Nov. 12, 2020) .......................................................................... 5

87 Fed. Reg. 52,618 (Aug. 26, 2022)........................................................................... 5

89 Fed. Reg. 23,338 (Apr. 3, 2024) .................................................................... *passim*

**OTHER AUTHORITIES**

11A Wright & Miller, Federal Practice and Procedure § 2948.1 (2d ed. 1995)........................... 15

## INTRODUCTION

Short-term, limited-duration insurance (STLDI) is temporary, stop-gap health insurance coverage for individuals transitioning between different sources of comprehensive health insurance coverage, typically due to changes in employment. STLDI is exempt from the panoply of Federal consumer protections that attach to comprehensive coverage, including protections against discrimination, surprise billing, excessive out-of-pocket costs, and the denial of coverage for preexisting conditions. Congress first recognized STLDI as an exception to individual health insurance coverage, and its attendant consumer protections, through the passage of the Health Insurance Portability and Accountability Act of 1996 (HIPAA). But Congress has not defined the phrase "short-term limited duration insurance."

Since 1997, the Departments of Health and Human Services (HHS), Labor, and the Treasury ("the Departments") have promulgated regulations defining STLDI as coverage that lasts for certain maximum time periods. In 2016, for example, the Departments issued regulations limiting STLDI's coverage period to a maximum duration of up to 3 months. *See* 81 Fed. Reg. 75,316 (Oct. 31, 2016) ("2016 Rule"). Then, in 2018, the Departments defined STLDI as lasting for an initial term of less than 12 months and a total duration (including renewals and extensions) of 3 years. *See* 83 Fed. Reg. 38,212 (Aug. 3, 2018) ("2018 Rule"). In the years following, faced with mounting evidence of consumer confusion and deceptive practices, the Departments determined that it was necessary and appropriate to update that definition to allow consumers to better distinguish STLDI from individual health insurance coverage and its full slate of protections. So in April 2024, the Departments finalized a rule defining STLDI as coverage that lasts for an initial maximum term of 3 months and a total duration (including renewals and extensions) of 4 months. 89 Fed. Reg. 23,338 (Apr. 3, 2024) ("2024 Rule").

Plaintiff, a trade association that advocates for STLDI issuers, prefers the 2018 Rule. Five months after publication of the 2024 Rule, on the eve of its applicability date, Plaintiff brought suit and moved for preliminary relief to immediately halt its implementation.

For several reasons, the Court should decline to grant this extraordinary relief. At the threshold, Plaintiff does not show that its claims may be heard in this Court. For one, Plaintiff fails to establish that this Court is a proper venue: neither Plaintiff, which is based in Florida, nor the Departments reside in the Eastern District of Texas, and the event giving rise to the suit (promulgation of the 2024 Rule) took place in the District of Columbia. Even if Plaintiff could surmount venue requirements, however, Plaintiff's vague and conclusory assertions of harm would not establish Article III standing with the clarity required at the preliminary injunction phase. For both reasons, the Court lacks the authority to grant preliminary relief and therefore should deny the motion.[1]

Even if the Court concludes it would have power to grant the requested relief, it should decline to do so because Plaintiff fails to satisfy any of the requisite preliminary-injunction factors. At the start, because Plaintiff's factually unsupported assertions of harm do not even suffice to show standing, they necessarily fail to establish irreparable harm. And Plaintiff's five-month delay in bringing suit after the 2024 Rule's publication contradicts its claim to need immediate relief.

Nor does Plaintiff show a likelihood of success on the merits of its claims. Plaintiff's primary claim—that the Departments lack authority to define STLDI through rulemaking— ignores Congress's delegation to the Departments to issue regulations that are "necessary or

---

[1] Although venue and standing warrant dismissal (or transfer) of this action, Defendants have not yet moved to dismiss because the schedule set for briefing and a hearing on the preliminary injunction motion did not provide sufficient time to do so. Defendants were served on August 30, 2024, and intend to move to dismiss by the October 29, 2024 deadline. Fed. R. Civ. P. 12(a)(2).

appropriate to carry out" the relevant statutes' provisions, including definitional provisions. For decades, the Departments have exercised that authority to define STLDI through regulation. Plaintiff's scattershot citations to general legal principles relating to the scope of agency authority in unrelated cases do not undercut the Departments' lawful exercise of authority to issue the 2024 Rule. And regardless, Plaintiff's argument is self-defeating: taken to its logical conclusion, it would suggest that the Departments lacked authority to issue Plaintiff's preferred 2018 Rule, too. Plaintiff's arbitrary-and-capricious claim fares no better; at their core, Plaintiff's arguments in support of that claim amount to a disagreement over the Departments' policy choice, which the Administrative Procedure Act does not authorize the Court to second-guess.

The balance of the equities also disfavors preliminary relief: The 2024 Rule serves the important public interest of reducing widespread confusion by allowing consumers to clearly distinguish STLDI from individual health insurance coverage subject to federal consumer protections (i.e., comprehensive coverage) and better understand their coverage options. This important interest is not overcome by Plaintiff's preference for longer-term STLDI plans.

Finally, even assuming Plaintiff could establish entitlement to preliminary relief, the nationwide injunction it seeks is vastly overbroad. Any relief entered here should be tailored to redress Plaintiff's alleged injuries, not hypothetical injuries of absent third parties. Plaintiff's alternative requested relief—a stay of the 2024 Rule's effective date, presumably under 5 U.S.C. § 705—is unavailable because the 2024 Rule already went into effect, on June 17, 2024.

For all of these reasons, the Court should deny Plaintiff's motion for preliminary relief.

## BACKGROUND

### I.  Statutory Background

Congress enacted the HIPAA, Pub. L. No. 104-191, 110 Stat. 1936 (1996), to, among other things, "improve portability and continuity of health insurance coverage in the group and

3

individual markets" and "improve access to long-term care services and coverage." *Id.* Among the ways HIPAA accomplishes those goals is by limiting the circumstances in which consumers who change jobs, and therefore have gaps in coverage, may be denied coverage later based on preexisting conditions. 42 U.S.C. §§ 300gg-11, 300gg-12 (2006) (group market); 42 U.S.C. §§ 300gg-41, 300gg-42 (individual market); *see* 79 Fed. Reg. 30,240, 30,244 (May 27, 2014) (explaining that, among other things, HIPAA "improve[d] access to individual health insurance coverage for certain eligible individuals who previously had group coverage, and . . . guarantee[d] the renewability of all coverage in the individual market."). In 2010, the Patient Protection and Affordable Care Act ("ACA"), Pub. L. No. 111-148, 124 Stat. 119, greatly expanded the Federal consumer protections applicable to comprehensive coverage in the group and individual markets. For example, benefits may not be denied on the basis of an individual's preexisting conditions, 42 U.S.C. § 300gg-3, and certain insurance plans must cover essential health benefits, *id.* § 300gg-6. Other laws have added further Federal consumer protections applicable to comprehensive coverage in the group and individual markets—among them, the No Surprises Act (enacted as title I of Division BB of the Consolidated Appropriations Act, 2021, Pub. L. 116-260, 134 Stat 1182 (2020)), which precludes surprise medical bills for certain out-of-network services and offers other billing protections.

HIPAA, the ACA, and the No Surprises Act generally implemented these federal consumer protections through parallel amendments to three separate statutes: the Employee Retirement Income Security Act of 1974 ("ERISA"), the Internal Revenue Code (the "Code"), and the Public Health Service Act ("PHS Act"). Most employers offering group health plans are subject to ERISA and the Code. Health insurance issuers participating in either the individual or group health insurance markets (or both) are subject to the PHS Act. These separate statutes are, in turn,

administered by different agencies: the Department of Labor enforces ERISA, while the Department of the Treasury administers the Code, and HHS is responsible for the PHS Act. Regulations implementing the HIPAA, ACA, and No Surprises Act protections have often been jointly issued by the three Departments. *See, e.g.*, 87 Fed. Reg. 52,618 (Aug. 26, 2022); 85 Fed. Reg. 72,158 (Nov. 12, 2020); 69 Fed. Reg. 78,720 (Dec. 30, 2004).

Those federal consumer protections, however, generally do not apply to STLDI, which is understood to refer to "a type of health insurance coverage sold by health insurance issuers that typically fills temporary gaps in coverage that may occur when an individual is transitioning from one plan or coverage to another[.]" 89 Fed. Reg. at 23,340; 83 Fed. Reg. at 38,213. Through HIPAA's enactment in 1996, Congress first recognized STLDI as an exception to comprehensive coverage by specifying that "individual health insurance coverage" means "health insurance coverage offered to individuals in the individual market, but does not include short-term limited duration insurance." 42 U.S.C. § 300gg-91(b)(5). The ACA expressly incorporates that definition by cross-reference. *See id.* § 18111. Other legislation adding to the consumer protections provided by comprehensive coverage, including the No Surprises Act, have not disturbed that definition. However, no Federal statute defines the term "STLDI." Instead, "Congress delegated the task of defining STLDI to the Departments" by "permitting the Departments to 'promulgate such regulations as may be necessary or appropriate to carry out the provisions of'" the statutes. *Ass'n for Cmty. Affiliated Plans v. U.S. Dep't of the Treasury*, 966 F.3d 782, 785 (D.C. Cir. 2020) (quoting 42 U.S.C. § 300gg-92).

## II.    Regulatory Background
### A.   Pre-2024 STLDI Rules

Since 1997, shortly after HIPAA's passage, the Departments have exercised their delegated authority to define STLDI through regulation. In interim final rules issued in 1997, the

Departments first defined STLDI as coverage lasting less than 12 months. 62 Fed. Reg. 16,894 (Apr. 8, 1997). That definition was finalized in final rules promulgated in 2004, 69 Fed. Reg. at 78,790, which remained in effect until 2016.

In 2016, the Departments modified the definition of STLDI to address concerns that STLDI was being sold as a form of primary health coverage and possibly driving up insurance premiums. 81 Fed. Reg. 75,316–18. The Departments explained that STLDI was "being sold in situations other than those that the exception from the definition of individual health insurance coverage was initially intended to address." *Id.* at 75,317. For instance, some "individuals [were] purchasing this coverage as their primary form of health coverage, and . . . some issuers [were] providing renewals of the coverage that extend[ed] the duration [of STLDI] beyond 12 months." *Id.* To restore STLDI to its intended role of "fill[ing] temporary coverage gaps when an individual transitions between sources of primary coverage," the Departments shortened STLDI's coverage period to a maximum duration of up to 3 months. *Id.* at 75,318.

In 2018, the Departments again modified the definition of STLDI, changing it to a longer term of coverage, *see* 83 Fed. Reg. 38,212. Specifically, the 2018 Rule defined STLDI as coverage that has an initial term of less than 12 months and a total duration of no more than 36 months inclusive of renewals or extensions. *Id.* In adopting that definition, the Departments reasoned that, at that time, there was a "need for coverage options that [were] more affordable than individual health insurance coverage," as well as a "general need for more coverage options and choice." *Id.* at 38,217. Although "primarily designed to fill temporary gaps in coverage," the Departments explained, STLDI could also "provide a more affordable, and potentially desirable, coverage option for some consumers, such as those who cannot afford unsubsidized coverage in the individual market." *Id.* at 23,213, 38,217. At the same time, the Departments acknowledged that

expanding STLDI coverage could have downsides, such as "rais[ing] premiums for individual health insurance coverage[.]" *Id.* at 23,217.

**B. The 2024 STLDI Rule**

This year, the Departments again modified the definition of STLDI, in a final rule issued on April 3, 2024. *See* 89 Fed. Reg. 23338.[2] The definition adopted by the 2024 Rule provides that STLDI is coverage that has an initial term of no more than 3 months and, taking into account extensions or renewals, a total duration of no more than 4 months. *Id.* at 23,352. The definition further specifies that "renewal or extension includes" a new STLDI policy issued by the same issuer[3] to the same policyholder within any 12-month period beginning on the effective date of the initial STLDI policy. *Id.*; *see also* 45 C.F.R. § 144.103.

The 2024 Rule is accompanied by a lengthy preamble detailing the Departments' rationale behind the changed definition and responding to public comments on the proposed rule. In the preamble, the Departments reiterated STLDI's "traditional role" of "provid[ing] coverage for temporary gaps for consumers transitioning between comprehensive coverage."[4] 89 Fed. Reg. at 23,363. Despite that gap-filling purpose, however, the Departments found that STLDI was being "offered as an alternative to comprehensive coverage," *id.* at 23,351, which increased "financial and health risks" to consumers because STLDI did not offer the same consumer protections as comprehensive coverage, *id.* at 23,346. The risks were particularly problematic for "[c]onsumers who [did] not understand key differences between STLDI" and individual health insurance coverage, the Departments found. *Id.* Those consumers could find themselves being hit with

---

[2] Like prior rules, the 2024 Rule also modified the notice requirements related to STLDI. *See* 45 C.F.R. § 144.103. Plaintiff does not challenge those notice provisions.
[3] This provision also applies to issuers that are members of the same controlled group. *Id.*
[4] The term "comprehensive coverage" is used to refer to coverage, including individual health insurance coverage, "that is subject to the Federal consumer protections and requirements established under" ERISA, the Code, and the PHS Act. 89 Fed. Reg. at 23,338.

7

unexpected medical bills and exorbitant out-of-pocket maximums because they were unaware of their STLDI plan's coverage limits and that it was not subject to Federal consumer protections. *See id.* at 23,348 (discussing one consumer's unexpected bills for $800,000 for cancer treatment not covered by his STLDI policy); *id.* (citing research finding that out-of-pocket maximums for STLDI were "on average nearly three times that of comprehensive coverage in 2020"). Adding to the evidence of consumer confusion were studies and anecdotes revealing "deceptive or aggressive marketing of STLDI . . . to consumers who may be unaware of the coverage limits of these plans," *see id.* at 23,349, 23,365–67 (discussing studies revealing aggressive or deceptive marketing practices). All of that made it "necessary and appropriate," in the Departments' view, to modify the definition of STLDI in a way that would allow consumers to "clearly distinguish STLDI from comprehensive coverage," *id.* at 23,351, and restore STLDI to its gap-filling role, *id.* at 23,363.

The Departments also found that the changed factual circumstances since the 2018 Rule supported the changed definition of STLDI. First, the Departments noted that the affordability and accessibility concerns underlying the 2018 Rule had lessened in recent years. *Id.* at 23,346. Expanded subsidies through recent legislation had made comprehensive coverage options more affordable for many consumers; enrollment in comprehensive coverage had increased substantially; and many more consumers had multiple comprehensive plan options to choose from. *Id.* at 23,346–47. Second, the Departments reassessed their expressed optimism in the 2018 Rule that individuals with STLDI, as opposed to no insurance, might have improved health outcomes and greater protection from catastrophic health care expenses. *Id.* at 23,349. The Departments explained that their "experience with the COVID-19 public health emergency" underscored the "value of a framework that . . . encourages uninsured individuals to purchase comprehensive coverage" rather than STLDI. *Id.* The Departments observed, for instance, that individuals enrolled

in STLDI during the public health emergency "typically face[d] significant limitations on coverage for COVID-19 related treatments, and high out-of-pocket expenses," and also missed out on other important comprehensive coverage expansions enacted by Congress. *Id.* Third, the Departments explained that new evidence substantiated the concerns expressed in the 2018 Rule preamble that expanding STLDI could increase premiums for individual health insurance coverage. *Id.* at 23,351.

Although the Departments concluded that their change to the definition of STLDI was "critical," they were mindful both of the potential that it could "hav[e] an abrupt, disruptive effect, particularly with respect to consumers currently enrolled in STLDI coverage," and of "the potential reliance interests of both issuers offering STLDI and consumers enrolled in STLDI under the 2018 final rules." *Id.* at 23,356. Therefore, the Departments adopted a "phased-in approach," announcing that the 2024 Rule would "not be applicable to STLDI policies sold or issued before September 1, 2024."[5] *Id.* The Departments explained that this would mitigate disruptive effects to consumers and issuers: individuals currently enrolled in STLDI as of September 1 could maintain coverage that meets the standards in the 2018 Rule through the duration of their policy (including renewals) subject to any limits under applicable State law, and issuers would not be required to modify contracts for STLDI policies in place as of September 1. *Id.*

### III.    Procedural Background

Plaintiff filed the operative complaint in this matter on August 29, 2024. *See* Corrected Compl., ECF No. 2 ("Compl."). Plaintiff asserts four facial challenges to the promulgation of the 2024 Rule under the Administrative Procedure Act (APA): (1) that any delegation of authority to promulgate the Rule would constitute an unconstitutional delegation of legislative power, *id.* ¶¶ 67-74; (2) that the Departments lacked the authority to promulgate the Rule, *id.* ¶¶ 75-83; (3)

---

[5] The notice provision is the exception: it applies to new and existing STLDI policies beginning on or after September 1, 2024. *See* 45 C.F.R. §§ 146.125, 148.102(b).

that the Rule is unsupported by substantial evidence, *id.* ¶¶ 84-92; and (4) that the Rule is arbitrary and capricious, *id.* ¶¶ 93-101. After filing and withdrawing a motion for a temporary restraining order, *see* ECF Nos. 4, 9, Plaintiff now seeks a preliminary injunction and a stay of the 2024 Rule's effective date. *See* Pl.'s Mem. of Law In Supp. of Am. Mot. for PI, ECF No. 11-1 ("PI Br.").

## LEGAL STANDARDS

"A preliminary injunction is an extraordinary and drastic remedy" that is "never awarded as of right." *Munaf v. Geren*, 553 U.S. 674, 689-90 (2008) (citations omitted). A plaintiff may obtain this "extraordinary remedy" only "upon a clear showing" that it is "entitled to such relief." *Winter v. Nat. Res. Def. Council, Inc*., 555 U.S. 7, 22 (2008). A plaintiff must show (1) "a substantial threat of irreparable injury," (2) "a substantial likelihood of success on the merits," (3) "that the threatened injury if the injunction is denied outweighs any harm that will result if the injunction is granted," and (4) "that the grant of an injunction will not disserve the public interest." *Jordan v. Fisher*, 823 F.3d 805, 809 (5th Cir. 2016) (citation omitted). The plaintiff must "clearly carr[y] the burden of persuasion on all four requirements." *Id.* (citation omitted). The failure "to satisfy any one of the four factors" warrants denial of the request for a preliminary injunction. *Elite Med. Lab'y Sols., LLC v. Becerra*, 2022 WL 2704041, at *2 (N.D. Tex. July 11, 2022).

## ARGUMENT

### I.    Venue is Improper in This District.

The Court need not, and should not, consider Plaintiff's request for relief because Plaintiff fails to show that this Court is a proper venue for its case. The lack of venue means that this Court "lack[s] authority to grant" preliminary relief. *Hendricks v. Bank of Am., N.A.*, 408 F.3d 1127, 1135 (9th Cir. 2005) (noting that a venue defense "bear[s] on [a] district court's power to issue [an] injunction"); *see also Reading Health Sys. v. Bear Stearns & Co.*, 900 F.3d 87, 95 (3d Cir. 2018) ("We agree that threshold disputes over venue and jurisdiction should be resolved before

merits disputes."); *Maybelline Co. v. Noxell Corp.*, 813 F.2d 901, 907 (8th Cir. 1987) (reversing a preliminary injunction because the "district court erred in failing to grant . . . motion to dismiss or transfer for improper venue").

Where, as here, the case is brought against "an agency of the United States," venue is proper only in a "judicial district in which (A) a defendant in the action resides, (B) a substantial part of the events or omissions giving rise to the claim occurred, . . . or (C) the plaintiff resides if no real property is involved in the action." 28 U.S.C. § 1391(e)(1). Although the Fifth Circuit has not addressed the issue, "most district courts within this circuit have imposed the burden of proving that venue is proper on the plaintiff once a defendant has objected to the plaintiff's chosen forum." *Galderma Labs., L.P. v. Teva Pharm. USA, Inc.*, 290 F. Supp. 3d 599, 605 (N.D. Tex. 2017) (collecting cases).

As Plaintiff admits, none of the Departments reside in the Eastern District of Texas. *See* Compl. ¶¶ 8-10. Nor did *any* of the events or omissions giving rise to Plaintiff's claims—let alone a *substantial* part of those events—occur in the Eastern District of Texas. As Plaintiff asserts, "[t]his matter stems from" the promulgation of a "final rule," *id.* ¶ 1, and all of Plaintiff's claims involve facial APA challenges to the 2024 Rule itself, not any subsequent action applying the Rule to Plaintiff's members. *See id.* ¶¶ 67-102. Courts have typically concluded that such claims originate in the district in which the challenged administrative action was promulgated. *See, e.g.*, *Assoc. Gen. Contractors of Am., Inc. v. Fed. Acquisition Regul. Council*, 2024 WL 1078260, at *8 (W.D. La. Mar. 12, 2024) (concluding that the events giving rise to APA rule challenge "took place where EO 14,063 and the Final Rule were both drafted and enacted, that is, in Washington, D.C."); *Igene v. Sessions*, 2018 WL 1582239, at *2 (S.D. Tex. Mar. 29, 2018); *Experian Info. Sols., Inc. v. FTC*, 2001 WL 257834, at *3 (N.D. Tex. Mar. 8, 2001); *Exxon Corp. v. Dep't of*

*Energy*, 1979 WL 1001, at *2 (N.D. Tex. June 1, 1979). The 2024 Rule was promulgated by the Departments in the District of Columbia, and so the events giving rise to Plaintiff's claims took place there, not in the Eastern District of Texas.

Nor does Plaintiff reside in the Eastern District of Texas. To the contrary, Plaintiff alleges that it is a "Florida not-for-profit corporation." Compl. at 1; *see also* Pl.'s Disclosure of Interested Party, ECF No. 15 (stating that Plaintiff is "located in West Palm Beach, Florida"). Plaintiff asserts that it also has "members . . . in the State of Texas" and that it "routinely conducts business in Texas." Decl. of Michelle Delany ¶ 5, ECF No. 11-3 ("Delany Decl."); *see also* Compl. ¶ 13. But those assertions are irrelevant; under § 1391(c)(2), "an entity with the capacity to sue and be sued . . . shall be deemed to reside, . . . if a plaintiff, only in the judicial district in which it maintains its principal place of business." "[T]he phrase 'principal place of business' refers to the place where the corporation's high level officers direct, control, and coordinate the corporation's activities," *i.e.*, its "nerve center." *Hertz Corp. v. Friend*, 559 U.S. 77, 81 (2010). Here, that appears to be Florida.

The Court should deny the motion for preliminary injunction because venue is improper.

## II.    Plaintiff Fails to Make the Required Clear Showing That It Has Standing.

Article III limits the judicial power to deciding "Cases" and "Controversies," U.S. Const. art. III, § 2, cl. 1, which ensures that federal courts do not become "forums for the ventilation of public grievances," *Valley Forge Christian Coll. v. Ams. United for Separation of Church & State, Inc.*, 454 U.S. 464, 473 (1982). As part of that limitation, Plaintiff must demonstrate three elements to meet the "irreducible constitutional minimum of standing," *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992): (1) an "injury in fact," (2) "that is fairly traceable to the challenged conduct of the defendant," and (3) "likely to be redressed by a favorable judicial decision," *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). Standing is "an indispensable part of the plaintiff's case," and

therefore "each element must be supported . . . with the manner and degree of evidence required at the successive stages of litigation." *El Paso Cnty. v. Trump*, 982 F.3d 332, 338 (5th Cir. 2020). For a preliminary injunction, Plaintiff must adduce specific facts clearly showing standing to sustain its claims on the merits. *Barber v. Bryant*, 860 F.3d 345, 352 (5th Cir. 2017) (quoting *Winter v. Nat'l Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008)); *Texas All. for Retired Ams. v. Hughs*, 976 F.3d 564, 568 n.1 (5th Cir. 2020) ("[T]he district court mistakenly applies the minimal showing of standing that a plaintiff must show to overcome a motion to dismiss, rather than the 'clear showing' of standing required to maintain a preliminary injunction." (citation omitted)).

As an organization, Plaintiff may show injury-in-fact based on a theory of organizational or associational standing. *See League of United Latin Am. Citizens v. Abbott*, 604 F. Supp. 3d 463, 482 (W.D. Tex. 2022). Plaintiff makes neither showing here.

To establish organizational standing, Plaintiff must show that the Departments' "'conduct significantly and perceptibly impaired' the organization's activities" in a manner that is "'far more than simply a setback to the organization's abstract social interests' or costs related to the instant litigation." *Id.* 482-83 (quoting *NAACP v. City of Kyle*, 626 F.3d 233, 238 (5th Cir. 2010)). It is not clear whether Plaintiff seeks to establish standing based on its interest as an organization, although Plaintiff arguably makes a passing attempt at doing so. Plaintiff broadly asserts that the 2024 Rule "will massively and needlessly disrupt [its] business operations," Delany Decl. ¶ 13, and may cause it to expend costs attempting to help consumers find new plans, PI Br. 24. But Plaintiff is a trade association that "services the ancillary benefits industry," Compl. ¶ 7, not consumers; and Plaintiff does not explain how the 2024 Rule interferes with its efforts to serve and advocate for that industry. As Plaintiff does not back up its assertions with any facts, it falls far short of making a clear showing that it has suffered a "concrete and demonstrable" injury as

13

Article III demands. *NAACP*, 626 F.3d at 238 (quoting *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 379 (1982)); *see Crane v. Johnson*, 783 F.3d 244, 252 (5th Cir. 2015) ("Because Mississippi's claim of injury is not supported by any facts, we agree with the district court that Mississippi's injury is purely speculative.").

Nor does Plaintiff clearly show associational standing. To establish standing on that basis, Plaintiff must, *inter alia*, specifically identify a member who would have standing in its own right. *League of United Latin Am. Citizens*, 604 F. Supp. 3d at 482. Plaintiff makes no attempt at identifying such a member. Although Plaintiff generally contends that it has fifteen members "throughout the country," Compl. ¶ 7, it does not name a single one. That is enough to conclude that Plaintiff fails to show associational standing. *See League of United Latin Am. Citizens*, 604 F. Supp. at 485. Because Plaintiff does not identify a member, Plaintiff necessarily cannot show any evidence that such member is suffering its own Article III injury. Plaintiff's factually unsupported assertions that the 2024 Rule "massively and needlessly disrupt[s] the business operations of . . . [Plaintiff's unidentified] members," Delany Decl. ¶ 13, and "prevents [Plaintiff's unidentified] members from marketing and selling STLDI plans to members in the public," Compl. ¶ 12, do not suffice to make the "clear showing" of standing as required at the preliminary injunction phase. *See Barber*, 860 F.3d at 352.

## III.    Plaintiff Does Not Satisfy Any of the Preliminary Injunction Factors.

### A.   Plaintiff fails to show likelihood of irreparable harm.

"An injunction is an extraordinary remedy and should not issue except upon a clear showing of possible irreparable injury." *Elite Med. Lab'y Sols., LLC v. Becerra*, 2022 WL 2704041, at *1 (N.D. Tex. July 11, 2022) (citation omitted). Preventing irreparable harm, after all, is "[t]he central purpose of a preliminary injunction." *Gray Cas. & Sur. Co. v. 3i Contracting, LLC*, 2024 WL 1121800, at *6 (N.D. Tex. Mar. 13, 2024) (quoting *Parks v. Dunlop*, 517 F.2d 785,

787 (5th Cir. 1975). To meet the standard for obtaining a preliminary injunction, Plaintiff must show that irreparable injury is not just imminent, but likely to occur "during the pendency of the litigation." *Justin Indus., Inc. v. Choctaw Secs., L.P.*, 920 F.2d 262, 268 n.7 (5th Cir. 1990). Plaintiff has not done so.

At the start, Plaintiff's delay in seeking relief from the 2024 Rule undermines any claim of irreparable harm. "Absent a good explanation, . . . a substantial period of delay . . . militates against the issuance of a preliminary injunction by demonstrating that there is no apparent urgency to the request for injunctive relief." *Wireless Agents, LLC. v. T-Mobile USA, Inc.*, 2006 WL 1540587, at *4 (N.D. Tex. June 6, 2006) (citation omitted); *see also Opulent Life Church v. City of Holly Springs*, 697 F.3d 279, 297 (5th Cir. 2012) ("A 'long delay by plaintiff after learning of the threatened harm may be taken as an indication that the harm would not be serious enough to justify a preliminary injunction.'" (quoting 11A Wright & Miller, Federal Practice and Procedure § 2948.1 (2d ed. 1995)). "[C]ourts generally consider anywhere from a three-month delay to a six-month delay enough to militate against issuing injunctive relief." *Leaf Trading Cards, LLC v. Upper Deck Co.*, 2019 WL 7882552, at *2 (N.D. Tex. Sept. 18, 2019) (citation omitted). Here, Plaintiff delayed five months, for no apparent reason. The 2024 Rule was published in the Federal Register on April 3, but Plaintiff waited until August 29, well after the Rule's effective date and on the eve of its September 1 applicability date, to bring suit and seek emergency injunctive relief.

Even setting aside that delay, Plaintiff's three-sentence, conclusory argument does not come close to establishing irreparable harm. According to Plaintiff, absent preliminary relief, "[Plaintiff] and its membership (not to mention the public)" will incur "nonrecoverable costs of complying with a putatively invalid regulation." PI Br. at 24 (quoting *Rest. Law Ctr. v. U.S. Dep't of Labor*, 66 F.4th 593, 597 (5th Cir. 2023)). In the Fifth Circuit, so-called "compliance costs" may

15

constitute irreparable harm—but only when allegations relating to such costs are "based on more than 'speculation' or 'unfounded fears,'" *Rest. Law Ctr.*, 66 F.4th at 597 (citation omitted), and the cost of compliance is "more than de minimis," *id.* at 600 (citation omitted).

Plaintiff's asserted harms are entirely speculative. As an initial matter, Plaintiff's cursory argument that it will incur "costs associated with new notices," PI Br. 24, is irrelevant; Plaintiff does not challenge the 2024 Rule's notice requirements so any alleged harm associated with them cannot be the basis for preliminary injunctive relief. And Plaintiff's contentions that it must "assist consumers with new options in a compressed timeframe or risk exposing consumers to gaps in coverage" and "will lose STLDI policies that would otherwise be valid," *id.*, do not hold sway. As a trade association, Plaintiff does not "assist consumers" or issue any policies of its own. *See* Compl. ¶ 7. If Plaintiff means that its *members* who issue STLDI plans must undertake such efforts, it has not identified any such member, as is necessary to show harm. *Supra* pp. 12-14.

In any event, its baseless assertions are contradicted by the design of the 2024 Rule, which adopted a "phased-in" applicability date precisely to prevent disruption to consumers and STLDI issuers. Although the Rule became effective on June 17, 2024, it applies only to new plans issued on or after September 1, 2024. Thus, any consumers enrolled in policies of Plaintiff's members before that date remain governed by durational standards in the 2018 Rule—meaning their policies may remain effective for up to 36 months (subject to any limits under applicable State law) from the start of the contract. Even for consumers with post-September 1 plans, the maximum 4-month coverage period allows them to remain covered by STLDI until the beginning of 2025, i.e., the start of any comprehensive individual health insurance coverage plan purchased during the next individual market open enrollment period. *See* 89 Fed. Reg. 23,405. The 2024 Rule's carefully

considered applicability date undercuts Plaintiff's unsupported assertions that it must assist consumers with new plans on a compressed timeline.

Finally, on occasion, Plaintiff seems to suggest that purported harms to "the public" weigh in the balance of irreparable harm. *See, e.g.*, Delany Decl. ¶ 13 ("AAAB, its association members, the health insurance industry, and the public will suffer immediate and irreparable harm if the New Rule is allowed to become effective."); PI Br. 24 (referencing "the public"). As explained below, the 2024 Rule protects, not harms, the public. Regardless, third-party harms have "no bearing on whether the [P]laintiff[] [is] entitled to equitable relief. *Holly Sugar Corp. v. Goshen Cnty. Co-op. Beet Growers Ass'n*, 725 F.2d 564, 570 (10th Cir. 1984). "A plaintiff's claim for relief absent a statutory provision or judicially created exception cannot be based on allegations of injury to third parties." *Id.* (citing *Warth v. Seldin*, 422 U.S. 490, 500–01 (1975)). In short, none of Plaintiff's "vague and conclusory allegation[s]" suffice to show irreparable harm and "entitlement to injunctive relief." *Mitchell v. Sizemore*, 2010 WL 457145, at *3 (E.D. Tex. Feb. 5, 2010).

### B.  Plaintiff has not demonstrated a likelihood of success on the merits of its claims.

It is unclear which of the claims alleged in Plaintiff's Complaint form the basis of its motion for a preliminary injunction. The argument section of Plaintiff's motion asserts only that the Departments lacked statutory authority to issue the 2024 Rule (counts one and two of the Complaint), *see* PI Br. at 17-24, but the background section includes arguments that the Rule is arbitrary and capricious as well (count four), *see id.* 9-15.[6] Because the motion contains arguments related to all three of these claims, Defendants address each of them in this response. Although Plaintiff lacks standing to bring these claims in the first instance, if the Court concludes otherwise,

---

[6] Although the Complaint also alleges that the Rule is not supported by substantial evidence (count three), *see* ¶¶ 93-101, Plaintiff does not raise that claim in its motion for preliminary relief.

a preliminary injunction would not be warranted because Plaintiff fails to show a likelihood of success on the merits of its claims.

### 1. The 2024 Rule is well within the Departments' rulemaking authority.

As discussed above, HIPAA, the ACA, and the No Surprises Act (among other legislation) collectively expanded access to comprehensive coverage with Federal consumer protections. *See supra* Bckgd. Those protections were generally codified in parallel amendments to ERISA, the Code, and the PHS Act, each of which authorizes the Departments to "promulgate such regulations as may be necessary or appropriate to carry out [their] provisions."[7] Those provisions include HIPAA's definition (codified in the PHS Act) of "individual health insurance coverage" as "not includ[ing] short-term limited duration insurance." 42 U.S.C. § 300gg-91(b)(5). Because Congress recognized STLDI as an exception to individual health insurance coverage, but did not itself define STLDI, the Departments have defined STLDI by regulation since 1997, immediately following HIPAA's enactment. *See supra* Bckgd. Those regulations have been "essential to ensure that the Code, ERISA, and the PHS Act function as Congress intended, and to allow enforcement of the rules that apply to individual health insurance coverage." 89 Fed. Reg. at 23,354. By "giv[ing] meaning to the term STLDI," the Departments have clarified "what is and is not individual health insurance coverage" subject to federal consumer protections. *Id.*; *see also* 83 Fed. Reg. at 38,215 (reiterating the necessity of "defin[ing] STLDI and "set[ting] standards that distinguish it from individual health insurance coverage").

The authority to make rules that are "necessary or appropriate to carry out" the statutes' provisions plainly encompasses the authority to give meaning to the undefined term "short-term limited duration insurance" as distinct from individual health insurance coverage. "[T]he Supreme

---

[7] 42 U.S.C. § 300gg-92 (PHS Act); 26 U.S.C. § 9833 (the Code); 29 U.S.C. § 1191c (ERISA).

Court has held that '[w]here the empowering provision of a statute states simply that the agency may 'make . . . such rules and regulations as may be necessary to carry out the provisions of this Act' . . . the validity of a regulation promulgated thereunder will be sustained so long as it is 'reasonably related to the purposes of the enabling legislation.'" *Brackeen v. Haaland*, 994 F.3d 249, 354 (5th Cir. 2021), *aff'd in part*, 599 U.S. 255 (2023) (quoting *Mourning v. Fam. Publ'n Serv., Inc.*, 411 U.S. 356, 369 (1973)) (all but first alteration in original).[8] As the en banc Fifth Circuit recently affirmed, "the Supreme Court's holdings in *Mourning* and related cases" emphasize "the breadth of authority delegated by broadly worded rules-enabling statutes." *Id.* at 355 n.65; *see also, e.g.*, *Diefenthal v. C. A. B.*, 681 F.2d 1039, 1043-44 (5th Cir. 1982) (finding that the Civil Aeronautics Board had authority to regulate based on statutory language permitting the agency to make "such rules and regulations as may be necessary to carry out the provisions of this Act" (citation omitted)); *AT&T Corp. v. Iowa Utils. Bd.*, 525 U.S. 366, 377 (1999) (determining that the Federal Communications Commission had authority to issue regulations based on statutory language permitting the agency to "prescribe such rules and regulations as may be necessary in the public interest to carry out" the statute).

The Departments' empowering provisions are "substantively identical" to statutes that courts have consistently found to "confer[] broad delegations of rulemaking authority." *Brackeen*, 994 F.3d at 354. Indeed, in a recent opinion, the D.C. Circuit did not even question that the Departments' authority to "promulgate such regulations as may be necessary or appropriate to

---

[8] The en banc Fifth Circuit produced a complicated set of opinions in *Brackeen*. The question of statutory authority for the challenged regulation was discussed in Part II(D)(2) of Judge Dennis's opinion, which was the en banc majority opinion on that issue. *See* 994 F.3d at 269 n.12 (per curiam opinion summarizing holdings). All quotations from *Brackeen* are taken from that part of the en banc opinion. The question of statutory authority was not before the Supreme Court in *Haaland v. Brackeen*, 599 U.S. 255 (2023), which affirmed the Fifth Circuit on some of the grounds before the Court, and reversed for lack of standing on others.

carry out the provisions" of the relevant statutes encompassed the "task of defining STLDI." *Ass'n for Cmty. Affiliated Plans*, 966 F.3d at 785 (quoting 42 U.S.C. § 300gg-92).

The Supreme Court's *Loper Bright* opinion did not upset this long-standing precedent, contrary to Plaintiff's suggestion. *See* PI Br. 18-20. That case instead confirms that when Congress "empower[s] an agency . . . to regulate subject to the limits imposed by a term or phrase that 'leaves agencies with flexibility,' such as 'appropriate' or 'reasonable,'" it confers on the agency the authority "to exercise a degree of discretion." *Loper Bright Enters. v. Raimondo*, 144 S. Ct. 2244, 2263 (2024) (internal citation omitted); *id.* at 2263 n.6 (citing as an example 42 U.S.C. § 7412(n)(1)(A), which "direct[s] EPA to regulate power plants 'if the Administrator finds such regulation is appropriate and necessary.'"). In such cases, the Court explained, a court's role is to "'fix[] the boundaries of the delegated authority,' and ensur[e] the agency has engaged in 'reasoned decisionmaking' within those boundaries.'" *Id.* at 2247 (original alterations and internal citations omitted). Or in other words, the agency's regulation should be upheld as long as it is "reasonably related to the purposes of the enabling legislation." *Mourning*, 411 U.S. at 369.

The Departments' 2024 Rule easily passes that test. To start, the Departments' definition is consistent with the boundaries set by the textual provision introducing the term "STLDI." Again, Congress created STLDI as an exception from the definition of "individual health insurance coverage." 42 U.S.C. § 300gg-91(b)(5) (defining "individual health insurance coverage" as excluding STLDI). Therefore, whatever the meaning of STLDI, it must be something other than individual health insurance coverage. Part of what distinguishes it, as the name indicates, is that it is both "short-term" and of "limited duration." These terms establish, first, that STLDI must "occur[] over or involv[e] a relatively short period of time." *See Ass'n for Cmty. Affiliated Plans*, 966 F.3d at 788 (quoting *Short-Term*, Webster's Third New International Dictionary 2103 (1981)).

And second, that STLDI plans may be defined according to two separate lengths of time: their initial coverage term, and their total maximum duration, the latter of which should also be "limited." *See Ass'n for Cmty. Affiliated Plans v. U.S. Dep't of Treasury*, 392 F. Supp. 3d 22, 40 (D.D.C. 2019), *aff'd sub nom. Ass'n for Cmty. Affiliated Plans*, 966 F.3d 782 (holding that "short-term" and "limited duration" must be read "in a manner that 'gives each phrase independent meaning'" (citation omitted)).

The Department's definition of STLDI as coverage that lasts for an initial term of 3 months and (with extensions or renewals) has a total duration of 4 months is consistent with this statutory text. Theses term and durational limits distinguish STLDI from individual health insurance coverage, which is typically renewable on a guaranteed basis every 12 months. *See* 89 Fed. Reg. at 23,355 ("[T]he new definition gives reasonable meaning to the terms 'short-term' and 'limited duration' since they reflect periods of time that are brief in comparison to the length of comprehensive coverage sold with an initial term of 12 months, on a guaranteed renewable basis."); *see also* 45 C.F.R. § 144.103 (defining "plan year" and "policy year"); 42 U.S.C. § 300gg-2 (guaranteeing renewability of coverage). And it gives independent meaning to the phrases "short-term" and "limited duration" by setting distinct time limits for an initial coverage term and total duration including extensions or renewals. These time periods, moreover, were not chosen at random. The Departments explained that providing for a 3-month initial term and 1-month extension brings the definition in alignment with the ACA's "waiting period," *see* 89 Fed. Reg. at 23,363, which refers to the period of time before a new employee's coverage becomes effective. *See* 42 U.S.C. § 300gg-3 (defining "waiting period"). Under the ACA, group health plans and health insurance issuers offering group health insurance coverage may not "apply any waiting period . . . that exceeds 90 days," *id.* § 300gg-7, which is measured from the conclusion of a

"reasonable and bona fide" orientation period that does not exceed one month, 26 C.F.R. § 54.9815-2708(c)(3)(iii); 45 C.F.R. § 147.116(c)(3)(iii). By bringing the STLDI definition in conformity with the ACA 90-day employment waiting period (including the 1-month orientation period), the 2024 Rule better "reflects STLDI's traditional role" of filling "temporary gaps in coverage" typically due to transitions in employment. 89 Fed. Reg. at 23,355, 23,363.

Moreover, the definition furthers the purposes of the relevant statutes. Congress recognized STLDI as a carve-out to individual health insurance coverage as part of a statutory scheme designed to "improve portability and continuity of health insurance coverage" and "improve access to long-term care services and coverage." Pub. L. No. 104-191, 110 Stat 1936. The STLDI exemption was carried over into the ACA, which served to expand access to comprehensive coverage and strengthen consumer protections. *See Ass'n for Cmty. Affiliated Plans*, 966 F.3d at 785. Consistent with those broader statutory purposes—and as Plaintiff itself emphasizes—STLDI has been long understood to be a temporary, gap-filler coverage for consumers who do not have access to individual health insurance coverage and all of its attendant protections, typically due to a job transition. 89 Fed. Reg. at 23,340; 83 Fed. Reg. at 38,213; *see* PI Br. 4. As the Departments explained, the 2024 Rule furthers these purposes by defining STLDI in a manner that allows consumers to clearly distinguish STLDI from individual health insurance coverage subject to Federal consumer protections and ensures that they are aware of their health coverage options, thereby "encourag[ing] enrollment in comprehensive coverage" rather than relying on STLDI as a substitute for such coverage. 89 Fed. Reg. at 23,351, 23,393. The Departments' determination that the 2024 STLDI definition was necessary and appropriate because it better carries out the statutory purposes falls well within its delegated statutory authority.

Plaintiff does not mount any serious challenge to the Departments' rulemaking authority here. Its overarching argument, that the Departments lack statutory authority to adopt "substantive" regulations relating to STLDI, *see* PI Br. 17-21, ignores Congress's delegation of authority to the Departments to promulgate regulations that are necessary or appropriate to carry out the relevant statutory provisions. In fact, Plaintiff does not mention that statutory grant of authority anywhere in its motion (or its Complaint), despite the fact that the Departments expressly identified it as the basis for the 2024 Rule in the preamble, *see, e.g.*, 89 Fed. Reg. at 23,339. Plaintiff bears the burden of showing a likelihood of success on the merits, and its failure to engage with the statutory text relevant to its claim is reason enough to deny its motion. What is more, Plaintiff's argument is self-defeating: taken to its logical conclusion, it would mean that the Departments' decades of rulemaking defining STLDI according to particular term or durational time limits are invalid—including the 2018 Rule Plaintiff prefers.

Because Plaintiff's challenge fails at its premise, Plaintiff's back-up arguments, which Plaintiff presents in the event "any doubt remain[s]" as to the Departments' lack of statutory authority, *see* PI Br. 21, necessarily fail as well. First, Plaintiff asserts that the 2024 Rule runs afoul of the major questions doctrine as articulated by the Supreme Court in *West Virginia v. EPA*, 142 S. Ct. 2587 (2022). PI Br. at 21-22. Not so. The major questions doctrine applies only in certain "'extraordinary cases' . . . in which the 'history and breadth of the authority that [the agency] has asserted,' and the 'economic and political significance' of that assertion, provide a 'reason to hesitate before concluding that Congress' meant to confer such authority." *West Virginia*, 142 S. Ct. at 2608 (citation omitted). In *West Virginia*, the Court emphasized that the agency had only recently located a "newfound power" in the "vague language" of an "ancillary provision" of the statute—one that "was designed to function as a gap filler and had rarely been used in the preceding

decades." *Id.* at 2610. Here, by contrast, the Departments have repeatedly exercised their authority to promulgate rules defining STLDI over the last three decades—beginning in 1997, shortly after enactment of the HIPAA provision first mentioning STLDI, until today. The Departments have not located a newfound power in vague statutory language but rather exercised long-established authority to define STLDI in order to carry out the relevant statutory provisions excepting it from Federal consumer protections. *See Ass'n for Cmty. Affiliated Plans*, 966 F.3d at 785, 789 (noting that "Congress delegated the task of defining STLDI to the Departments," giving them "discretion to define STLDI to include policies shorter than the standard policy term"). Nor is the meaning of STLDI a question of vast economic and political significance. Put simply, this is not a "major questions case." *West Virginia*, 142 S. Ct. at 2610.

Next, Plaintiff pivots to the nondelegation doctrine, claiming that any delegation here would be "unconstitutional as effected" because "Congress did not provide an intelligible principle to guide any rulemaking that would define STLDI terms." PI Br. 23. Yet Plaintiff's mere citation to the governing nondelegation standards, without any analysis of the statutory text authorizing the Departments' rulemaking here, does not cast doubt on the constitutionality of the Departments' authority. The nondelegation standards "are not demanding." *Big Time Vapes, Inc. v. FDA*, 963 F.3d 436, 442 (5th Cir. 2020). "It is 'constitutionally sufficient if Congress clearly delineates the general policy, the public agency which is to apply it, and the boundaries of th[e] delegated authority." *Id.* (quoting *Am. Power & Light Co. v SEC*, 329 U.S. 90, 105 (1946)). For more than 80 years, the Supreme Court has consistently upheld "Congress' ability to delegate power under broad standards," *Misretta v. United States*, 488 U.S. 361, 373 (1989)[9]; the Fifth Circuit likewise

---

[9] For instance, the Supreme Court has upheld statutes authorizing the Secretary of War to determine and recover "excessive profits" from military contractors, *Lichter v. United States*, 334 U.S. 742, 785-86 (1948) (quotation marks omitted); the Price Administrator to fix "fair and

has "uniformly upheld Congress's delegations," *BigTime Vapes*, 963 F.3d at 442 n.17; and courts have consistently upheld delegations that, like the provisions here, authorize agencies to issue regulations that are "necessary" or "appropriate," *see, e.g.*, *Allstates Refractory Contractors, LLC v. Su*, 79 F.4th 755, 765-66 (6th Cir. 2023), *cert. denied,* 144 S. Ct. 2490 (2024).

Congress's delegation of authority here fits comfortably within this decades-long precedent. As illustrated above, the Departments' authority is rooted in statutory provisions that delineate a general policy—to provide an exception to individual health insurance coverage and its attendant consumer protections—and fix the boundaries of the Departments' authority to define STLDI as distinct from individual health insurance coverage. The boundaries that Congress set specify that the exclusive carve-out to individual health insurance coverage must be "short-term" and of "limited duration." While those boundaries give "the Departments wide latitude," to expand or narrow the time periods applicable to STLDI, *Ass'n for Cmty. Affiliated Plans*, 966 F.3d at 789, that discretion is not unbounded. Any definition of STLDI, of course, must preserve its distinction from individual health insurance coverage, and be necessary or appropriate to administer the statutes distinguishing between both types of coverage.

Plaintiff seems to be of the view that if Congress did not explicitly describe STLDI as having specific term and durational limits, then the Departments cannot do so. PI Br. 15-16. But as courts, including the Fifth Circuit, recognize Congress is not always "aware of the particular problems or needs that [may] develop in an area" and therefore may choose to "delegate[] authority to the agencies, within the broad confines of the statutory scheme, to deal with the problems as

---

equitable" commodities prices, *Yakus v. United States*, 321 U.S. 414, 420 (1944) (quotation marks omitted)); the Sentencing Commission to promulgate then-binding Sentencing Guidelines for federal crimes, *Mistretta*, 488 U.S. at 374-77; and the Environmental Protection Agency to set nationwide air-quality standards limiting pollution to the level required to "protect the public health," *Am. Trucking*, 531 U.S. at 472 (quotation marks omitted).

they [arise]." *Diefenthal*, 681 F.2d at 1044 (citing *Am. Trucking Ass'n v. United States*, 344 U.S. 298, 309-12 (1953)). Here, Congress's delegation of discretion to give meaning to STLDI as a carve-out to individual health insurance coverage, within the broad confines of statutory schemes that expand access to comprehensive coverage and "nudg[e] individuals toward choosing more comprehensive insurance," *Ass'n for Cmty. Affiliated Plans*, 966 F.3d at 791, is constitutional.

Finally, Plaintiff suggests in the background section of its brief that a few examples of bills proposed between 2019 and 2021 relating to STLDI or the 2018 Rule indicate that the Departments lacked authority to issue the 2024 Rule. PI Br. 9. That proposed legislation does not support Plaintiff's argument. It either would have eliminated STLDI—which the 2024 Rule does not do— or would have invalidated the 2018 Rule and restored the 2016 Rule—another rule that defined STLDI as lasting for a term of up to 3 months, *see* 81 Fed. Reg. 75,316. For instance, one proposal referenced by Plaintiff provides that the 2018 Rule shall not be "give[n] effect," that the Departments "shall apply any regulation [it] revised" (*i.e.*, the 2016 Rule), and "may not promulgate any substantially similar rule" to the 2018 Rule. S.352, 117th Cong. § 104 (2021). If this proposed legislation has any relevance for determining the scope of the Departments' authority,[10] it is that Congress *does* understand the Departments to possess authority to define STLDI through regulation.

For all of these reasons, Plaintiff fails to show a likelihood of success on the merits of its claims that the Departments lacked statutory authority to issue the 2024 Rule.

---

[10] In general, it should not. *See Pension Ben. Guar. Corp. v. LTV Corp.*, 496 U.S. 633, 650 (1990) ("[S]ubsequent legislative history is a 'hazardous basis for inferring the intent of an earlier' Congress." (citation omitted)).

### 2.    The 2024 Rule is well-reasoned.

Plaintiff's claim that the Rule is arbitrary and capricious fares no better. Under arbitrary-and-capricious review, the agency need only "articulate a satisfactory explanation for [the] action including a rational connection between the facts found and the choice made." *Little Sisters of the Poor Saint Peter & Paul Home v. Pennsylvania*, 591 U.S. 657, 682 (2020). Applying this "deferential" standard, a court "simply ensures that the agency has acted within a zone of reasonableness," and "may not substitute its own policy judgment for that of the agency." *FCC v. Prometheus Radio Project*, 592 U.S. 414, 423 (2021). When an agency changes a policy, it need not demonstrate "that the reasons for the new policy are *better* than the reasons for the old one," but only that "the new policy is permissible under the statute, that there are good reasons for it, and that the agency *believes* it to be better." *FCC v. Fox Television Stations, Inc.*, 556 U.S. 502, 515 (2009).

The Departments' detailed account of the reasons for changing the STLDI definition easily satisfies this standard. As the 2024 Rule's preamble explained, STLDI is intended to be a temporary, gap-filling coverage for individuals "experiencing brief periods without comprehensive coverage." 89 Fed. Reg. at 23,346. But the Departments expressed concern that many consumers who did not "understand key differences between STLDI" and individual health insurance coverage subject to Federal consumer protections (i.e., comprehensive coverage) were relying on STLDI "as a substitute for comprehensive coverage," which placed them, unknowingly, at "significant financial and health risk[]." *Id.* Those risks were evidenced by extensive real-world examples of consumers facing unexpected out-of-pocket costs for uncovered health events. *Id.* at 23,348. They were also supported by market surveillance from the Government Accountability Office finding widespread evidence of deceptive marketing practices for STLDI and related products that would cause this consumer confusion; indeed, undercover agents investigating these

27

practices referred *one quarter* of their contacts to Federal law enforcement. *See id.* at 23,350 & n.106 (citing Private Health Coverage: Results of Covert Testing for Selected Offerings, GAO-20-634-R (Sept. 24, 2020)). At the same time, the Departments found that the perceived benefits of expanding access to STLDI that animated the 2018 Rule change had diminished in recent years: current data showed more positive trends in increasing access to affordable comprehensive coverage. *Id.* at 23,346–23,347. And one downside to expanding STLDI noted by the Departments in 2018 had taken on greater significance: "the extended contract terms and renewal periods of STLDI under" the 2018 Rule were resulting "in healthier consumers" opting out of "individual health insurance coverage for extended periods of time," which was driving up insurance premiums for everyone else who maintained individual health insurance coverage. *Id.* at 23,351. This evidence illustrated that it was "necessary and appropriate to amend the Federal definition of STLDI," not only to ensure that consumers could distinguish between STLDI and comprehensive coverage, but also to "stabilize premiums for individual health insurance coverage[] and promote access to affordable comprehensive coverage." *Id.* at 23,351. Those goals were better achieved, the Departments concluded, by defining STLDI as lasting for an initial period of 3 months with a 1-month extension for a total duration of 4 months. *Id.* at 23,363.

Plaintiff raises a series of meritless attacks on the Departments' well-reasoned rule change. For instance, Plaintiff objects that the Departments failed to support the 2024 Rule with "empirical evidence" of consumer confusion, PI Br. 7, 10, but "[t]he APA imposes no general obligation on agencies to produce empirical evidence. Rather, an agency has to justify its rule with a reasoned explanation." *Stilwell v. Off. of Thrift Supervision*, 569 F.3d 514, 519 (D.C. Cir. 2009) (Kavanaugh, J.).  As discussed above, the Departments have done just that, and more: the preamble contains extensive discussion of research and anecdotes from commenters raising concerns of

consumer confusion about the differences between STLDI and individual health insurance coverage, as well as evidence from government investigators of systemic deceptive marketing. *See, e.g.*, 89 Fed. Reg. at 23,384, 23,393 n.276.

Plaintiff then pivots to accusing the Departments of "utter[ly] disregard[ing]" comments on the proposed rule, even though the Rule's 72-page preamble extensively discusses and responds to comments all throughout. Plaintiff does not identify a single comment to which the Departments did not respond, and even if it had, that alone would not suffice. "The failure to respond to comments is significant only insofar as it demonstrates that the agency's decision was not based on a consideration of the relevant factors." *Wages & White Lion Invs., L.L.C. v. FDA*, 16 F.4th 1130, 1140 (5th Cir. 2021) (quoting *Sherley v. Sebelius*, 689 F.3d 776, 784 (D.C. Cir. 2012)). By simply attaching pages of written comments (many of which do not pertain to STLDI at all) to its brief and asserting without explanation that they were not responded to, Plaintiff cannot carry its burden of showing that the Departments failed to consider any relevant factors. And Plaintiff's reference to the Departments thanking commenters for suggestions that they "will take into consideration" in the future, PI Br. 11-12, contradicts Plaintiff's entire argument. The comments discussed in that section of the preamble concern recommendations the Departments could take *outside of the rulemaking process* to "educate consumers about their health coverage options," 89 Fed. Reg. at 23,367; the Departments responded to those comments by explaining some of the steps they were already taking to address those recommendations and noting that they would consider the recommendations further in future rulemaking or guidance. *See id.*; *cf. NTCH, Inc. v. FCC*, 950 F.3d 871, 881 (D.C. Cir. 2020) (agency may reasonably decline to respond to comments that are beyond the scope of the rulemaking).

Plaintiff also sprinkles in references to the Regulatory Flexibility Act (RFA), 5 U.S.C.

§ 601 *et seq*. *See* PI Br. 12-15.[11] But the RFA does not license more intensive scrutiny of the Departments' actions. It "is a procedural rather than substantive agency mandate," *Alenco Commc'ns, Inc. v. FCC*, 201 F.3d 608, 625 (5th Cir. 2000), generally requiring "federal agencies to consider the effect that agency regulations will have on small entities, analyze effective alternatives that may minimize a regulation's impact on such entities, and make the analyses available for public comment," *Grocery Servs., Inc. v. USDA Food & Nutrition Serv.*, 2007 WL 2872876, at *10 (S.D. Tex. Sept. 27, 2007). Given its procedural nature, "[o]nly a limited judicial review of agency compliance with the RFA is allowed." *Id.*; *Alenco Commc'ns*, 201 F.3d at 625 (Courts "review only to determine whether an agency has made a 'reasonable, good-faith effort' to carry out the mandate of the RFA." (citation omitted)).

Neither of Plaintiff's RFA-based objections identify any procedural flaw in the Departments' analysis. According to Plaintiff, the Departments' regulatory flexibility analysis is deficient, first, because it is based on "superficial data." PI Br. 12. But the RFA's procedural requirements do not mandate particular data standards. The RFA does not even "require economic analysis, but mandates only that the agency describe the steps it took 'to minimize the significant economic impact on small entities consistent with the stated objectives of applicable statutes.'" *Alenco Commc'ns*, 201 F.3d at 625 (quoting 5 U.S.C. § 604(a)(5)). The Departments did just that. *See* 89 Fed. Reg. at 23,408 ("delay[ing] the applicability dates for certain provisions to provide

---

[11] Plaintiff does not allege a separate claim under the RFA in the Complaint but folds RFA allegations into its claim (at count three) that the 2024 Rule is not supported by "substantial evidence" under 5 U.S.C. § 706(2)(E). Plaintiff does not raise in the preliminary injunction motion its claim that the 2024 Rule is unsupported by substantial evidence, and that claim has no merit regardless. The requirement that an agency action be supported by substantial evidence applies only to rules that "are required by statute to be made on the record after opportunity for an agency hearing," *id.* § 553(c); *id.* § 706(2)(E), and not to rules, like the 2024 Rule, subject to the informal notice-and-comment requirements at § 553(b).

more time for issuers (including small entities) to modify their products and implement the required changes"); *id.* at 23,405 (declining to adopt certain measures to prevent stacking in part because of "the potential challenges issuers . . . would face" in implementing those measures). Plaintiff's next befuddling charge is that the 2024 Rule's regulatory flexibility analysis does not consider significant alternatives. In doing so, Plaintiff quotes a section of the Departments' analysis *confirming* that alternatives were considered and "discussed in section V.C of th[e] preamble." PI Br. 14 (quoting 89 Fed. Reg. at 23,408). Section V.C, in turn, lists several alternatives to the 2024 Rule considered by the Departments, including (among other options) "leaving in place" the 2018 Rule's durational standards, "proposing to limit the maximum duration of STLDI policies to a less-than-6-month period," and taking additional measures to limit stacking. *See* 89 Fed. Reg. at 23,405. However, the Departments determined that "none of these alternatives would both achieve the policy objectives and goals of" the Rule "and be less burdensome to small entities." *Id.* at 23,408. The RFA's procedural mandates "require[] no more" than that. *Alenco Comm'ns*, 201 F.3d at 625.

Finally, repeating the contradicted assertion that the 2024 Rule is unsupported by evidence of consumer confusion, Plaintiff declares that the 2024 Rule's true purpose is to impermissibly restrict consumer choice by "rendering STLDI functionally useless." PI Br. 10. The extensive evidence of consumer confusion refutes this argument from the start. Given that evidence, as the Departments explained, the Rule *promotes* "informed choices" by allowing consumers to better understand their coverage options. 89 Fed. Reg. at 23,368. It does so not only by modifying the definition of STLDI but also by updating consumer notices that accompany plan documents. *Id.* (noting that the "revised notice communicates factual information to consumers about the differences between STLDI and comprehensive coverage and explains how consumers can find resources when consumers have questions about the different coverage options"). All of this

demonstrates that by modifying the definition of STLDI, the Departments did not seek to render STLDI useless but to "better capture[] the traditional role of STLDI." 89 Fed. Reg. at 23,363 Plaintiff itself does not dispute that STLDI's purpose is to provide coverage "for a short duration during" life transitions. PI Br. 4. Particularly in light of that purpose and the evidence considered by the Departments, it is not unreasonable that the 2024 Rule should "encourage enrollment in comprehensive coverage," contrary to Plaintiff's averments. *See* PI Br. 10. It is, rather, entirely congruent with Congress's intentions, through HIPPA, to improve continuity of and improve access to long-term coverage *see supra* Bckgd., and, through the ACA, to "nudge[] individuals toward choosing more comprehensive." *Ass'n for Cmty. Affiliated Plans*, 966 F.3d at 791.

At the end of the day, Plaintiff's quibble with the 2024 Rule is not with the reasonableness of the Departments' determinations but with the ultimate policy determination that the 2024 Rule better serves STLDI's purposes. Even if the Court, like Plaintiff, were to disagree with that policy outcome, the APA would not permit the Court to "substitute its judgment for that of the agency" where Congress delegated to the Departments the role of promulgating rules necessary or appropriate to carry out the relevant statutes' provisions. *Fox Television Stations*, 556 U.S. at 513-14. Plaintiff establishes no likelihood of success on the merits of its arbitrary-and-capricious claim.

### C. The balance of equities and the public interest disfavor a preliminary injunction.

Because Plaintiff has not made the required showing of either irreparable harm or a likelihood of success on the merits, there is no need for the Court to consider the final factors in the preliminary-injunction analysis. *See Byrum v. Landreth*, 566 F.3d 442, 445 (5th Cir. 2009); *Mayo Found. for Med. Educ. & Rsch. v. BP Am. Prod. Co.*, 447 F. Supp. 3d 522, 535 (N.D. Tex. 2020). But should the Court reach those factors, it should find that Plaintiff has failed to establish them as well. Plaintiff has failed to demonstrate—as it must—that its alleged injury outweighs the harm that the injunction would cause the Departments and third parties not before the Court, and

that granting the injunction would not "be adverse to public interest." *Star Satellite, Inc. v. City of Biloxi*, 779 F.2d 1074, 1079 (5th Cir. 1986); *see Southdown, Inc. v. Moore McCormack Res., Inc.*, 686 F. Supp. 595, 596 (S.D. Tex. 1988) (petitioner has burden to show injunction will cause "no disservice to unrepresented third parties").

The 2024 Rule serves important public interests. As explained, it protects consumers from potentially significant financial and health hardships by allowing them to "clearly distinguish" STLDI from individual health insurance coverage subject to federal consumer protections and increases their "awareness of coverage options that include the full range of Federal consumer protections and requirements." 89 Fed. Reg. at 23,346. It does this in the face of significant evidence of consumer confusion that existed prior to the promulgation of the 2024 Rule. And particularly now that the 2024 Rule has gone into effect, an injunction would add confusion for consumers who obtain a new STLDI policy after September 1, as it would raise questions about the length of such coverage (thereby frustrating any plans for obtaining comprehensive coverage) and expose consumers to potentially aggressive and deceptive marketing practices during the upcoming open enrollment period starting November 1. *See id.* at 23,405; 45 C.F.R. § 155.410(e)(5) (setting the timing for the individual market open enrollment period).

By contrast, Plaintiff shows no non-speculative harm absent an injunction. Plaintiff's hyperbolic declaration that "insurance policies for millions of Americans" will be "eradicate[ed]" if the Court declines to enter a preliminary injunction, has no legs to stand on. PI Br. 26. The 2024 Rule does not eliminate STLDI plans but only limits the term and duration of new plans, consistent with the designation "short-term limited duration insurance." Moreover, the 2024 Rule's changes to the duration standards do not apply to STLDI policies sold or issued prior to September 1, 2024. The balance of harms thus weighs squarely against preliminary injunctive relief.

33

IV.     **Any injunctive relief should be appropriately limited.**

If the Court disagrees with Defendants' arguments, any preliminary relief granted must be no broader than necessary to remedy any demonstrated irreparable harms of specifically identified members of the Plaintiff in this case. "A plaintiff's remedy must be tailored to redress the plaintiff's particular injury," *Gill v. Whitford*, 585 U.S. 48, 73 (2018), and "injunctive relief should be no more burdensome to the defendant than necessary to provide complete relief to the plaintiffs," *Madsen v. Women's Health Ctr., Inc.*, 512 U.S. 753, 765 (1994) (citation omitted).

Here, that means that any injunctive relief should extend only to Plaintiff or its identified members, not nationwide, consistent with any finding of organizational or associational standing. "Both the Fifth Circuit and the Supreme Court have suggested that nationwide injunctions are, at best, reserved for extraordinary circumstances." *Second Amend. Found. v. Bureau of Alcohol Tobacco, Firearms, & Explosives*, 2023 WL 4304760, at *3 (N.D. Tex. June 30, 2023), *aff'd in part*, 2023 WL 8597495 (5th Cir. Dec. 12, 2023) (citing *Louisiana v. Becerra*, 20 F.4th 260, 263-64 (5th Cir. 2021) (staying nationwide injunction of COVID-19 vaccination mandates as "an issue of great significance" that "will benefit from the airing of competing views in our sister circuits." (citation omitted)) and *Dep't of Homeland Sec. v. New York*, 140 S. Ct. 599, 600 (2020) (Gorsuch, J., concurring) (questioning propriety of nationwide injunctions)); *see also Trump v. Hawaii*, 138 S. Ct. 2392, 2429 (2018) (Thomas, J., concurring) (suggesting universal injunctions are inconsistent with "limits on equity and judicial power"). "At a minimum, a district court should think twice—and perhaps twice again—before granting universal anti-enforcement injunctions against the federal government." *Arizona v. Biden*, 40 F.4th 375, 395-96 (6th Cir. 2022) (Sutton, C.J., concurring).

Likewise, any injunction should be limited to only those portions of the 2024 Rule challenged by Plaintiff. As the Supreme Court explained, courts should "enjoin only the

unconstitutional applications of a statute while leaving other applications in force, . . . or . . . sever its problematic portions while leaving the remainder intact." *Ayotte v. Planned Parenthood of N. New England*, 546 U.S. 320, 328–29 (2006) (citation omitted). In addition to modifying the maximum term and duration of STLDI, the 2024 Rule updates the notice requirement applicable to STLDI plan documents and certain fixed indemnity plans. Plaintiff here, however, challenges only the STLDI definitional changes related to the duration standards at 45 C.F.R. § 144.103. If the Court grants any preliminary relief, it should be confined to that portion of the Rule, and the remainder of the provisions should remain in effect, consistent with the Departments' stated intent. *See* 89 Fed. Reg. at 23,391 ([I]f any provision finalized in these final rules related to STLDI is held to be invalid[,] . . . it shall be considered severable from its section and other sections of these rules[.]"); 45 C.F.R. § 144.103.

Plaintiff alternatively asks in passing for a "stay of the effective date" of the 2024 Rule, PI Br. 3, without developing an argument supporting that request. Presumably, Plaintiff seeks a stay under 5 U.S.C. § 705, which authorizes courts to "postpone the effective date of an agency action." *See* PI Br. 24 (referencing § 705 in a parenthetical). But "[g]iven this litigation's current procedural posture, 5 U.S.C. § 705 is inapposite." *VanDerStok v. Garland*, 633 F. Supp. 3d 847, 863 (N.D. Tex. 2022). The 2024 Rule is already in effect, and therefore "postpon[ment]" of the effective date is not an available remedy. *See id.*; *cf. Ctr. for Biological Diversity v. Regan*, 597 F. Supp. 3d 173, 204–05 (D.D.C. 2022) ("The word 'postpone' means 'to put off to a later time,' . . . [b]ut, once a rule has taken effect," its effective date "can no longer [be] 'put off.'" (internal citations omitted)).

## CONCLUSION

For the foregoing reasons, the Court should deny Plaintiff's motion for preliminary injunction.

Dated:  September 10, 2024                    Respectfully submitted,

                                             BRIAN M. BOYNTON
                                             Principal Deputy Assistant Attorney General

                                             MICHELLE R. BENNETT
                                             Assistant Branch Director

                                             */s/ Kyla M. Snow*
                                             KYLA M. SNOW
                                             Trial Attorney (Ohio Bar No. 96662)
                                             United States Department of Justice
                                             Civil Division, Federal Programs Branch
                                             1100 L St. NW
                                             Washington, DC 20005
                                             (202) 514-3259
                                             kyla.snow@usdoj.gov

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on September 10, 2024, a copy of the foregoing was filed electronically via the Court's ECF system, which effects service upon counsel of record.

<u>/s/ Kyla M. Snow</u>
KYLA M. SNOW
Trial Attorney
U.S. Department of Justice