**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**SHERMAN DIVISION**

| | |
|---|---|
| AMERICAN ASSOCIATION OF ANCILLARY BENEFITS, *et al.*,<br><br>    *Plaintiffs*,<br><br>    v.<br><br>XAVIER BECERRA, in his official capacity as Secretary of the United States Department of Health and Human Services, *et al.*,<br><br>    *Defendants*. | Case No. 4:24-cv-00783-SDJ |

**DEFENDANTS' CROSS-MOTION FOR SUMMARY JUDGMENT AND RESPONSE IN
<u>OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT</u>**

## <u>TABLE OF CONTENTS</u>

INTRODUCTION ...................................................................................................1

STATEMENT OF THE ISSUES ..........................................................................3

RESPONSE TO PLAINTIFFS' STATEMENT OF THE ISSUES ....................3

BACKGROUND ...................................................................................................4

I.      Statutory Background ...............................................................................4

II.     Regulatory Background ............................................................................6

        A.      Pre-2024 STLDI Rules .................................................................6

        B.      The 2024 Rule ...............................................................................9

III.    Procedural Background ..........................................................................12

LEGAL STANDARD .........................................................................................13

ARGUMENT .....................................................................................................13

I.      The 2024 Rule Falls Well Within the Departments' Authority to Issue Regulations
        "Necessary or Appropriate" to Carry out the Relevant Statutes. .....................14

        A.      The Departments Have Discretionary Authority to Define STLDI by
                Regulation...................................................................................14

        B.      The 2024 Rule Falls Squarely Within the Departments' Statutory
                Authority.....................................................................................16

        C.      Plaintiffs Fail to Show that the Departments Lack Statutory Authority to
                Define STLDI or to Promulgate the 2024 Rule...........................20

                1.      Plaintiffs' Purported Nondelegation Claim Fails. ...................20

                2.      The Major Questions Doctrine is Inapplicable. ......................22

                3.      Plaintiffs Otherwise Fail to Show the 2024 Rule Exceeds the
                        Departments' Authority..................................................26

II.     The 2024 Rule is Reasonable and Reasonably Explained. ...............................29

III.    To the Extent Plaintiffs Assert a Regulatory Flexibility Act Claim, It Has No
        Merit. ..............................................................................................35

IV.     Any Relief Should Be Appropriately Limited. ................................................38

CONCLUSION.................................................................................................................40

## TABLE OF AUTHORITIES

**Cases**

*Alaska Airlines, Inc. v. Brock*,
    480 U.S. 678 (1987) ..................................................................... 40

*Alenco Commc'ns, Inc. v. FCC*,
    201 F.3d 608 (5th Cir. 2000) ............................................. 36, 37, 38

*Allstates Refractory Contractors, LLC v. Su*,
    79 F.4th 755 (6th Cir. 2023) ................................................. 17, 22

*Am. Hosp. Ass'n v. Becerra*,
    No. 4:23-cv-1110, 2024 WL 3075865 (N.D. Tex. June 20, 2024) ...................... 39

*Am. Stewards of Liberty v. U.S. Dep't of Interior*,
    370 F. Supp. 3d 711 (W.D. Tex. 2019) .......................................... 4, 13

*Am. Power & Light Co. v SEC*,
    329 U.S. 90 (1946) ........................................................... 22

*APA. Data Mkg. P'ship, LP v. U.S. Dep't of Labor*,
    45 F.4th 846 (5th Cir. 2022) ................................................. 39

*Arizona v. Biden*,
    40 F.4th 375 (6th Cir. 2022) ................................................ 39

*Ass'n for Cmty. Affiliated Plans v. U.S. Dep't of the Treasury*
    (ACAP), 966 F.3d 782 (D.C. Cir. 2020) ................................... *passim*

*AT&T Corp. v. Iowa Utils. Bd.*,
    525 U.S. 366 (1999) ......................................................... 15

*Biden v. Missouri*,
    595 U.S. 87 (2022) .......................................................... 25

*Biden v. Nebraska*
    143 S. Ct. 2355 (2023) ...................................................... 23

*Big Time Vapes, Inc. v. FDA*,
    963 F.3d 436 (5th Cir. 2020) ............................................. 21, 22

*Brackeen v. Haaland*,
    994 F.3d 249 (5th Cir. 2021) ................................................ 14

*Br. for Petitioners at 39-44, United States v. Texas*,
    599 U.S. 670 (2023) ......................................................... 39

*California v. Texas*,
    593 U.S. 659 (2021) ......................................................... 39

*Conway v. United States*,
    997 F.3d 1198 (Fed. Cir. 2021) ...................................................................... 29

*DaimlerChrysler Corp. v. Cuno*,
    547 U.S. 332 (2006) ...................................................................................... 29

*Dep't of Commerce v. New York*,
    588 U.S. 752 (2019) ...................................................................................... 28

*Diefenthal v. C. A. B.*,
    681 F.2d 1039 (5th Cir. 1982) ................................................................ 14, 15

*Encino Motorcars, LLC v. Navarro*,
    579 U.S. 211 (2016) ...................................................................................... 28

*FCC v. Fox Television Stations, Inc.*,
    556 U.S. 502 (2009) ................................................................ 30, 33, 34, 35

*FCC v. Prometheus Radio Project*,
    592 U.S. 414 (2021) ........................................................................ 30, 33, 37

*Fed. Power Comm'n v. Hope Nat. Gas Co.*,
    320 U.S. 591 (1944) ...................................................................................... 22

*Fla. Growers Ass'n, Inc. v. Su*,
    No. 8:23-cv-889, 2024 WL 670464 (M.D. Fla. Jan. 5, 2024) ............................. 36

*Gill v. Whitford*,
    585 U.S. 48 (2018) ................................................................................. 39, 40

*Grocery Servs., Inc. v. USDA FNS.*,
    No. 06-2354, 2007 WL 2872876 (S.D. Tex. Sept. 27, 2007) ............................. 37

*Gundy v. United States*,
    588 U.S. 128 (2019) ................................................................................. 21, 22

*Haaland v. Brackeen*,
    599 U.S. 255 (2023) ...................................................................................... 14

*Immigr. Reform Coal. Of Texas v. Texas*,
    706 F. Supp. 2d 760 (S.D. Tex. 2010) ............................................................ 29

*J.W. Hampton, Jr., & Co. v. United States*,
    276 U.S. 394 (1928) ...................................................................................... 21

*K Mart Corp. v. Cartier, Inc.*,
    486 U.S. 281 (1988) ...................................................................................... 40

*King v. Burwell*,
    576 U.S. 473 (2015) ...................................................................................... 24

*Little Sisters of the Poor Saint Peter & Paul Home v. Pennsylvania*,
   591 U.S. 657 (2020) ............................................................ 29

*Loper Bright Enter. v. Raimondo*,
   144 S. Ct. 2244 (2024) .................................................... *passim*

*Luminant Generation Co. LLC v. EPA*,
   714 F.3d 841 (5th Cir. 2013) ............................................ 13

*Madsen v. Women's Health Center, Inc.*,
   512 U.S. 753 (1994) ............................................................ 39

*Michigan v. EPA*,
   576 U.S. 743 (2015) ............................................................ 17

*Misretta v. United States*,
   488 U.S. 361 (1989) ............................................................ 22

*Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Automobile Ins. Co.*,
   463 U.S. 29 (1983) ............................................ 16, 17, 33, 34

*Mourning v. Fam. Publ'n Serv., Inc.*,
   411 U.S. 356 (1973) ...................................................... 14, 28

*Nat'l Broad. Co. v. United States*,
   319 U.S. 190 (1943) ............................................................ 22

*Nat'l Tel. Co-op. Ass'n v. F.C.C.*,
   563 F.3d 536 (D.C. Cir. 2009) ......................................... 37

*NTCH, Inc. v. FCC*,
   950 F.3d 871 (D.C. Cir. 2020) ......................................... 38

*Nuziard v. Minority Bus. Dev. Agency*,
   721 F. Supp. 3d 431 (N.D. Tex. 2024) ............................ 39

*Pension Ben. Guar. Corp. v. LTV Corp.*,
   496 U.S. 633 (1990) ............................................................ 25

*Trump v. Hawaii*,
   585 U.S. 667 (2018) ............................................................ 39

*United States v. Montalvo-Murillo*,
   495 U.S. 711 (1990) ............................................................ 20

*United States v. Jones*,
   132 F.3d 232 (5th Cir. 1998) ............................................ 21

*United States v. Price*,
   361 U.S. 304 (1960) ............................................................ 25

*W. Wood Preservers Inst. v. McHugh*,
   925 F. Supp. 2d 63 (D.D.C. 2013) ................................................................. 36

*West Virginia v. EPA*,
   597 U.S. 697 (2022) ....................................................................... 23, 25

*Whitman v. Am. Trucking Ass'n*,
   531 U.S. 457 (2001) ........................................................................ 22

**Statutes**

5 U.S.C. § 553 ............................................................................... 35

5 U.S.C. § 601 ........................................................................... 35, 36

5 U.S.C. § 607 ............................................................................... 37

5 U.S.C. § 611 ............................................................................... 35

5 U.S.C. § 706 ..................................................................... 13, 35, 39

5 U.S.C. §§ 601 ............................................................................. 35

15 U.S.C. § 632 ............................................................................. 36

15 U.S.C. § 1012 ........................................................................... 29

26 U.S.C. § 9833 ......................................................................... 2, 5

29 U.S.C. § 1191c ....................................................................... 2, 5

42 U.S.C. § 300gg-2 ....................................................................... 18

42 U.S.C. § 300gg-3 ..................................................................... 5, 19

42 U.S.C. § 300gg-6 ........................................................................ 5

42 U.S.C. § 300gg-7 ....................................................................... 19

42 U.S.C. § 300gg-46 ....................................................................... 6

42 U.S.C. § 300gg-91 ................................................................ *passim*

42 U.S.C. § 300gg-92 ..................................................... 2, 5, 14, 15

42 U.S.C. § 7412 ...................................................................... 16, 17

42 U.S.C. § 18111 .......................................................................... 6

42 U.S.C. §§ 300gg-11, 300gg-12 ........................................................ 4

42 U.S.C. §§ 300gg-41, 300gg-42 ........................................................ 4

**Rules**

Fed. R. Civ. P. 56 ......................................................................... 13

**Regulations**

26 C.F.R. § 54.9801-6 ...................................................................... 6

26 C.F.R. § 54.9815-2708 ................................................................. 19

29 C.F.R. § 2590.715-2708 ............................................................................... 19

45 C.F.R. § 144.103 .................................................................................... 12, 18

45 C.F.R. § 147.116 ........................................................................................ 19

45 C.F.R. § 146.117 .......................................................................................... 6

62 Fed. Reg. 16894 (Apr. 8, 1997) ............................................................... 7, 26

69 Fed. Reg. 78720 (Dec. 30, 2004) ................................................................. 6

69 Fed. Reg. 78748 (Dec. 30, 2004) ............................................................ 7, 26

79 Fed. Reg. 30240 (May 27, 2014) ................................................................. 4

81 Fed. Reg. 38020 (Jun. 10, 2016) ................................................................. 8

81 Fed. Reg. 75316 (Oct. 31, 2016) ......................................................... *passim*

83 Fed. Reg. 38212 (Aug. 3, 2018) .......................................................... *passim*

85 Fed. Reg. 72158 (Nov. 12, 2020) ................................................................ 6

87 Fed. Reg. 52618 (Aug. 26, 2022) ............................................................. 5-6

89 Fed. Reg. 23338 (Apr. 3, 2024) ........................................................... *passim*

## INTRODUCTION

Short-term, limited-duration insurance ("STLDI") is temporary, stop-gap health insurance coverage for individuals transitioning between different sources of comprehensive health insurance coverage, typically due to changes in employment. STLDI is exempt from the panoply of Federal consumer protections that attach to comprehensive coverage, including protections against discrimination, surprise billing, and the denial of coverage for preexisting conditions. Congress first recognized STLDI as an exception to individual health insurance coverage, and its attendant consumer protections, through the passage of the Health Insurance Portability and Accountability Act of 1996 ("HIPAA"). But Congress has not defined STLDI.

Since 1997, the Departments of Health and Human Services (HHS), Labor, and the Treasury ("the Departments") have promulgated regulations defining STLDI as coverage that lasts for certain maximum time periods. In 2016, for example, the Departments issued regulations limiting STLDI's coverage period to a maximum duration, including renewals, of up to 3 months. *See* 81 Fed. Reg. 75316 (Oct. 31, 2016) ("2016 Rule"). In 2018, the Departments defined STLDI as lasting for an initial term of less than 12 months and a total duration (including renewals and extensions) of 3 years. *See* 83 Fed. Reg. 38212 (Aug. 3, 2018) ("2018 Rule"). In the years following the 2018 Rule, faced with mounting evidence of consumer confusion, exacerbated by aggressive or deceptive marketing practices, the Departments determined that it was necessary and appropriate to update the definition to allow consumers to better distinguish STLDI from individual health insurance coverage with its full slate of protections. So in April 2024, the Departments finalized a rule defining STLDI as coverage that lasts for an initial maximum term of 3 months and a total duration (including renewals and extensions) of 4 months. 89 Fed. Reg. 23338 (Apr. 3, 2024) ("2024 Rule").

Plaintiffs prefer the 2018 Rule. They challenge the 2024 Rule as, among other things,

exceeding the Departments' statutory authority and being arbitrary and capricious. None of Plaintiffs' claims have merit. Through flexible language authorizing the Departments to issue regulations that are "necessary or appropriate to carry out" statutory provisions related to health coverage, 42 U.S.C. § 300gg-92; *accord* 26 U.S.C. § 9833; 29 U.S.C. § 1191c, Congress conferred on the Departments discretionary authority to give meaning to the undefined term "short-term limited duration insurance." Those authorizing statutes and the text of the provision introducing STLDI as an exception from individual health insurance, *see* 42 U.S.C. § 300gg-91(b)(5), work together to meaningfully guide the Departments' exercise of discretion. And the 2024 Rule falls comfortably within the boundaries of those textual guidelines. It gives meaning to the terms "short-term" and "limited duration," clearly distinguishes STLDI from individual health insurance coverage, and—in the Departments' judgment—is necessary and appropriate to ensure that consumers understand that STLDI is not comprehensive coverage carrying the full range of Federal consumer protections. Moreover, for a multitude of reasons, the Departments reasonably concluded that the 2024 Rule is superior to the 2018 Rule, including the existence of significant consumer confusion under the definition adopted in the 2018 Rule.

Plaintiffs offer no meaningful arguments to the contrary. They do not analyze the textual boundaries guiding the Departments' authority, or the reasons the Departments provided for the 2024 Rule, but instead rest on record misstatements and conclusory legal assertions. They contend, among other things, that the Departments have asserted a "limitless" delegation to define STLDI and lacked sufficient data to support the 2024 Rule. *See* Pls.' Mem. in Supp. of Summ. J. 14, ECF No. 34 ("Pls.' Mem."). But the record shows otherwise, as detailed below. Moreover, Plaintiffs' case is contradictory: on the one hand, Plaintiffs assert that the Departments lack authority to define STLDI altogether and only the Court may construe its meaning, *see id.* at 21; but on the other

hand, Plaintiffs contend that the Court may decline to define STLDI and simply vacate the 2024 Rule to let the 2018 Rule be reinstated, *id.* at 24. But if the 2024 Rule is unlawful because the Departments lack authority to define STLDI, then so too is the 2018 Rule. Perhaps for this reason, Plaintiffs previously agreed that the Departments "[a]bsolutely" have "rulemaking authority to define [STLDI]." Hearing Trans. 24:10-13 (attached as Ex. A). The unsupported and contradictory nature of Plaintiffs' claims show that, ultimately, Plaintiffs seek this Court's resolution of a policy dispute over the appropriate length of the statutorily undefined term "STLDI," which Congress authorized the Departments to decide. The Court should decline Plaintiffs' invitation to engage in "policymaking left to the political branches." *Loper Bright Enterprises v. Raimondo*, 144 S. Ct. 2244, 2268 (2024). The 2024 Rule is lawful and should be upheld.

## STATEMENT OF THE ISSUES

1) Whether the Departments have statutory authority to define STLDI by regulation and whether the 2024 Rule falls within that authority. *See* Am. Compl. ¶¶ 71-87 (counts one and two).

2) Whether the 2024 Rule is arbitrary and capricious. *See* Am. Compl. ¶¶ 97-106 (count four).

3) Whether Plaintiffs have shown they are small entities entitled to bring a claim under the Regulatory Flexibility Act (RFA) and, if so, whether the 2024 Rule complies with the RFA's procedural requirements. *See* Am. Compl. ¶¶ 88-96 (count three).

4) The appropriate scope of relief if the Court agrees with Plaintiffs on the merits of any of their claims (but it should not).

## RESPONSE TO PLAINTIFFS' STATEMENT OF THE ISSUES

The Departments disagree with Plaintiffs' statement of the issues to the extent they contain argumentation and their own characterization of the Departments' actions. The 2024 Rule is well within the Departments' statutory authority to issue regulations that carry out the provisions of the relevant statutes, including provisions concerning the undefined term STLDI, and that

congressional grant of authority does not violate the non-delegation doctrine or implicate the major questions doctrine. *See* Pls.' Mem. 2-3, Issues I, II, & VI. The McCarran-Ferguson Act is irrelevant to the question of statutory authority. *Id.*, Issue V. The 2024 Rule also is a product of reasoned decisionmaking. *Id.*, Issue I. While Plaintiffs have not shown they are small entities that can bring a claim under the RFA, the 2024 Rule complies with the RFA's procedural requirements regardless. *Id.*, Issue IV. Plaintiffs have not shown entitlement to vacatur of the 2024 Rule. *Id.*, Issue III.

## **BACKGROUND**[1]

### I.    **Statutory Background**

Over the last several decades, Congress has enacted legislation that strengthens Federal consumer protections accompanying health plans available in the group and individual markets. Through HIPAA, which aimed to "improve portability and continuity of health insurance coverage," Congress limited the circumstances in which consumers who changed jobs could be denied coverage later based on preexisting conditions. 42 U.S.C. §§ 300gg-11, 300gg-12 (group market); *id.* at §§ 300gg-41, 300gg-42 (individual market); *see* 79 Fed. Reg. 30240, 30244 (May 27, 2014). In 2010, through the Patient Protection and Affordable Care Act ("ACA"), Pub. L. No. 111-148, 124 Stat. 119, Congress greatly expanded the protections applicable in the group and individual markets. Among other things, the ACA precludes denial of benefits based on preexisting

---

[1] This background section serves as the Departments' statement of undisputed material facts. *See* Local Rule CV-56(a). In response to Plaintiffs' statement of undisputed material facts, *see id.* CV-56(b), which was a numbered-paragraph discussion of statutory and regulatory background, *see* Pls.' Mem. 2-11, the Departments note that the merits of this Administrative Procedure Act ("APA") case do not present any factual disputes but only the question whether, "as a matter of law," the Departments' "action is supported by the administrative record and consistent with the APA standard of review." *Am. Stewards of Liberty v. U.S. Dep't of Interior*, 370 F. Supp. 3d 711, 723 (W.D. Tex. 2019). Additionally, portions of Plaintiffs' statement of material facts consist of argument or their own characterization of the record, which are not appropriately understood as facts. Any of Plaintiffs' statements that are inconsistent with the administrative record are denied. Defendants respond to Plaintiffs' legal arguments below.

conditions, 42 U.S.C. § 300gg-3, and requires that certain insurance plans cover essential health benefits, *id.* § 300gg-6. Other laws have added to the slate of protections applicable to health plans. For instance, the No Surprises Act (enacted as title I of Division BB of the Consolidated Appropriations Act, 2021, Pub. L. 116-260, 134 Stat 1182 (2020)) precludes surprise medical bills for certain out-of-network services and offers other billing protections. Health plans that are subject to these Federal consumer protections are generally referred to as "comprehensive coverage." *See* 89 Fed. Reg. at 23338.

The HIPAA, ACA, No Surprises Act, and related legislation implement these protections through parallel amendments to three separate statutes: the Employee Retirement Income Security Act of 1974 ("ERISA"), the Internal Revenue Code ("Code"), and the Public Health Service Act ("PHS Act") (collectively, "the statutes"). These separate statutes are, in turn, administered by three separate agencies: the Department of Labor enforces ERISA, the Department of the Treasury administers the Code, and HHS is responsible for the PHS Act. Congress delegated to the Departments the authority to "promulgate such regulations as may be necessary or appropriate to carry out the provisions" of these three statutes relating to individual and group health insurance coverage. *See* 42 U.S.C. § 300gg-92 (authorizing HHS regulations to carry out title XXVII of the PHS Act, which governs "health insurance coverage" requirements); 26 U.S.C. § 9833 (authorizing Department of Treasury regulations to carry out Chapter 100 of the Code, which governs "group health plan requirements"); 29 U.S.C. § 1191c (authorizing Department of Labor regulations to carry out part 7 of ERISA, which governs "group health plan requirements").[2] The Departments often issue joint regulations implementing the statutes. *See, e.g.*, 87 Fed. Reg. 52618

---

[2] For ease of reference, hereinafter, references to the PHS Act provision at 42 U.S.C. § 300gg-92 includes the parallel provisions at 26 U.S.C. § 9833 and 29 U.S.C. § 1191c unless stated otherwise.

(Aug. 26, 2022); 85 Fed. Reg. 72158 (Nov. 12, 2020); 69 Fed. Reg. 78720 (Dec. 30, 2004).

The consumer protections implemented by the statutes, however, generally do not apply to STLDI[3]—insurance coverage typically understood as filling "temporary gaps in coverage that may occur when an individual is transitioning from one plan or coverage to another[.]" 89 Fed. Reg. at 23340; 83 Fed. Reg. at 38213. Although Congress has not defined STLDI, it recognized STLDI in HIPAA as an exception to individual health insurance coverage in a provision defining the latter.[4] Specifically, Congress provided that "individual health insurance coverage" means "health insurance coverage offered to individuals in the individual market, but [it] does not include short-term limited duration insurance." 42 U.S.C. § 300gg-91(b)(5). The ACA expressly incorporates by reference this definition of "individual health insurance coverage," including the STLDI exception. *See id.* § 18111. But rather than defining STLDI itself, Congress "delegated th[at] task . . . to the Departments" through authorization to "promulgate such regulations as may be necessary or appropriate to carry out" the statutes' provisions. *Ass'n for Cmty. Affiliated Plans v. U.S. Dep't of the Treasury* ("*ACAP*"), 966 F.3d 782, 785 (D.C. Cir. 2020) (citation omitted).

## II.    Regulatory Background

### A.  Pre-2024 STLDI Rules

Since 1997, shortly after HIPAA's enactment, the Departments have exercised their delegated authority to define STLDI through regulation. In interim final rules issued in 1997, the

---

[3] However, the agent and broker compensation disclosure and reporting requirements in section 2746 of the PHS Act apply to health insurance issuers offering individual health insurance coverage or STLDI. *See* 42 U.S.C. § 300gg-46.

[4] The definition of individual health insurance coverage (and its exclusion of STLDI) has some limited relevance with respect to certain provisions that apply to group health plans and group health insurance issuers. For example, an individual who loses coverage due to moving out of a health maintenance organization (HMO) service area in the individual market is eligible for a special enrollment period to enroll in a group health plan. *See* 26 C.F.R. § 54.9801-6(a)(3)(i)(B), 29 C.F.R. § 2590.701-6(a)(3)(i)(B), and 45 C.F.R. § 146.117(a)(3)(i)(B).

Departments first defined STLDI as coverage that has an expiration date "within 12 months of the date of the" contract's effective date, inclusive of "any extensions that may be elected by the policyholder without the issuer's consent." 62 Fed. Reg. 16894, 16928 (Apr. 8, 1997). The definition accommodated a then-existing 12-month preexisting condition exclusion period, during which period employer-sponsored health plans could deny benefits for preexisting conditions in certain circumstances. *Id.* at 16896–98; 89 Fed. Reg. at 23355 (explaining the history). That definition was finalized in 2004, *see* 69 Fed. Reg. at 78748, and remained in effect until 2016.

In 2016, following the ACA's enactment—and in light of its prohibition of preexisting condition exclusions and other consumer protections—the Departments modified the definition of STLDI. The 2016 Rule addressed concerns that STLDI was being sold as a form of primary health coverage, contrary to its design to "fill temporary coverage gaps," and in tension with the ACA's expanded Federal consumer protection requirements. 81 Fed. Reg. 75316–18. Because STLDI was generally not subject to Federal consumer protections, the Departments were concerned that it did not "provide meaningful health coverage" to consumers who relied on it as a substitute for individual health insurance coverage. *Id.* At the same time, the Departments believed that longer-term STLDI plans could pull healthier consumers out of the risk pool established by the ACA, which would drive up premiums for those who remained in the market. *See id.* at 75317–18, 75322. The Departments also reasoned that access to STLDI with longer term and duration periods was less important after the ACA's reforms: the ACA's "guaranteed availability of coverage and special enrollment period requirements in the individual health insurance market" allowed individuals to purchase coverage with more extensive consumer protections to fill in gaps in coverage that STDLI was traditionally meant to fill. *Id.* at 75317. Therefore, the Departments redefined STLDI to be coverage that "has an expiration date . . . that is less than 3 months after the original effective

date of the contract," inclusive of "any extensions that may be elected by the policyholder with or without the issuer's consent." *Id.* at 75318. The definition also included a requirement that a notice be "prominently displayed" in any STLDI contract and application materials to ensure individuals were aware that STLDI was not comprehensive coverage. *Id.*

In explaining this change, the Departments emphasized that this definition also added "with or" before "without the issuer's consent." *Id.* That new language was meant "to address the Department's concern that some issuers [were] taking liberty with the [former] definition of [STLDI]—either by automatically renewing such policies or having a simplified reapplication process," in order to extend STLDI coverage for a period "much longer than 12 months," even though STLDI "does not contain the important protections of the [ACA]." *Id.*; *see also* 81 Fed. Reg. 38020, 38032–33 (Jun. 10, 2016) ("2016 Proposed Rule"). Some commenters, the Departments added, had "requested that the Departments go further and prohibit issuers from offering [STLDI] to consumers who have previously purchased this type of coverage" from any issuer, thereby "prevent[ing] consumers from stringing together coverage under policies offered by the same or different issuers." 81 Fed. Reg. at 75318. The Departments declined to adopt this limitation, however, because it would be "difficult for State regulators to enforce, since prior coverage of a consumer would have to be tracked," and "not warranted," because the ACA's requirement that individuals "obtain minimum essential coverage in order to avoid an additional payment with their taxes" would disincentivize consumers to seek out multiple successive plans. *Id.* The Departments therefore focused simply on limiting the ability of issuers to offer STLDI plans with renewability options designed to mimic, and serve as a substitute for, comprehensive coverage. *See id.*

In 2018, concerned that consumers did not have sufficient access to affordable coverage,

the Departments modified the definition of STLDI to extend its length of coverage. *See* 83 Fed. Reg. 38212. The 2018 Rule defined STLDI as coverage that "[h]as an expiration date . . . that is less than 12 months after the original effective date of the contract and, taking into account renewals or extensions, has a duration of no longer than 36 months in total." *Id.* at 38242. The definition also kept the prior rule's notice requirement, with modifications. *Id.* at 38235. However, the definition did not "prevent consumers from stringing together coverage under separate policies offered by the same or different issuers, for total coverage periods that would exceed 36 months." *Id.* at 38222. The Departments reasoned that this definition change was necessary and appropriate because, at that time, there was a "need for coverage options that [were] more affordable than individual health insurance coverage," as well as a "general need for more coverage options and choice." *Id.* at 38216–17. Although "primarily designed to fill temporary gaps in coverage," the Departments explained, STLDI could "provide a more affordable, and potentially desirable, coverage option for some consumers, such as those who cannot afford unsubsidized coverage in the individual market." *Id.* at 23213, 38217. At the same time, the Departments acknowledged that expanding STLDI coverage could have downsides, because it could "impact . . . the risk pools," and "therefore raise premiums for individual health insurance coverage[.]" *Id.* at 23217, 38233.

### B.  The 2024 Rule

In 2024, in response to evidence of significant consumer confusion about the difference between comprehensive coverage and STLDI—and its lack of Federal consumer protections—the Departments modified the definition of STLDI make it easier for consumers to distinguish it from comprehensive coverage. *See* 89 Fed. Reg. 23338. In the 2024 Rule, the Departments defined STLDI as coverage that "[h]as an expiration date . . . that is no more than 3 months after the original effective date of the policy, . . . and taking into account any renewals or extensions, has a

9

duration of no longer than 4 months in total." *Id.* at 23410. Additionally, to prevent issuers from "circumventing the rules related to maximum duration and making it more challenging for consumers to distinguish STLDI from comprehensive coverage," the definition precludes issuers from "enroll[ing] consumers in multiple consecutive STLDI policies that together provide coverage for 12 months (or longer)"—a practice commonly referred to as "stacking." *Id.* at 23364. To close the "stacking loophole," the Departments interpreted "renewal or extension" in the STLDI definition to include a new STLDI policy that is issued by the same issuer or any member of that issuer's "controlled group"[5] within the 12-month period beginning on the effective date of the initial STLDI contract. *Id.* at 23352. The 2024 Rule also modifies the notice that must accompany STLDI policies and related documents. *Id.*

The 2024 Rule is accompanied by a lengthy preamble detailing the Departments' rationale behind the changed definition and responding to public comments on the proposed rule issued the year before. In that preamble, the Departments reiterated STLDI's "traditional role" of "provid[ing] coverage for temporary gaps for consumers transitioning between comprehensive coverage." *Id.* at 23363. Despite that gap-filling purpose, however, the Departments found that STLDI was being "offered as an alternative to comprehensive coverage," *id.* at 23351, which increased "financial and health risks" to consumers because STLDI did not offer the same consumer protections as comprehensive coverage, *id.* at 23346. The risks were particularly problematic for "[c]onsumers who [did] not understand key differences between STLDI" and individual health insurance coverage, the Departments found. *Id.* Those consumers could find themselves being hit with unexpected medical bills and exorbitant out-of-pocket maximums because they were unaware of their STLDI plan's coverage limits and its absence of Federal

---

[5] A "controlled group" is "any group treated as a single employer[.]" *Id.* at 23352.

consumer protections. *Id.* at 23348 (discussing one consumer's unexpected bills for $800,000 for cancer treatment not covered by his STLDI policy); *id.* (citing research finding that out-of-pocket maximums for STLDI were "on average nearly three times that of comprehensive coverage in 2020"). Adding to the evidence of consumer confusion were studies and anecdotes revealing "deceptive or aggressive marketing of STLDI . . . to consumers who may be unaware of the coverage limits of these plans," *id.* at 23349, 23365–67 (discussing studies revealing aggressive or deceptive marketing practices). All of that made it "necessary and appropriate," in the Departments' view, to modify the definition of STLDI in a way that would allow consumers to "clearly distinguish STLDI from comprehensive coverage," *id.* at 23351, and restore STLDI to its gap-filling role, *id.* at 23363. The Departments believed that the shorter term and duration periods would achieve that goal.

The Departments also found that changed factual circumstances since the 2018 Rule supported the 2024 Rule. First, the Departments noted that the affordability and accessibility concerns underlying the 2018 Rule had lessened in recent years. *Id.* at 23346. Expanded subsidies through recent legislation had made comprehensive coverage options more affordable for many consumers, as evidenced by increasing enrollment in comprehensive coverage; and many more consumers had multiple comprehensive plan options to choose from. *Id.* at 23346–47. Second, the Departments reassessed their expressed optimism in the 2018 Rule that individuals with STLDI, as opposed to no insurance, might have improved health outcomes and greater protection from catastrophic health care expenses. *Id.* at 23349. The Departments observed, for instance, that individuals enrolled in STLDI during the COVID-19 public health emergency "typically face[d] significant limitations on coverage for COVID-19 related treatments, and high out-of-pocket expenses," and also missed out on other important comprehensive coverage expansions enacted

by Congress. *Id.* Third, the Departments explained that new evidence substantiated the concerns expressed in the 2018 Rule preamble that expanding STLDI could increase premiums for individual health insurance coverage. *Id.* at 23351. They expected that the 2024 Rule would stabilize the risk pools and lead to lower premiums, because fewer healthy consumers would rely on STLDI as a substitute for comprehensive coverage. *Id.* at 23356.

## III.   Procedural Background

Plaintiff American Association of Ancillary Benefits ("AAAB") initiated this action on August 29, 2024, *see* Corrected Compl., ECF No. 2 ("Compl."), in a Complaint that asserts four facial challenges to the 2024 Rule under the APA: (1) that any delegation of authority to promulgate the rule would constitute an unconstitutional delegation of legislative power, *id.* ¶¶ 67-74; (2) that the Departments lacked the authority to promulgate the rule, *id.* ¶¶ 75-83; (3) that the rule is unsupported by substantial evidence and violates the Regulatory Flexibility Act, *id.* ¶¶ 84-92; and (4) that the rule is arbitrary and capricious, *id.* ¶¶ 93-101. Plaintiffs challenge the portion of the 2024 Rule that sets the length of STLDI coverage. *See* 45 C.F.R. § 144.103(1)(i). They do not challenge the notice requirement for STLDI plans. *See id.* § 144.103(1)(ii).

After filing and withdrawing a motion for a temporary restraining order, *see* ECF Nos. 4 & 9, AAAB moved for a preliminary injunction and stay of the 2024 Rule's effective date. *See* Pl.'s Mem. of Law In Supp. of Am. Mot. for PI, ECF No. 11-1 ("PI Mem."). The Court held a hearing on the motion, after which the Court ordered the Departments to file, and the parties to brief, the Departments' anticipated motion to dismiss for improper venue and lack of standing on an expedited timeline. On September 27, 2024, with leave of Court, AAAB amended its Complaint to add as a Plaintiff one of its members, Premier Health Solutions, LLC ("Premier Health"), which is headquartered in the Eastern District of Texas. *See* Am. Compl. ¶ 8, ECF No. 27. The Defendants

then informed the Court that they did not intend to move to dismiss, *see* ECF No. 29, and the Court entered a schedule to resolve the case on the merits through cross-motions for summary judgment, *see* ECF No. 30.

## LEGAL STANDARD

Summary judgment is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). "In the context of a challenge to an agency action under the [APA], 'summary judgment is the proper mechanism for deciding, as a matter of law, whether an agency's action is supported by the administrative record and consistent with the APA standard of review.'" *Am. Stewards of Liberty*, 370 F. Supp. 3d at 723 (citation omitted). "The entire case on review is a question of law, and only a question of law." *Marshall Cnty. Health Auth. v. Shalalah*, 988 F.2d 1221, 1226 (D.C. Cir. 1993). The reviewing court must uphold "agency action, findings, and conclusions" unless they are, "among other things, 'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; in excess of statutory jurisdiction, authority, or limitations, or short of statutory right; [or] without observance of procedure required by law.'" *Am. Stewards of Liberty*, 370 F. Supp. 3d at 723-24 (quoting 5 U.S.C. § 706(2)(A)-(D)). "The focal point for judicial review should be the administrative record already in existence, not some new record made initially in the reviewing court." *Luminant Generation Co. LLC v. EPA*, 714 F.3d 841, 850 (5th Cir. 2013) (citation omitted).

## ARGUMENT

The Departments have discretionary authority to define STLDI by regulation, and the 2024 Rule falls comfortably within that authority. The 2024 Rule is also well-reasoned and thus easily survives arbitrary-and-capricious review; and it complies with the Regulatory Flexibility Act's purely procedural requirements. None of Plaintiffs' challenges show otherwise.

I.    **The 2024 Rule Falls Well Within the Departments' Authority to Issue Regulations "Necessary or Appropriate" to Carry out the Relevant Statutes.**

A.  **The Departments Have Discretionary Authority to Define STLDI by Regulation.**

In the PHS Act, the Code, and ERISA, Congress charged the Departments with "promulgat[ing] such regulations as may be necessary or appropriate to carry out" the statues' provisions. 42 U.S.C. § 300gg-92. Those provisions include the definition of "individual health insurance coverage," which "does not include" STLDI. *Id.* § 300gg-91(b)(5).

The "best reading of [the] statute[s]" is that they "delegate[] discretionary authority to" the Departments to promulgate regulations giving meaning to the undefined term "STLDI." *Loper Bright*, 144 S. Ct. at 2263. Indeed, for decades, "the Supreme Court has held that '[w]here the empowering provision of a statute states simply that the agency may 'make . . . such rules and regulations as may be necessary to carry out the provisions of this Act' . . . the validity of a regulation promulgated thereunder will be sustained so long as it is 'reasonably related to the purposes of the enabling legislation.'" *Brackeen v. Haaland*, 994 F.3d 249, 354 (5th Cir. 2021), *aff'd in part*, 599 U.S. 255 (2023) (quoting *Mourning v. Fam. Publ'n Serv., Inc.*, 411 U.S. 356, 369 (1973)) (all but first alteration in original).[6] As the en banc Fifth Circuit recently affirmed, "the Supreme Court's holdings in *Mourning* and related cases" emphasize "the breadth of authority delegated by broadly worded rules-enabling statutes." *Id.* at 355 n.65; *see also, e.g.*, *Diefenthal v. C. A. B.*, 681 F.2d 1039, 1043-44 (5th Cir. 1982) (finding the Civil Aeronautics Board had authority

---

[6] The en banc Fifth Circuit produced a complicated set of opinions in *Brackeen*. The question of statutory authority for the challenged regulation was discussed in Part II(D)(2) of Judge Dennis's opinion, which was the en banc majority opinion on that issue. *See* 994 F.3d at 269 n.12 (per curiam opinion summarizing holdings). All quotations from *Brackeen* are taken from that part of the en banc opinion. The question of statutory authority was not before the Supreme Court in *Haaland v. Brackeen*, 599 U.S. 255 (2023), which affirmed the Fifth Circuit on some of the grounds before the Court, and reversed for lack of standing on others.

to regulate based on provision permitting the agency to make "such rules and regulations as may be necessary to carry out the provisions of this Act" (citation omitted)); *AT&T Corp. v. Iowa Utils. Bd.*, 525 U.S. 366, 377 (1999) (finding the Federal Communications Commission had authority to issue regulations based on provision permitting the agency to "prescribe such rules and regulations as may be necessary in the public interest to carry out" the statute (citation omitted)).

Regulations that give meaning to the undefined term "STLDI" are plainly "reasonably related" to the statutory provisions governing comprehensive coverage and distinguishing STLDI from individual health insurance coverage. Indeed, the Departments have defined STLDI by regulation for decades, concluding that doing so is "essential to ensure that the statutes function as Congress intended, and to allow enforcement of the rules that apply to individual health insurance coverage." 89 Fed. Reg. at 23354; *see also id.* ("giv[ing] meaning to the term STLDI" clarifies "what is and is not individual health insurance coverage" subject to Federal consumer protections); 83 Fed. Reg. at 38215 (reiterating the necessity of "defin[ing] STLDI and "set[ting] standards that distinguish it from individual health insurance coverage"). In a recent opinion, the D.C. Circuit did not even question that the Departments' authority to "promulgate such regulations as may be necessary or appropriate to carry out the provisions" of the relevant statutes encompassed the "task of defining STLDI." *ACAP*, 966 F.3d at 785 (quoting 42 U.S.C. § 300gg-92). Plaintiffs, too, have elsewhere agreed that the Departments "[a]bsolutely" have "rulemaking authority to define" STLDI. Hearing Trans. 24:10-13. And contrary to Plaintiffs' urging, *Loper Bright* confirms that the Departments have discretionary authority to regulate STLDI in this manner. The Court held there that when Congress "empower[s] an agency . . . to regulate subject to the limits imposed by a term or phrase that 'leaves agencies with flexibility,' such as 'appropriate' or 'reasonable,'" it confers on the agency the authority "to exercise a degree of discretion." *Loper Bright*, 144 S. Ct.

at 2263 (internal citation omitted); *id.* at 2263 n.6 (citing as an example 42 U.S.C. § 7412(n)(1)(A), which "direct[s] EPA to regulate power plants 'if the Administrator finds such regulation is appropriate and necessary'"). Congress, of course, "has often enacted" such statutes. *Id.* Thus, there should be no question that the Departments have statutory authority to give meaning to the term STLDI by regulation.

### B. The 2024 Rule Falls Squarely Within the Departments' Statutory Authority.

The 2024 Rule falls within the boundaries of the Departments' discretionary authority delineated by the text of the statutes. Where, as here, Congress has delegated a degree of discretion to an agency, the Court's role is simply to "'fix[] the boundaries of the delegated authority,' and ensur[e] the agency has engaged in 'reasoned decisionmaking' within those boundaries.'" *Loper Bright*, 144 S. Ct. at 2263 (original alterations and internal citations omitted). The Court carries out this role not by deciding definitively what a statute means in all circumstances, but instead by "specif[ying] what the statute cannot mean, and some of what it must mean, but not all that it does mean." Henry P. Monaghan, *Marbury and the Administrative State*, 83 CLMR 1, 27 (1993) (cited by *Loper Bright*, 144 S. Ct. at 2263). And determining whether an agency's exercise of discretion was reasonable within those boundaries is essentially arbitrary-and-capricious review. *See Loper Bright*, 144 S. Ct. at 2263 (citing, *inter alia*, *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Automobile Ins. Co.*, 463 U.S. 29 (1983)). This interpretive role "upholds the traditional conception of the judicial function that the APA adopts," *id.*, and keeps courts "out of discretionary policymaking left to the political branches," *id.* at 2268.

The plain language of both the Departments' empowering provisions and the provision introducing the term STLDI sets the boundaries of the Departments' authority to define STLDI. To start, the empowering provisions indicate that, whatever definition the Departments adopt, it

must be either "necessary" or "appropriate," or both. The term "appropriate" indicates that a definition should be "especially suitable or compatible" or "fitting." *See Appropriate*, Merriam-Webster's Collegiate Dictionary (1996). And "necessary" instructs that a definition should be "indispensable" or "essential," *see Necessary, id.* These terms—"appropriate" in particular—give the Departments wide latitude. *See, e.g.*, *Michigan v. EPA*, 576 U.S. 743, 747 (2015) ("One does not need to open up a dictionary in order to realize the capaciousness of th[e] phrase" "'appropriate and necessary.'" (quoting 42 U.S.C. § 7412(n)(1)(A))). But that latitude is not unbounded: for instance, "[a]lthough [the] term ['appropriate'] leaves . . . agencies with flexibility, an agency may not 'entirely fail to consider an important aspect of the problem' when deciding whether regulation is appropriate.'" *Id.* (citation omitted)). Context also delineates the boundaries of what may be considered "necessary or appropriate." *See Allstates Refractory Contractors, LLC v. Su*, 79 F.4th 755, 765-66 (6th Cir. 2023), *cert. denied*, 144 S. Ct. 2490 (2024) (finding the terms "'reasonably necessary or appropriate,' in context," provide a "real standard to guide the agency's actions.").

In the context of defining STLDI, the statutory provision introducing that term sets additional boundaries through its general description of what STLDI is ("short-term" and of "limited duration") and is not ("individual health insurance coverage"). 42 U.S.C. § 300gg-91(b)(5). First, what STLDI is. Dictionaries contemporaneous to HIPAA's enactment clarify the meaning of the phrases "short-term" and "limited duration," each of which refers to measurements of time. "Short-term" is defined as "occurring over or involving a relatively brief time." *Short-term*, Merriam-Webster's Collegiate Dictionary (1996). "Duration" is defined as "the time during which something exists or lasts." *Duration, id.* "Duration," moreover, is modified by the term "limited," which means "[c]onfined within limits," or "restricted." *Limited, id.*; *see also Limit, id.* ("the utmost extent"). These definitions confirm that STLDI must be "brief," and its "exist[ence]"

17

must be "restricted" to certain time limits.

Second, what STLDI is not. Because STLDI is an exception from individual health insurance coverage, the "short-term" and "limited duration" features of STLDI are best understood in relation to individual health insurance coverage's typical term and duration limits. After all, "short-term" is defined as "*relatively* brief," *see Short-term*, *id.* (emphasis added), meaning STLDI's term must be brief *in comparison to* the term of individual health insurance coverage. As the Departments explained in the 2024 rulemaking, individual health insurance coverage is typically sold with an initial term of 12 months and is generally guaranteed renewable at the consumer's election. *See* 89 Fed. Reg. at 23355; *see also* 45 C.F.R. § 144.103 (defining "plan year," and "policy year" with reference to 12-month or calendar year periods); 42 U.S.C. § 300gg-2 (providing that, absent certain narrow exceptions, "if a health insurance issuer offers health insurance coverage in the individual or group market, the issuer must renew or continue in force such coverage at the option of the plan sponsor or the individual, as applicable"). The 12-month initial term and generally unlimited renewals are thus reasonable and appropriate benchmarks against which to measure STLDI to determine if it is in fact "short-term" and of "limited duration."

The 2024 Rule fits squarely within these statutory boundaries. Just like the 2018 Rule, the 2024 Rule gives independent meaning to the textual description of STLDI by interpreting "short-term" to relate to the initial STLDI contract term and "limited duration" to relate to the STLDI contract's total duration. *See ACAP*, 966 F.3d at 789. And to distinguish STLDI from individual health insurance coverage, the Departments set maximum lengths for the initial term (3 months) and the total duration (4 months) that are "brief in comparison to the length of comprehensive coverage" (12 months with generally unlimited renewals). 89 Fed. Reg. at 23355. By limiting renewals or extensions to 1 month beyond the initial 3-month maximum term, the Rule also gives

meaning to the phrase "limited duration," which—as dictionary definitions confirm—indicates that STLDI must be restricted to certain time limits. And the prohibition on stacking makes that 4-month limitation effective, because it prevents issuers (and members of their controlled group) from "circumventing" STLDI's duration limitation by stringing together multiple plans, which obfuscates distinctions between STLDI and comprehensive coverage. 89 Fed. Reg. 23364.

These specific time periods, moreover, were not chosen at random. The Departments determined they were "appropriate[]" to bring the STLDI definition in alignment with the ACA's limitations on "waiting periods," 89 Fed. Reg. at 23363, which refers to the period of time before an individual's health coverage becomes effective, *see* 42 U.S.C. § 300gg-3 (defining "waiting period"). Under the ACA, group health plans and health insurance issuers offering group health insurance coverage may not "apply any waiting period . . . that exceeds 90 days." *Id.* § 300gg-7. The 90-day period is measured from the time an individual is otherwise eligible to enroll under the terms of the plan, including after the conclusion of a "reasonable and bona fide" employment orientation period that does not exceed one month. 26 C.F.R. § 54.9815-2708(c)(3)(iii); 29 C.F.R. § 2590.715-2708(c)(3)(iii); 45 C.F.R. § 147.116(c)(3)(iii). By bringing the STLDI definition in conformity with the ACA 90-day employment waiting period provision (plus the 1-month orientation period), the 2024 Rule better "reflects STLDI's traditional role" of filling "temporary gaps in coverage" typically due to transitions in employment, 89 Fed. Reg. at 23355, 23363—a role that Plaintiffs themselves emphasize STLDI traditionally is meant to fulfill, *see* Pls.' PI Mem. 4 (emphasizing STLDI's design as "short-term coverage as a flexible stopgap measure" for "a short duration during transitions" such as a job change). In this way, the 2024 Rule not only is consistent with the requirements of "short-term" and "limited duration" but also "with the design and function of the" broader statutory scheme the Departments are charged with administering.

*See United States v. Montalvo-Murillo*, 495 U.S. 711, 719 (1990).

The 2024 Rule was also "necessary and appropriate," the Departments concluded, to address consumer confusion over the differences between STLDI and individual health insurance coverage (and its Federal consumer protections), and to help consumers better understand their coverage options. 89 Fed. Reg. at 23346. That determination was reasonable, as discussed further below, *infra* Section II, and above, *supra* Bckgd. Indeed, the preamble details at length why the Departments believed changed factual circumstances since 2018 supported clarifying the differences between STLDI and comprehensive coverage rather than continuing to make cheaper, but skimpier, coverage more accessible at the cost of consumer confusion. The statutes' flexible language authorizes that policy choice. Plaintiffs ask the Court to disregard, rather than "respect," this "delegation[] of authority," and engage in "discretionary policymaking left to the political branches." *Loper Bright*, 144 S. Ct. at 2268. The Court should deny that request. The 2024 Rule falls well within the Departments' discretionary authority to promulgate regulations that are necessary or appropriate to carry out the statutes' provisions, including the provision excluding but not defining STLDI.

### C. Plaintiffs Fail to Show that the Departments Lack Statutory Authority to Define STLDI or to Promulgate the 2024 Rule.

Plaintiffs raise a series of attacks on the 2024 Rule that vacillate between suggesting that the Departments lack any authority whatsoever to define STLDI, *see* Pls.' Mem. 20-23 (non-delegation arguments), and acknowledging that the Departments have authority but asserting that the 2024 Rule exceeds that authority, *id.* at 18, 24 (arguing the 2024 Rule is contrary to the statutory text and the Court could put the 2018 Rule back into effect). Neither argument has merit.

#### 1. *Plaintiffs' Purported Nondelegation Claim Fails.*

To start, Plaintiffs claim that the 2024 Rule is unlawful under the non-delegation doctrine.

*See* Am. Compl. ¶¶ 71-78. By and large, Plaintiffs' purported non-delegation claim is nothing more than a restatement of their claim that the Departments exceeded their statutory authority or acted unreasonably. Indeed, whereas the non-delegation doctrine analyzes whether "*Congress*" has "[un]constitutionally delegated its legislative power to another branch of government," *United States v. Jones*, 132 F.3d 232, 239 (5th Cir. 1998), Plaintiffs primarily argue that the *Departments* have acted unlawfully in promulgating the 2024 Rule. *See* Pls.' Mem. 23 (asserting that the Departments are exercising power beyond the intended "meaning of necessary and appropriate"). Additionally, while Plaintiffs mention the non-delegation standard, *see id.* at 20 (quoting the "intelligible principle" test), they nowhere articulate how the particular statutory provisions at issue here fail to meaningfully guide the Departments' exercise of discretion, *Gundy v. United States*, 588 U.S. 128, 135 (2019) ("[A] nondelegation inquiry always begins (and often almost ends) with statutory interpretation."). And of course, the result of any successful non-delegation claim would be that the Departments would lack authority to issue *any* regulation defining STLDI—meaning that every prior STLDI rule was unlawful, including the 2018 Rule Plaintiffs wish to have reinstated. Plaintiffs present no arguments applying the appropriate test to support their non-delegation claim, and for that reason alone the claim fails.

Nor could Plaintiffs succeed on this claim even applying the appropriate standard. "Delegations are constitutional so long as Congress 'lays down by legislative act an intelligible principle to which the person or body authorized to exercise the authority is directed to conform.'" *Big Time Vapes, Inc. v. FDA*, 963 F.3d 436, 441 (5th Cir. 2020) (original alterations omitted) (quoting *J.W. Hampton, Jr., & Co. v. United States*, 276 U.S. 394, 409 (1928)). That test is "not demanding." *Id.* The Constitution requires only that "Congress clearly delineate[] the general policy, the public agency which is to apply it, and the boundaries of th[e] delegated authority." *Id.*

(quoting *Am. Power & Light Co. v SEC*, 329 U.S. 90, 105 (1946)). For more than 80 years, the Supreme Court has consistently upheld "Congress's ability to delegate power under broad standards." *Misretta v. United States*, 488 U.S. 361, 373 (1989).[7] The Fifth Circuit, too, has "uniformly upheld Congress's delegations." *BigTime Vapes*, 963 F.3d at 442 n.17 (citing cases).

The delegation here fits comfortably within these non-demanding standards. The Sixth Circuit has concluded that words such as "reasonably necessary or appropriate" provide "real standard[s] to guide" agency actions where other provisions supply "overarching constraints" on the agency's exercise of discretion. *Allstates*, 79 F.4th at 765-66. Here, too, the phrase "necessary or appropriate" provides an intelligible principle that is further "constrain[ed]," *id.*, by the text, context, and purpose of the statutory provisions identifying STLDI as an exception to individual health insurance coverage. *See supra* Section I.B.; *see also Gundy*, 588 U.S. at 146 ("To define the scope of delegated authority, we have looked to the text in 'context' and in light of the statutory 'purpose.'" (citation omitted)). As outlined above, these statutes meaningfully cabin the Departments' discretion and Plaintiffs do not show otherwise.

     2. *The Major Questions Doctrine is Inapplicable.*

Likewise unavailing is Plaintiffs' invocation of the major questions doctrine. *See* Pls.' Mem. 27-30. That doctrine has no relevance here. The major questions doctrine applies only "in certain extraordinary cases," when an agency tries to achieve "a radical or fundamental change to a statutory scheme" by claiming "an unheralded power representing a transformative expansion in

---

[7] For instance, the Court has upheld delegations: to the FCC to regulate broadcast licensing as "public interest, convenience, or necessity" requires, *Nat'l Broad. Co. v. United States*, 319 U.S. 190, 225-26 (1943); to the Federal Power Commission to determine "just and reasonable" rates for wholesale sales of natural gas, *Fed. Power Comm'n v. Hope Nat. Gas Co.*, 320 U.S. 591, 600 (1944); and to the Environmental Protection Agency to set nationwide air-quality standards limiting pollution to the level required "to protect the public health," *Whitman v. Am. Trucking Ass'n*, 531 U.S. 457, 472 (2001) (citation omitted).

[its] regulatory authority." *West Virginia v. EPA*, 597 U.S. 697, 723-24 (2022) (quotation marks omitted). The question is not simply whether agencies are asserting "highly consequential power," but rather whether they are asserting "highly consequential power *beyond what Congress could reasonably be understood to have granted*." *Id.* (emphasis added). Two requirements must therefore be met. First, an agency must be claiming an "[e]xtraordinary grant[] of regulatory authority" by asserting "extravagant statutory power over the national economy." *Id.* (quotation marks and citation omitted). Second, this claim must reflect "a 'fundamental revision of the statute, changing it from one sort of scheme of . . . regulation' into an entirely different kind[.]" *Biden v. Nebraska*, 143 S. Ct. 2355, 2373 (2023) (quoting *West Virginia*, 597 U.S. at 728).[8] Unless both criteria are met, the major questions doctrine does not apply. *Id.*

Plaintiffs do not show that either criterion is met. They start by asserting that the D.C. Circuit, in *ACAP*, previously "acknowledged the major questions doctrine's application to STLDI interpretations," Pls.' Mem. 29, but the *ACAP* Court did not discuss the major questions doctrine. Plaintiffs quote a portion of the opinion where the Court simply agreed with a challenger to the 2018 Rule that the definition of STLDI would be unreasonable if it "destabilize[d] the individual insurance market" but found no evidence that the rule there would have such effect. 966 F.3d at 791. Similarly, here, the major questions doctrine has no relevance, and do not contend, with any factual support, that the 2024 Rule may "destabilize the individual insurance market."[9]

Pivoting from *ACAP*, Plaintiffs' primary argument is that this case relates to a matter of

---

[8] Notably, the Supreme Court in *Biden v. Nebraska* first concluded that the agency was asserting a new type of authority that Congress likely did not intend, 143 S. Ct. at 2372, and only then determined that this assertion had "staggering" economic and political significance, *id.* at 2373.

[9] To the contrary, the Departments predicted that the 2024 Rule would positively affect the individual market, predicting that fewer healthy individuals would pull out of the individual market, likely resulting in lower premiums. 89 Fed. Reg. at 23404.

deep economic and political significance on par with the matter in *King v. Burwell*, 576 U.S. 473, 492 (2015). Pls.' Mem. 28-29 (citing *King v. Burwell* throughout). In reality, these cases could not be further apart. *King v. Burwell* concerned a matter "central to [the ACA's] statutory scheme," "involving billions of dollars in annual spending" in Federal tax credits and "affecting health insurance costs for millions of people." 576 U.S. at 485. This case, on the other hand, involves a modest amount of spending by a relatively small number of STLDI issuers nationwide that may need to update plan documents, *see* 89 Fed. Reg. at 23402, and comparatively few consumers who might be affected by shorter STLDI coverage lengths. The Departments estimate that there are roughly 28 STLDI issuers *nationwide. Id.* at 23395. And estimates or projections of STLDI enrollment range from only 236,000 to 1.9 million consumers. *Id.* at 23392.[10] By contrast, there are on average 6 issuers *per state* offering individual health insurance coverage, *id.* at 23347; and in the 2024 open enrollment period alone, 21.3 million consumers nationwide enrolled in such coverage, *id.* These latter numbers do not even account for issuers of, and consumers enrolled in, group health plans offered through employers, or for non-comprehensive coverage plans aside from STLDI. *See id.* at 23395; *id.* at 23398 (estimating "at least 93 issuers of 'other non-comprehensive coverage'" in the individual market in 2022). Modifying the definition of STLDI, which occupies a relatively small corner of the health coverage market, simply is not an exercise

---

[10] Plaintiffs claim that current STLDI enrollment "account[s] for $5.3 billion in welfare gains," Pls.' Mem. 28, but that conclusion appears to be based entirely on a February 2019 report discussed in a Journal of Insurance Regulation article. *See* AR025845 (Jackson Williams, *Addressing Low-Value Insurance Products With Improved Consumer Information: The Case of Ancillary Health Products*, Journal of Insurance Regulation (2022)). The Journal article discusses the faults in the report's assumptions and conclusions, stating that the report disregards the broader benefits of enrollment in comprehensive coverage and does not acknowledge the impact of information asymmetries between consumers and issuers of "short-term products" regarding product quality and benefits coverage. Such factors result in a loss to consumers "possibly equaling or exceeding any savings to ostensibly healthy consumers purchasing them." *Id.* at 025846.

24

of "extravagant statutory power over the national economy." *West Virginia*, 597 U.S. at 724.

Nor does the 2024 Rule constitute a "fundamental revision of the statute." *Id.* at 728. For decades, the Departments have defined STLDI by regulation. *Supra* Bckgd. This is not the first time they have defined STLDI as coverage having a term of approximately 3 months. *See* 81 Fed. Reg. 75316. Moreover, the limitation on issuer stacking does not independently implicate the major questions doctrine, as Plaintiffs suggest. *See* Pls.' Mem. 30. Closing a loophole that would otherwise allow issuers to evade the textual requirement that STLDI be of "limited duration" gives greater effect to the statute Congress enacted. Rather than engage in statutory rewriting, the Departments have adopted a definition that "fits neatly within the language of the statute," *Biden v. Missouri*, 595 U.S. 87, 93 (2022), describing STLDI as "short-term" and of "limited duration."

Finally, Plaintiffs make stray references to proposed legislation following the promulgation of the 2018 Rule that, in their view, show that Congress did not intend for the Departments to define STLDI. *See* Pls.' Mem. 20, 29. "But subsequent legislative history is a 'hazardous basis for inferring the intent of an earlier' Congress," especially when that history "concerns, as it does here, a proposal that does not become law." *Pension Ben. Guar. Corp. v. LTV Corp.*, 496 U.S. 633, 650 (1990) (quoting *United States v. Price*, 361 U.S. 304, 313 (1960)). In any event, the failed enactments Plaintiffs cite undermine their argument. The proposals would have either eliminated STLDI altogether, *see* H.R. 1875, 117 Cong. (2021)—which the 2024 Rule does not do—or invalidated the 2018 Rule and restored the 2016 Rule, *see, e.g.*, S.1556, 116 Cong. (2019)—another rule that defined STLDI as lasting for a term of up to 3 months, *see* 81 Fed. Reg. 75316. For instance, one proposal provided that the 2018 Rule shall not be "give[n] effect," that the Departments "shall apply any regulation [the 2018 Rule] revised" (*i.e.*, the 2016 Rule), and that the Departments "may not promulgate any substantially similar rule" to the 2018 Rule. S.352,

117th Cong. § 104 (2021). If these failed enactments have any relevance, they show that Congress *does* understand the Departments to have discretionary authority to define STLDI via regulation.

> 3. *Plaintiffs Otherwise Fail to Show the 2024 Rule Exceeds the Departments' Authority.*

Plaintiffs raise a range of other arguments challenging the Departments' authority, but none are persuasive. To start, although Plaintiffs contend that the 2024 Rule exceeds the Departments' statutory authority, they barely grapple with the statutory text. In Plaintiffs' one-paragraph argument mentioning the text of the relevant provisions, Plaintiffs contend that the 2024 Rule interprets "short-term" and "limited duration" in a manner that departs from what "Congress intended in 1996." Pls.' Mem. 18. Yet they fail to explain what Congress *did* intend in 1996, other than that STLDI be short-term and limited duration. Their insistence that "short-term" simply cannot be 3 months and "limited duration" cannot permit a definite end to an STLDI plan contradicts the dictionary definitions for those terms cited in their own brief. *Id.*

By extension, Plaintiffs' assertion that the 2024 Rule's limitation on issuer stacking falls outside the Departments' statutory authority because it "converts 'limited' into nonrenewable," *see* Pls.' Mem. 18, is unfounded. Initially, Plaintiffs misconstrue the STLDI definition when they contend it is "nonrenewable." The 2024 Rule *does* allow extensions and renewals of policies to the same policyholder by the same issuer (or member of the issuer's controlled group, if applicable). 89 Fed. Reg. at 23364–65. It simply limits the length of such extensions or renewals such that the total duration of the STLDI policy is a maximum of 4 months in length. That cut-off plainly fails within the meaning of "limited duration": "a plan that cannot be renewed beyond" a certain period of time "is, quite literally, 'limited' in 'duration.'" *ACAP*, 966 F.3d at 789. Thus, every prior regulation has limited the total duration, including extensions, of STLDI. 62 Fed. Reg. 16894 (Apr. 8, 1997) (defining STLDI as coverage that expires within 12 months, inclusive of any extensions elected by the policyholder without the issuer's consent); 69 Fed. Reg. 78748 (Dec. 30,

2004) (same); 81 Fed. Reg. 75316 (Oct. 31, 2016) (defining STLDI as coverage that lasts less than 3 months, inclusive of extensions elected by the policyholder with or without the issuer's consent); 83 Fed. Reg. 38212 (Aug. 3, 2018) (defining STLDI as coverage with an initial term of less than 12 months, and a total duration with extensions or renewals of no more than 36 months).

Only after the initial 4-month maximum STLDI policy length (including any extensions) is an issuer or member of its controlled group not permitted to renew, extend, or issue a new policy to the same policyholder within 12 months of the initial policy's effective date. *Id.* at 23364–65 (explaining that "a renewal or extension, for purposes of applying the interpretation of 'limited-duration' under the new STLDI definition adopted in these final rules, includes the term of a new STLDI policy . . . issued by the same issuer to the same policyholder within the [relevant] 12-month period . . . "). That so-called stacking prohibition gives meaning to the phrase "limited duration": it prevents issuers from "circumventing" STLDI's limited duration by stringing together multiple STLDI policies that together last well beyond 4 months. *Id.* Plaintiffs also wrongly suggest that the Departments' previous rejection of a more stringent stacking prohibition indicates the Departments lack authority to adopt the one here. *See* Pls.' Mem. 4, ¶ 9. In 2016, the Departments considered commenters' recommendation to prohibit *any* issuer from offering a new STLDI policy to *any* consumer who previously purchased such coverage. 81 Fed. Reg. at 75318. The Departments determined that such a broad prohibition would be difficult to enforce and was not warranted because then-applicable penalties for not enrolling in minimum essential coverage discouraged consumers from purchasing multiple successive STLDI policies. *See id.* at 75318. The narrower stacking limitation in the 2024 Rule, however, does not carry the same enforceability concerns; and it leaves "consumer[s] who prefer[] STLDI coverage" free to "reenroll in STLDI coverage with a different issuer every 4 months." 89 Fed. Reg. at 23335. The statutes confer on

27

the Departments sufficient flexibility to respond to changed factual circumstances and implement a workable stacking prohibition that gives meaning to "limited duration." *See Mourning*, 411 U.S. at 376 ("[T]he objective sought in delegating rule making authority to an agency is to relieve Congress of the impossible burden of drafting a code explicitly covering every conceivable future problem").

Setting aside the statutory text, Plaintiffs' principal criticism is that the 2024 Rule departs from prior regulations. *See, e.g.*, Pls.' Mem. 17-19. But when Congress grants agencies a degree of flexibility in exercising their regulatory authority, it necessarily permits agencies to change their position in response to changed factual circumstances. There is nothing remarkable about that: The Supreme Court has long held that "[a]gencies are free to change their existing policies as long as they provide a reasoned explanation for the change." *Encino Motorcars, LLC v. Navarro*, 579 U.S. 211, 221 (2016). The Departments did so here. *Infra* Section II.

Plaintiffs also assert that the 2024 Rule runs counter to the Tax Cuts and Jobs Act (TCJA), but they point to no TCJA text that the Rule purportedly contradicts. Instead, they argue that the alleged intent behind the 2024 Rule is in conflict with the purported "intent under the 2017 TCJA." Pls.' Mem. 17. For this argument, Plaintiffs impute an intent to the Departments—allegedly, to try to force consumers into comprehensive coverage, *see id.* at 30—that is not found in the record. It therefore must be rejected. *See Dep't of Commerce v. New York*, 588 U.S. 752, 781 (2019). In any event, the record contradicts Plaintiffs' invented motive for the 2024 Rule. The preamble explains that the Rule is "not designed to limit access to STLDI or pressure consumers into enrolling in comprehensive coverage," to "regulate consumer behavior," or to preclude consumers from stringing together STLDI plans from different issuers. 89 Fed. Reg. at 23354–55.

Also meritless is Plaintiffs' argument that the 2024 Rule runs counter to the McCarran-Ferguson Act because it interferes with States' regulation of the business of insurance. Pls.' Mem. 27. The McCarran-Ferguson Act has no applicability here, as the preamble explains. *See* 89 Fed. Reg. at 23357–58. That Act provides that "[n]o Act of Congress shall be construed to invalidate, impair, or supersede any law enacted by any State for the purpose of regulating the business of insurance . . . *unless such Act specifically relates to the business of insurance*[.]" 15 U.S.C. § 1012(b) (emphasis added). HIPAA, the ACA, and other legislation adding Federal consumer protections to *health insurance* coverage unquestionably relate to the business of insurance. *See* 89 Fed. Reg. at 23357–58; *see also, e.g.*, *Conway v. United States*, 997 F.3d 1198, 1211 n.5 (Fed. Cir. 2021) (assuming that the ACA relates to the business of health insurance). Regardless, Plaintiffs have not raised a separate claim that the 2024 Rule violates the McCarran Ferguson Act, nor have they alleged any injury-in-fact caused by the 2024 Rule's purported interference with any State law. *See DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 352 (2006) ("[A] plaintiff must demonstrate standing for each claim he seeks to press."); *Immigr. Reform Coal. Of Texas v. Texas*, 706 F. Supp. 2d 760, 764 (S.D. Tex. 2010) ("[T]hose bringing claims on the basis of preemption must nonetheless meet the three requirements of Article III standing."). For all these reasons, Plaintiffs fail to show that the Departments lack authority to give meaning to the term STLDI by regulation or that the 2024 Rule exceeds their statutory authority.

## II.    The 2024 Rule is Reasonable and Reasonably Explained.

Plaintiffs' claim that the 2024 Rule is arbitrary and capricious fares no better. Under arbitrary-and-capricious review, agencies need only "articulate a satisfactory explanation for [the] action including a rational connection between the facts found and the choice made." *Little Sisters of the Poor Saint Peter & Paul Home v. Pennsylvania*, 591 U.S. 657, 682 (2020). A reviewing

court "simply ensures that the agency has acted within a zone of reasonableness," and "may not substitute its own policy judgment for that of the agency." *FCC v. Prometheus Radio Project*, 592 U.S. 414, 423 (2021). When an agency changes a policy, it need not demonstrate "that the reasons for the new policy are *better* than the reasons for the old one," but only that "the new policy is permissible under the statute, that there are good reasons for it, and that the agency *believes* it to be better." *FCC v. Fox Television Stations, Inc.*, 556 U.S. 502, 515 (2009).

The Departments' detailed account of reasons for changing the STLDI definition easily satisfies arbitrary and capricious review. As their preamble explains, STLDI is intended to be a temporary, gap-filling coverage for individuals "experiencing brief periods without comprehensive coverage." 89 Fed. Reg. at 23346. But the Departments were concerned that many consumers who did not "understand key differences between STLDI" and individual health insurance coverage subject to Federal consumer protections (i.e., comprehensive coverage) were relying on STLDI "as a substitute for comprehensive coverage," which placed them, unknowingly, at "significant financial and health risk[]." *Id.* Those risks were evidenced by real-world examples of consumers facing unexpected out-of-pocket costs for uncovered health events. *Id.* at 23348. They were also supported by studies and market surveillance from the Government Accountability Office finding widespread evidence of deceptive marketing practices for STLDI and related products heightening consumer confusion; indeed, undercover agents investigating these practices referred *one quarter* of their contacts to Federal law enforcement. *Id.* at 23350 & n.106 (citing Private Health Coverage: Results of Covert Testing for Selected Offerings, GAO-20-634-R (Sept. 24, 2020)).

At the same time, the Departments found that the perceived benefits of expanding STLDI that animated the 2018 Rule change—increasing access to affordable coverage—had diminished in recent years, as current data showed more positive trends in increasing access to affordable

comprehensive coverage. *Id.* at 23346–47. And one downside to expanding STLDI noted by the Departments in 2018 had taken on greater significance: "the extended contract terms and renewal periods of STLDI under" the 2018 Rule were resulting "in healthier consumers" opting out of "individual health insurance coverage for extended periods of time," which was driving up insurance premiums for everyone else who maintained individual health insurance coverage. *Id.* at 23351. This evidence convinced the Departments that it was "necessary and appropriate to amend the Federal definition of STLDI." *Id.* The definition in the 2024 Rule, the Departments concluded, would "ensure that consumers can clearly distinguish STLDI from comprehensive coverage, protect the risk pools and stabilize premiums for individual health insurance coverage, and promote access to affordable comprehensive coverage." *Id.*

Ignoring this detailed discussion, Plaintiffs proclaim that the 2024 Rule amounts to an "inexplicabl[e]" change in policy. Pls.' Mem. 17.[11] It is Plaintiffs' criticism of the 2024 Rule that is largely unexplained, however, as most of their arguments are conclusory assertions based on misstatements of the preamble. For instance, Plaintiffs assert that the Departments "conceded there were immense risks," *see* Pls.' Mem. 17, but do not explain what "immense risks" they are referring to. The Departments did discuss "risks"—most of them related to adhering to the 2018 Rule. The longer STLDI term and duration under the 2018 Rule, the Departments concluded, made it more likely that consumers would "unknowingly tak[e] on significant health and financial risks" by purchasing STLDI "under the misapprehension that [it] provide[d] comprehensive coverage." 89 Fed. Reg. at 23346. Those risks would only "increase[] with the length of [the] policy," the

---

[11] Plaintiffs assert that "[t]he D.C. Circuit previously explored many faults in the 2016 Rule that Defendants amplified in" the 2024 Rule. Pls.' Mem. 15 (citing *ACAP*, 966 F.3d at 793). But the the 2016 Rule was not at issue in the *ACAP* case. The court's review was limited to the Departments' rationale for the 2018 Rule, including why—based on evidence available at the time—the Departments believed the 2018 Rule was better than the 2016 Rule.

Departments found, because "the longer consumers are enrolled in STLDI, the more likely they are to incur costs that are not covered." *Id.* at 23348. The Departments also acknowledged the risk that, with a shorter STLDI term and duration period, some consumers may be left uninsured after the expiration of their policy, but the Departments concluded that the 2024 Rule's benefits outweighed that risk. *Id.* at 23401. Anyway, the 2018 Rule did not eliminate the risk of being uninsured. Because STLDI is typically "not guaranteed renewable" by issuers and "subject to medical underwriting," individuals enrolled in STLDI *always* risk losing coverage and "being uninsured until" an open enrollment or special enrollment period for which they are eligible. *Id.* at 23348–49. The Departments reasonably weighed the risks associated with the 2024 Rule as compared to the 2018 Rule to support their policy change. That is all the APA requires.

Additionally, Plaintiffs assert that the Departments "acknowledged" that there were already "ample existing resources," including the 2018 Rule's notice requirements and Healthcare.gov, that would clarify for consumers the differences between STLDI and comprehensive coverage. Pls.' Mem. 17 (citing Pls.' Mem. 9, ¶ 33). But significant evidence of consumer confusion, even with those resources, convinced the Departments that a change to the STLDI definition was "necessary and appropriate" to bring clarity to consumers. That determination was reasonable.

Plaintiffs also express disbelief that the Departments could have concluded the 2024 Rule was better than the 2018 Rule when ACA enrollment had hit record levels in recent years. Pls.' Mem. 17. Plaintiffs do not explain why they believe increased ACA enrollment indicates the 2024 Rule was arbitrary and capricious. In the Departments' view, though, increased ACA enrollment indicates that consumers have more options to obtain affordable comprehensive health coverage than they did at the time the Departments adopted the 2018 Rule. That meant the primary rationale for the 2018 Rule—expanding access to affordable coverage—no longer carried the same weight,

and it did not overcome the risks to consumers caused by confusion over the difference between STLDI and comprehensive coverage. 89 Fed. Reg. at 23346–47. And the prediction that enrollment in comprehensive coverage would increase even more under the 2024 Rule, likely driving down premiums for individual health insurance coverage, gave the Departments one more reason to choose the current STLDI definition over the former. *Id.* at 23400.[12]

Plaintiffs also lack support for their assertion that the Departments "conceded their failure to gather necessary analytical data." Pls.' Mem. 17. The Departments evaluated a substantial data set, from sources including the National Association of Insurance Commissioners (NAIC), the Congressional Budget Office, the Joint Committee on Taxation, the Centers for Medicare & Medicaid Services, and others, to estimate the number of consumers enrolled in STLDI, the number of issuers of STLDI, the availability and affordability of coverage on Exchanges, and trends in enrollment in Exchange plans, among other data points, when weighing the benefits and drawbacks of changing the STLDI definition. Plaintiffs fault this data because it contained "uncertain[ies]." *Id.* at 25; *id.* at 17 (citing Pls.' Mem. 7-11, ¶¶ 28-38). Lack of "perfect empirical or statistical data," however, it "is not unusual in day-to-day agency decisionmaking within the Executive Branch." *Prometheus*, 592 U.S. at 427. "[P]olicymaking in a complex society must account for uncertainty," *State Farm*, 463 U.S. at 52, and the APA does not "insist upon [agencies] obtaining the unobtainable," *Fox Television*, 556 U.S. at 519. All that the APA requires is that agencies "explain the evidence which *is* available" and make a "rational connection between the facts found and the choice made." *State Farm*, 463 U.S. at 52 (emphasis added) (citation omitted).

---

[12] Plaintiffs misstate the record when they say the Departments concluded that the definition change would lead to 60,000 more individuals enrolled in individual health insurance coverage purchased on an Exchange by 2028. The Departments estimated the 2024 Rule would lead to 60,000 more such enrollees *each year* from 2026 through 2028. 89 Fed. Reg. at 24300, 23394.

Here, Plaintiffs essentially demand that the Departments "obtain[] the unobtainable." *Fox Television*, 556 U.S. at 519. For instance, Plaintiffs fault the Departments for not knowing exactly how many issuers of STLDI there are nationwide or exactly how many consumers are enrolled in STLDI plans, even though the Departments generally "do not currently have authority to collect data from issuers of STLDI." 89 Fed. Reg. at 23361. The NAIC does "annually collect[] data from issuers of STLDI," however, *id.*; and the Departments invited commenters on the proposed rule to provide more data, but none did so, *see id.* at 23398. Plaintiffs also quote from portions of the Departments' analysis noting uncertainties about the 2024 Rule's future effects, which largely depend on behavior by third parties that the Departments cannot possibly predict with certainty. *See* Pls.' Mem. 10-11, ¶¶ 37-38. For instance, the Departments stated that they were unable to predict how many individuals currently enrolled in STLDI would "switch to comprehensive coverage, how many" would "try to find another issuer of STLDI once their current policy ends," or how many would "choose not to purchase any form of coverage." 89 Fed. Reg. at 23404. This led to some uncertainties about impacts on risk pools and premiums and compensation for agents and brokers selling STLDI. *Id.* Despite these limitations in the data, the Departments concluded that they had "enough data to be confident that the benefits of" the 2024 Rule "outweigh[ed] the costs" and that the 2024 Rule would "help ensure that consumers can clearly distinguish STLDI . . . from comprehensive coverage, protect market risk pools and stabilize premiums for comprehensive coverage, and promote access to affordable comprehensive coverage." *Id.* In this way, the Departments did what every agency must do when faced with uncertain data: they "exercise[d] [their] judgment in moving from the facts and probabilities on the record to a policy conclusion." *State Farm*, 463 U.S. at 52. The APA requires only that an agency offer a reasonable explanation for such exercises in judgment. *Id.* The Departments did so here.

At the end of the day, Plaintiffs' objection to the 2024 Rule is not with its reasonableness or the Departments' explanation for its decision but with the Departments' policy determination that the 2024 Rule better serves STLDI's purposes and addresses widespread consumer confusion. Even if the Court, like Plaintiffs, were to disagree with that policy choice, the APA would not permit the Court to "substitute its judgment for that of the agency." *Fox Television*, 556 U.S. at 513-14. Plaintiffs' arbitrary-and-capricious claim fails.

## III.    To the Extent Plaintiffs Assert a Regulatory Flexibility Act Claim, It Has No Merit.

Plaintiffs also bring a separate claim under the "APA and RFA," Am. Compl. 95, for allegedly failing to provide "substantial evidence" to support the Departments' RFA analysis. *See* Am. Compl. ¶¶ 88-96; Mem. 25 (citing 5 U.S.C. § 706(D), (E)). As an initial matter, the APA's "substantial evidence" standard is irrelevant here. The requirement that an agency action be supported by substantial evidence applies only to rules that "are required by statute to be made on the record after opportunity for an agency hearing," *id.* § 553(c); *id.* § 706(2)(E), and not to rules, like the 2024 Rule, subject to the informal notice-and-comment requirements at § 553(b). And to the extent Plaintiffs assert procedural violations of the RFA, that claim fails for two main reasons.

*First*, and as a threshold matter only "a small entity that is adversely affected or aggrieved by final action is entitled to judicial review" under the RFA. 5 U.S.C. § 611(a)(1). Neither Plaintiff even alleges, let alone presents evidence supporting summary judgment, that it satisfies the RFA's definition of "small entity." The RFA defines a "small entity" as a "small business," "small organization," or "small governmental jurisdiction," *id.* § 601(6), each of which carries its own definition under the statute, *see id.* §§ 601(3)–(5). Plaintiff AAAB alleges that it is a "not-for-profit trade association," Am. Compl. ¶ 7, but does not show that it is "independently owned and operated and . . . not dominant in its field," 5 U.S.C. § 601(4) (defining "small organization"). In fact,

AAAB's arguments indicate that it is dominant in its field: AAAB asserts that 15 of its members are STLDI issuers (which represents more than half the estimated 28 STLDI issuers nationwide, 89 Fed. Reg. at 23398), and those issuers "are industry leaders providing STLDI plans" "throughout the country." Pls.' PI Mem. 5. Plaintiff Premier Health alleges that it is a "limited liability company," but it likewise does not contend that it is "not dominant in its field of operation" or that it meets the size standards established by the Small Business Administration.[13] 5 U.S.C. § 601(3) (defining "small business" with reference to Section 3 of the Small Business Act's definition of "small business concern"); 15 U.S.C. § 632(a) (defining "small business concern"). Because Plaintiffs make no attempt to present facts demonstrating that they are small entities to whom the RFA provides a cause of action, their purported RFA claim necessarily fails. *See Fla. Growers Ass'n, Inc. v. Su*, No. 8:23-cv-889, 2024 WL 670464, at *18 n.17 (M.D. Fla. Jan. 5, 2024) (dismissing RFA claim where plaintiffs "fail[ed] to demonstrate, among other things, that the Plaintiffs meet the requirement that they are 'not dominant in [their] field'" and, "if anything, . . . suggest[ed] the opposite" (quoting 5 U.S.C. § 601(3), (4)); *see also W. Wood Preservers Inst. v. McHugh*, 925 F. Supp. 2d 63, 75 (D.D.C. 2013) (similar).

*Second*, even if Plaintiffs were small entities that could bring an RFA claim, the claim would fail because Plaintiffs do not show that the Departments failed to satisfy its procedural requirements. The RFA imposes only "procedural[,] rather than substantive," requirements on an agency's rulemaking process. *Alenco Commc'ns, Inc. v. FCC*, 201 F.3d 608, 625 (5th Cir. 2000). Judicial review is limited to determining "whether an agency has made a 'reasonable, good-faith

---

[13] As the Departments explained in the 2024 Rule preamble, businesses with annual receipts of $47 million or less are considered small entities for purposes of the rulemaking. 89 Fed. Reg. at 23407. Available data indicated that very few STLDI issuers would fall under that threshold dollar amount. *Id.*

effort' to carry out" the RFA's requirements that the agency "consider the effect that" its regulation "will have on small entities, analyze effective alternatives that may minimize" its "impact on such entities, and make the analyses available for public comment." *Grocery Servs., Inc. v. USDA FNS.*, No. 06-2354, 2007 WL 2872876, at *10 (S.D. Tex. Sept. 27, 2007) (citation omitted). Instead of showing the Departments failed to comply with these procedural requirements, Plaintiffs take issue with the substance and outcome of their analysis—matters beyond the scope of judicial review.

To start, the record belies Plaintiffs' conclusory assertions that "the regulatory flexibility analysis was simply not done." Pls.' Mem. 25. Over several pages, the Departments considered the number of small entities that may be affected by the 2024 Rule, calculated the compliance costs those entities might incur, and discussed whether any regulatory alternatives might lessen the costs while still achieving the objectives of the final rule. *See* 89 Fed. Reg. at 23406–08. That analysis "undoubtedly addressed all of the legally mandated subject areas," and it therefore complies with the [RFA]." *Nat'l Tel. Co-op. Ass'n v. F.C.C.*, 563 F.3d 536, 540 (D.C. Cir. 2009).

Next, Plaintiffs complain that some of the cost estimates were "uncertain" or "non-quantified." Pls.' Mem. 25. But the RFA "plainly does not require economic analysis," *Alenco Commc'ns*, 201 F.3d at 625, let alone one meeting the evidentiary standards Plaintiffs demand the Departments satisfy. Rather, "the RFA expressly states that . . . 'an agency may provide either a quantifiable or numerical description of the effects of a proposed rule or alternatives to the proposed rule, *or more general descriptive statements if quantification is not practicable or reliable.*'" *Id.* (quoting 5 U.S.C. § 607) (emphasis added). The Departments' analysis satisfies that requirement, and Plaintiffs do not argue otherwise.

Plaintiffs also insist that the Departments failed to consider and respond to comments about regulatory alternatives. Pls.' Mem. 25 (citing Pls.' Mem. 9, ¶ 35). To the contrary, the Departments

considered alternatives such as "leaving in place" the 2018 Rule, "proposing to limit the maximum duration of STLDI policies to a less-than-6-month period," and taking other steps to limit stacking. 89 Fed. Reg. at 23405; *id.* at 23408 (incorporating the latter discussion into the RFA analysis). Ultimately, however, the Departments determined that "none of these alternatives would both achieve the policy objectives and goals of" the Rule "and be less burdensome to small entities." *Id.* at 23408. The RFA "require[] no more" than that. *Alenco Comm'ns*, 201 F.3d at 625.

The Departments also responded to comments regarding these alternatives. *Id.* at 23405–06. In arguing otherwise, Plaintiffs quote a different portion of the preamble where the Departments state they will take certain comments "into consideration in any future regulations or guidance defining STLDI." Pls.' Mem. 25 (quoting 89 Fed. Reg. at 23367).[14] But that quote is from the Departments' response to comments about measures they could take to address deceptive marketing practices *separate and apart* from the proposed definition of STLDI. 89 Fed. Reg. at 23365–67. Because the commenters' recommendations fell outside the scope of the STLDI definition, the Departments reasonably declined to respond more fulsomely, instead committing to consider the recommendations in future rulemaking or guidance. *NTCH, Inc. v. FCC*, 950 F.3d 871, 881 (D.C. Cir. 2020).[15] None of this shows a violation of the RFA's procedural requirements.

## IV.    Any Relief Should Be Appropriately Limited.

If the Court finds for Plaintiffs on the merits (and it should not), it should issue narrow relief consistent with principles of equity. "A plaintiff's remedy must be tailored to redress the plaintiff's particular injury," *Gill v. Whitford*, 585 U.S. 48, 73 (2018), and "injunctive relief should

---

[14] Plaintiffs also cite R.23802 (89 Fed. Reg. at 23355) for this quote, *see* Pls.' Mem. 9, ¶ 35, but no such quote appears on that page of the preamble.

[15] Plaintiffs also dispute the Departments' intent behind adopting the regulation. Pls.' Mem. 26. The intent Plaintiffs attribute to the Departments is contrived (*see supra* p.27), but regardless, it is irrelevant to the RFA's procedural requirements.

be no more burdensome to the defendant than necessary to provide complete relief to the plaintiffs," *Madsen v. Women's Health Center, Inc.*, 512 U.S. 753, 765 (1994) (citation omitted).

Plaintiffs assume without argument that vacatur is the appropriate remedy here. *See* Pls.' Mem. 24. But "[p]laintiffs need more than a perfunctory analysis to justify vacatur." *Am. Hosp. Ass'n v. Becerra*, No. 4:23-cv-1110, 2024 WL 3075865, at *16 (N.D. Tex. June 20, 2024). Traditional principles of equity are counter to awarding the sweeping relief of universal vacatur.[16] *See Trump v. Hawaii*, 585 U.S. 667, 717 (2018) (Thomas, J., concurring) (explaining that English and early American "courts of equity" typically "did not provide relief beyond the parties to the case"). When Congress adopted the "unremarkable" "set aside" language in § 706(2), there is no reason to think it "meant to upset the bedrock practice of case-by-case judgments with respect to the parties in each case." *Arizona v. Biden*, 40 F.4th 375, 396 (6th Cir. 2022) (Sutton, C.J., concurring); *see also California v. Texas*, 593 U.S. 659, 672 (2021) (remedies "ordinarily 'operate with respect to specific parties,'" rather than "'on legal rules in the abstract'" (citation omitted)).

The Departments recognize that the Fifth Circuit has described vacatur as a "default" remedy under the APA. *Data Mkg. P'ship, LP v. U.S. Dep't of Labor*, 45 F.4th 846, 859-60 (5th Cir. 2022). But that default remedy is neither always required nor always appropriate, as district courts have recently recognized. *See, e.g.*, *Nuziard v. Minority Bus. Dev. Agency*, 721 F. Supp. 3d 431, 499-502 (N.D. Tex. 2024) (declining to vacate agency regulations implementing a statutory provision the court found unconstitutional, and instead enjoining the agency from enforcing the challenged provisions), *appeal filed* No. 24-10603 (5th Cir. July 3, 2024).

---

[16] The Departments preserve the argument that 5 U.S.C. § 706(2) does not authorize a particular form of relief but merely directs a reviewing court to disregard "agency action, findings, and conclusions" that it finds unlawful. *See* Br. for Petitioners at 39-44, *United States v. Texas*, 599 U.S. 670 (2023) (No. 22-58), 2022 WL 4278395, at *40-41 (Sept. 12, 2022).

In this case, traditional principles of equity mean that, first, any injunction or vacatur of the 2024 Rule should apply only to those aspects of the 2024 Rule for which the Court finds Plaintiffs have met their burden for relief on summary judgment. A regulation is severable where severance would "not impair the function of the statute as a whole, and there is no indication that the regulation would not have been passed but for its inclusion." *K Mart Corp. v. Cartier, Inc.*, 486 U.S. 281, 294 (1988) (invalidating only the provision of a regulation that exceeded the agency's statutory authority). Severability clauses, such as the one in the 2024 Rule, 89 Fed. Reg. at 23391, create a presumption that the validity of the entire regulation is not dependent on the validity of any specific unlawful provision if that unlawful provision would not impair the function of the regulation as a whole. *Alaska Airlines, Inc. v. Brock*, 480 U.S. 678, 686 (1987). Plaintiffs' challenge here is limited to the portion of the STLDI definition setting specific time limits and prohibiting issuers (and members of their controlled group) from stacking plans. The Court should not disturb unchallenged portions of the rule, such as STLDI notice requirements.

Second, any relief should be limited, at most, to Plaintiffs. "The Court's constitutionally prescribed role is to vindicate the individual rights of the people appearing before it." *Gill*, 585 U.S. at 72. Plaintiffs lack standing to assert claims on behalf of STLDI issuers who are not members of AAAB. Thus, Plaintiffs' claims would be fully redressed through relief prohibiting the Departments from enforcing the challenged provisions of the 2024 Rule only with respect to the Plaintiffs before this Court.

## **CONCLUSION**

For the foregoing reasons, the Court should deny Plaintiffs' Motion for Summary Judgment, grant summary judgment in favor of the Departments.

Dated:  December 11, 2024

Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

MICHELLE R. BENNETT
Assistant Branch Director

_/s/ Kyla M. Snow_
KYLA M. SNOW
Trial Attorney (Ohio Bar No. 96662)
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L St. NW
Washington, DC 20005
(202) 514-3259
kyla.snow@usdoj.gov

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on December 11, 2024, a copy of the foregoing was filed electronically via the Court's ECF system, which effects service upon counsel of record.

<u>/s/ Kyla M. Snow</u>
KYLA M. SNOW
Trial Attorney
U.S. Department of Justice