# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# SHERMAN DIVISION

| | |
|---|---|
| AMERICAN ASSOCIATION OF ANCILLARY BENEFITS, et al., § § § § *Plaintiffs*, § § v. § § ROBERT F. KENNEDY, JR., in his official capacity as Secretary of the United States Department of Health and Human Services, *et al.*, § § § § § § *Defendants*. | Case No. 24-CV-783 <br><br> Judge Sean D. Jordan |

**PLAINTIFFS' RESPONSE IN OPPOSITION TO
DEFENDANTS' MOTION TO EXTEND STAY**

NOW COME Plaintiffs AMERICAN ASSOCIATION OF ANCILLARY BENEFITS and PREMIER HEALTH SOLUTIONS, LLC (collectively, "Plaintiffs"), by and through their counsel, and for their Response to Defendants' Motion to Extend Stay (Dkt. No. 70), pursuant to the Order of this Court (Dkt. No. 71), and state as follow:

## Introduction

This Court should deny Defendants' wayward and prejudicial invitation to delay any progress in this case for another six months, all while Plaintiffs and consumers alike continue to be harmed by the challenged regulation that took effect on September 1, 2024. Defendants' Motion (i) is bereft of any supporting factual or legal authority, (ii) is not remotely responsive to this Court's February 18, 2025 Order that granted the original ninety (90) day stay (Dkt. No. 66)], and (iii) is so vague, imprecise and non-committal as to the Defendants' future potential actions – or inactions - that it provides no basis on which this Court can rely, particularly given the

1

irreparable harm Plaintiffs and consumers continue sustain from this wholly insupportable regulation.

In this regard, consistent with this Court's prior scheduling order, briefing on Plaintiffs' motion for summary judgment regarding this Biden Administration Rule for Short-Term Limited Duration Insurance ("STLDI") plans has been completed since January 10, 2025—as per the Court's October 2024 briefing schedule. (Dkt. Nos. 30, 54). This is Defendants' second request for a stay—which now seeks an incredible indulgence to stay the case for an additional six months until a week before Thanksgiving 2025 (Dkt. Nos. 61, 66, 70). Meanwhile, Plaintiffs and health insurance consumers across the country continue to be harmed by the regulation that took effect on September 1, 2024, and will continue to be further prejudiced by Defendants disregarding this Court's February Order (Dkt. No. 69) and instead asking for a motion to stay during which consumers will remain unable to secure a longer duration STLDI policy under the prior Trump Administration rule to bridge them until the end of the year.

Indeed, the motion at issue seeks to prohibit this Court from exercising its authority to adjudicate the merits of Plaintiffs' claims with respect to the Biden Administration Rule. At this juncture, a stay would render the Court impotent in a way prohibited by *Loper Bright Enters. v. Raimondo*, 603 U.S. 369 (2024). For the following reasons, this Court should deny the unnecessary request for a six-month extension of the stay of this matter.

**Relevant Procedural History**

Five months ago, Defendants previously sought an extension of fifteen days to "master the details" of the case to file the Reply in Support of their Cross-Motion for Summary Judgment (Dkt. No. 61, Jan. 23, 2025, at p. 1). Then, in February, Defendants sought an additional three months "to evaluate the government's position in this case and determine how to proceed," or alternatively two weeks to file their reply brief in support of their Cross-Motion for Summary

Judgment motion. (Dkt. No. 66, Feb. 18, 2025, at p. 1). In granting the prior 90-day stay, the Court was clear when it "further ORDERED that, on or before May 19, 2025, the Government Defendants must provide the Court with an advisory concerning the results of their evaluation of their position in this case" and "how the Government Defendants intend to proceed" in this case. (Dkt. No. 69, Order). Although Defendants were granted the 90-day stay over objection of the Plaintiffs, they failed to comply with the clear and explicit edicts of this Court, without any explanation or justification.

## Argument

Defendants ignored this Court's Order. Defendants' submission failed to provide this Court, or Plaintiffs, "with an advisory concerning an evaluation of the underlying merits in *this case* and how they intend to proceed." The May 19th submission is devoid of any mention of Defendants' evaluation, which was ordered to be included in Defendants' submission. More incredibly, the Government Defendants waited until the last possible moment of the Court's 90-day extension to file its three-paragraph wholly deficient response. It cannot be argued that the perfunctory response provided this Court or the parties with any definitive steps that Defendants will take regarding the STLDI plans or how Defendants will address the issues raised in this lawsuit. Indeed, Defendants' request is so vague, imprecise and non-committal as to Defendants' future potential actions – or inactions - that it provides absolutely no guidance to the Court or Plaintiffs' as to Defendants' intentions, all as required by this Court's prior Order. Thus, Defendants have ignored the Court's explicit order to provide their evaluation and to communicate how the government's position in the case may have evolved.

Second, Defendants failed to provide any specifics as to how they intend to proceed. Even construing Defendants' submission liberally, at best, Defendants only provided a vague and

3

noncommittal admission of uncertainty. Namely, Defendants "cannot presently estimate when . . . rulemaking is likely to be completed" and want six more months. (Dkt. No. 70, at pp. 1-2). Ostensibly not having a legal position and not providing any certainty as to how they intend to proceed—Defendants, rather, "intend to revisit the rule challenged here in a new rulemaking" and half a year from now may be able to inform the Court of an anticipated timeline for some potential rulemaking. (*Id.*). That blatantly ignores what this Court ordered. (Dkt. No. 69). Defendants did not explain *any* position at issue with the 2024 Rule: arbitrary and capriciousness, regulatory flexibility analysis, impermissible uncertainty, non-delegation doctrine, State's rights under the McCarran Ferguson Act, or the major questions doctrine. (Dkt. No. 33).

Defendants' principal plan is a possibility of further potential agency rulemaking. That only perpetuates the issue of what "Short-Term Limited Duration Insurance" means where Congress has not defined it. *See Garland v. Cargill*, 602 U.S. 406, 413, 428 (2024) (cleaned up) (striking down administrative agency's final rule, reasoning "it is never our job to rewrite statutory text under the banner of speculation about what Congress might have done."). No matter how purportedly well-meaning the past Administration might have been, Congress did not define STLDI, and "limited duration" does not mean "nonrenewable." *See Id.* at 429 (Alito, J., concurring, something that "highlights the need to amend a law does not itself change the law's meaning."). *See Ass'n for Cmty. Affiliated Plans v. United States Dep't of the Treasury* ("ACAP"), 966 F.3d 782, 789 (D.C. Cir. 2020) (rejecting argument that "limited duration' actually means 'nonrenewable.'").

Plaintiffs previously opposed Defendants' Motion for a Stay, explaining that these delays perpetuate uncertainty and "'significant harm to insured[s] and the healthcare insurance industry' including Plaintiffs, policy holders, state regulators, STLDI issuers, and the public" and that "the relief sought will cause significant harm to Plaintiffs, the consumers of these plans," for "STLDI

4

plan issuers." (*See* Dkt. #68, at pp. 2-3 (quoting Dkt. No. 63) (noting Defendants' own *Amicus* cautioned of an incoming administration's different positions exacerbating the issues in this case).

In a recent Executive Order, "ADDITIONAL RESCISSIONS OF HARMFUL EXECUTIVE ORDERS AND ACTIONS," the present Administration has sought to "prioritize the interests of American citizens" and rescind "harmful executive actions issued by the prior administration" in order to "restore effective government." roughly one hundred "radical" and "wasteful regulations" and oversteps of the past administration among "Biden's failed policies"—such as this Biden-Administration Rule at issue. Fact Sheet: *President Donald J. Trump Rescinds Additional Harmful Biden Executive Actions* (Mar. 14, 2025).[1] This STLDI regulatory-overstep was one more of those many "failed policies." *Id.*

Defendants' request to stay the case demonstrates that they agree with Plaintiffs that the Biden-Administration Rule is deficient and Defendants do not wish to keep it. (*See* Dkt. No. 70: "they intend to revisit the [Biden-Administration] Rule challenged here in a new rulemaking . . . ."). But in the meantime, Plaintiffs and consumers alike continue to be harmed by the Biden-Administration Rule, and the Motion does not provide any way of knowing *what* another new rule might comprise; nor, in fact, *when* a proposed rule, let alone a final rule, might be released. Further, because Congress never defined STLDI, the lack of meaning persists.

An indefinite stay to prolong the Court from resolution only perpetuates uncertainty—leaving it unresolved—further depriving the public and the Judiciary of a settled plain meaning of "short-term limited duration," where Congress did not define it. Rather, it is the foundation of the Judiciary's independent duty "to say what the law is" and to "interpret the act of Congress, in order to ascertain the rights of the parties." *See Loper Bright Enters. v. Raimondo*, 603 U.S. 369,

---

[1] https://www.whitehouse.gov/fact-sheets/2025/03/fact-sheet-president-donald-j-trump-rescinds-additional-harmful-biden-executive-actions/.

385 (2024) ("the Framers structured the Constitution to allow judges to exercise that judgment independent of influence from the political branches.") (quoting *Marbury v. Madison*, 1 Cranch 137, 177 (1803); *Decatur v. Paulding*, 14 Pet. 497, 515 (1840)). The public rights continue to mount.

Defendants' continuing requests to stay this litigation compounds the major questions and public harm at hand at a time in which Congress' One Big Beautiful Bill Act, as currently drafted, will create periods of transition for American consumers, who remain hampered by the duration of term and renewability contractions plus other restrictions that were shoehorned in by the past administration in its final months. Additionally, it is well known that Congress is enacting federal spending bills that will drastically reduce subsidies for the ACA and reduce the number of individuals who are eligible for Medicaid.  Many agencies and groups have devoted significant time and energy analyzing the effects of cuts to federal health insurance subsidies and the impact on the insurance market.  It is important that this Court have the most relevant data, which was absent from Defendants' Motion.  Indeed, there is no mention of the impact of the current budget legislation that will only increase the need for and use of STLDI plans.  The analysis cited herein only solidifies the major questions doctrine arguments raised by Plaintiffs. The analysis and reports are matters of public record and should be considered by this Court in denying the second Motion to Stay.  By way of example and not an exhaustive list, here are some notable reports and resources:

- At a baseline, last year, the Congressional Budget Office (CBO) baseline projections previously estimated that uninsured people would increase from 27.3 to 30.3 million from this year to 2026. (Ex. 1, CBO June 2024 Baseline Projections, at p. 2) (available at: https://www.cbo.gov/system/files/2024-06/51298-2024-06-healthinsurance.pdf)).[2]

---

[2] Plaintiffs have included the physical exhibits and the hyperlink sources for ease of Court review.

- In June 2024, the Urban Institute had projected "7.2 million more people will receive subsidized Marketplace coverage under enhanced PTCs in 2025 than if original PTCs had stayed in place," and it estimated that noncompliant nongroup plans would cover 2.4 million people in 2025. (Ex. 2, Jessica Banthin, Matthew Buettgens, Michael Simpson, and Jason Levitis, *Who Benefits from Enhanced Premium Tax Credits in the Marketplace?*, Urban Institute pp. 2, 13 (Jun. 2024) (available at: https://www.urban.org/sites/default/files/2024-06/Who_Benefits_from_Enhanced_Premium_Tax_Credits_in_the_Marketplace.pdf))

- In December 2024, CBO analyzed that "[w]ithout an extension through 2026, CBO estimates, the number of people without insurance will rise by 2.2 million in that year," and "[w]ithout a permanent extension, CBO estimates, the number of uninsured people will rise by 2.2 million in 2026, by 3.7 million in 2027, and by 3.8 million, on average, in each year over the 2026-2034 period." (Ex. 3, CBO, Dec. 5, 2024, at p. 3) (available at: https://www.cbo.gov/publication/59230)).

- The Center on Budget and Policy Priority (CBPP) estimates that "[r]oughly 15 million people (and likely more) by 2035" will "lose health coverage and become uninsured because of the Medicaid cuts" due to the reconciliation bill. (Ex. 4, CBPP, p. 1) (available at: https://www.cbpp.org/sites/default/files/5-19-25health-bythenumbers.pdf)).

- The Kaiser Family Foundation estimates a greater amount than both the CBO and the CBPP if the Reconciliation Bill is Passed and ACA Enhanced Tax Credits Expire, affecting 13.7 million uninsured people. *See* (Ex. 5, Kaiser Fmaily Foundation, May 20, 2025, at pp. 1-3) (Alice Burns, Jared Ortaliza, Justin Lo, Matthew Rae, and Cynthia Cox, *How Will the 2025 Reconciliation Bill Affect the Uninsured Rate in Each State?*: *Allocating CBO's Partial Estimates of Coverage Loss*, KFF (May 20, 2025)) (reporting that "About half (46%) of the 13.7 million more people who would be uninsured in this scenario live in Florida (1.8M), Texas (1.6M), California (1.5M), New York (800k), and Georgia (610k). Texas (2.8M Marketplace growth), Florida (2.8M) and Georgia (1.0M) experienced the most ACA Marketplace growth since 2020, the year before the enhanced premium tax credits became available.") (available at: https://www.kff.org/affordable-care-act/issue-brief/how-will-the-2025-reconciliation-bill-affect-the-uninsured-rate-in-each-state-allocating-cbos-partial-estimates-of-coverage-loss/))

- The Paragon Health Institute, reported that there were 4.8 million marketplace enrollees to receive improper subsidies in 2024, based on representations of income. *See Private Health Reform Initiative*, (Ex. 6, Paragon Health Institute, at pp. 13, 49(estimating "4.84 million fraudulently enrolled people at 100 percent to 150 percent FPL, but only in 21 states as the other states, which include New York and Minnesota that rely on the BHP for coverage for this population, do not meet the above criteria.").(available at: https://paragoninstitute.org/private-health/the-great-obamacare-enrollment-fraud/)).

7

- On May 7, 2025, the CBO issued its analysis and anticipated that over the next nine years—by way of the One Big Beautiful Bill Act—new limits on state taxes on health care providers will cause an increase of 8.6 million uninsured people. (Ex. 7, CBO, at p. 7) (available at https://www.cbo.gov/publication/61377 )).

The common thread for the above-referenced figures is that the anticipated spending and subsidies cuts by Congress will leave a void in the health insurance market, which can be filled, in large part, by STLDI plans. However, the Biden Administration Rule has rendered these plans functionally useless and will serve to eliminate other health insurance options to those who cannot afford an unsubsidized ACA plan or qualify for Medicaid. Thus, the harm of the Biden Administration STLDI Rule cannot be overstated.

Contrast these realities with Defendants' principal request for the rest of this year is to try and figure out further agency action—while an illegal Biden Administration Rule will, without a shred of doubt, continue to cause harm to millions of Americans, precluding the citizens there among, who may otherwise wish to opt for STLDI plans from that option. The next Open Enrollment Period (OEP) starts November 2025. Granting Defendants' request effectively prohibits the Court from resolving anything before then. The current administration has already announced a contraction in the OEP to end on December 15, 2025 (rather than January 15, 2026), reduced substantially the funding for OEP federal advertising and budgeted navigators, making it much more likely many consumers may miss their window to keep or enroll in new ACA coverage. If the 6-month motion to stay is granted, that will leave some American consumers without a choice that fits their individual needs in the individual market and without a coverage choice of more than 4 months if they missed OEP or cannot afford an ACA plan..

In fact, the lack of guidance and specificity from Defendants is a tacit admission that the STLDI Rule at issue is one "of deep 'economic and political significance'" i.e., a major question, "that is central to this statutory scheme." *See King v. Burwell*, 576 U.S. 473, 486 (2015) ("had

8

Congress wished to assign that question to an agency, it surely would have done so expressly."); *see also Biden v. Nebraska*, 600 U.S. 477, 505–06 (2023) ("Because the interpretation of the provision was 'a question of deep 'economic and political significance' that is central to the statutory scheme,' we said, we would not assume that Congress entrusted that task to an agency without a clear statement to that effect," and "[t]hat the statute at issue involved government benefits made no difference in *King*, and it makes no difference here.") (cleaned up); *see also Loper Bright*, 603 U.S. at 405 ("Even where . . . procedural hurdles are cleared, substantive ones remain. Most notably, *Chevron* does not apply if the question at issue is one of 'deep 'economic and political significance.'") (quoting *Burwell*, 576 U.S. at 486).

Defendants' May 19th filing lacks any citation to caselaw or statutory support to justify such extraordinary relief when there is an unprecedented Rule being imposed on millions of health insurance consumers. Instead, Defendants are seeking to continue onward, indefinitely without a settled rule for STLDI.

By any estimates, millions are affected by the prior administration's actions, and millions more will continue to be affected by Defendants' inaction. A healthcare matter that "involv[es] billions of dollars in spending each year and affect[s] the price of health insurance for millions of people" is a major question. *King v. Burwell*, 576 U.S. 473, 485 (2015). And "[i]n extraordinary cases . . . there may be reason to hesitate before concluding that Congress has intended such an implicit delegation . . . This is one of those cases." *Id.*

## Conclusion

While "many regulatory priorities competing for limited resources" continue their administrative competition outside of this Court (Dkt. #70, at p. 1), Plaintiffs, consumers, policy holders, state regulators, STLDI issuers, and millions of STLDI-holders will continue to suffer

9

"agency action in an eternal fog of uncertainty." *Loper Bright*, 603 U.S. at 411.  A stay cannot be granted.

In contemplation of a path forward that does not take away Defendants' abilities to do what it did explain in its Motion: (1) the Court may deny Defendants' Motion and provide Defendants the alternate relief, an opportunity to respond on the merits in order to allow the Court to issue its ruling as to the pending dispositive motions; or (2) alternatively—the Court should enjoin the Biden Administration Rule reverting back to the 2018 STLDI Rule, until the current Administration can accomplish its rulemaking goals for STLDI plans.

If a judicial resolution of Plaintiffs' Motion for Summary Judgment strikes down the Biden Administration's Rule—the decision will not leave a vacuum. Under 5 U.S.C. § 706 vacatur, the status quo would revert for the time being to Defendants' Rule that was in place before the Biden-Administration Rule—the 2018 Rule— which the D.C. Circuit upheld. *See ACAP*, 966 F.3d 782, 794 (D.C. Cir. 2020) ("Having concluded that the [2018] STLDI Rule is neither contrary to law nor arbitrary and capricious"); *see also Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 412 (2024) ("we do not call into question prior cases that relied on the Chevron framework."). Therefore, "'limited duration' does not mean 'nonrenewable.'" *ACAP*, 966 F.3d at 789.

A judicial ruling on the meaning of STLDI, will provide Defendants with a settled meaning and a foundational basis upon which they may proceed constitutionally—consistent with *Loper Bright*—in their "intended rulemaking," at their own pace at some future date. (Dkt. #70).

WHEREFORE, for the above and foregoing reasons, PLAINTIFFS AMERICAN ASSOCIATION OF ANCILLARY BENEFITS and PREMIER HEALTH SOLUTIONS, LLC'S, respectfully requests that this Honorable Court enter an Order denying Defendants' Motion to

Extend Stay, an award of attorneys' fees for responding to this motion, and for any further relief this Court deems fair and just.

                                              Respectfully submitted:

                                      By:    ***/s/ Dominick L. Lanzito***

Lead Counsel for Plaintiffs
GONZALES TAPLIN PA
s/Dominick L. Lanzito

Alex Gonzales
Dominick L. Lanzito
Texas State Bar No. 24144951
Illinois State Bar No. 6277856
*Attorneys for the AMERICAN ASSOCIATION OF ANCILLARY BENEFITS AND PREMIER HEALTH SOLUTIONS, LLC*
P.O. Box 171267
Austin, Texas 78717
Tele:   (512) 492-5251 (for A. Gonzales)
        (312)724-8035 (for D. Lanzito)
Emails: agonzales@gonzalestaplin.com
dlanzito@pjmlaw.com


Michael J. Smith
Local Counsel for Plaintiffs

THE FOWLER LAW FIRM, P.C.
/s/ Michael J. Smith

Michael J. Smith
Texas State Bar No. 24037517
3301 Northland Drive, Suite 101
Austin, Texas 78731
Telephone: 512.441.1411
Facsimile: 512.469.2975
Email: msmith@thefowlerlawfirm.com

11

## CERTIFICATE OF SERVICE

      I hereby certify that on May 27, 2025, I caused the foregoing documents to be filed with the Clerk for the Eastern District of Texas through the ECF system. Participants in the case who are not registered ECF users will be served through email.

Date: _____, 2025

                                              Respectfully submitted,

                                              ***/s/Dominick L. Lanzito***

Lead Counsel for Plaintiffs
GONZALES TAPLIN PA
s/Dominick L. Lanzito

Alex Gonzales
Dominick L. Lanzito
Texas State Bar No. 24144951
Illinois State Bar No. 6277856
Texas State Bar No. 24144951
*Attorneys for the AMERICAN ASSOCIATION OF ANCILLARY BENEFITS AND PREMIER HEALTH SOLUTIONS, LLC*
P.O. Box 171267
Austin, Texas 78717
Tele:  (512) 492-5251 (for A. Gonzales)
        (312)724-8035 (for D. Lanzito)
Emails: agonzales@gonzalestaplin.com
dlanzito@pjmlaw.com